No. 25-1560

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

**BADAR KHAN SURI,**
**Petitioner-Appellee,**

**v.**

**DONALD J. TRUMP, ET AL.,**
**Respondents-Appellants.**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
District Court Case No. 1:25-cv-00480

## MOTION FOR STAY PENDING APPEAL

**YAAKOV M. ROTH**
**Acting Assistant Attorney General**
**Civil Division**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**
**Office of Immigration Litigation**

**WILLIAM C. PEACHEY**
**Director**

**YAMILETH G. DAVILA**
**Assistant Director**

**ERIK S. SIEBERT**
**United States Attorney**
**Eastern District of Virginia**

**DAVID J. BYERLEY**
**TOM B. SCOTT-SHARONI**
**BRANDON D. ZELLER**
**Trial Attorneys**
**Office of Immigration Litigation**
**Civil Division, U.S. Dept. of Justice**
**P.O. Box 878, Ben Franklin Station**
**Washington, DC 20044**

**Attorneys for Respondents-Appellants**

# **Table of Contents**

TABLE OF AUTHORITIES ..................................................................................... ii

INTRODUCTION ..................................................................................................1

BACKGROUND ....................................................................................................1

    I.    Badar Khan Suri. ......................................................................................1

    II.   Proceedings Below. ....................................................................................4

ARGUMENT .........................................................................................................6

    I.    This Court Should Stay the District Court's Order Releasing Suri. .............6

        A.    The district court lacked jurisdiction over the petition because it was never filed in Suri's place of confinement and has never named his immediate custodian as a respondent as *Padilla* requires. .................7

        B.    The District Court Lacked Subject Matter Jurisdiction to Issue its Release Order. ..................................................................................10

        C.    The Equities Favor a Stay. ................................................................19

    II.   Alternatively, Mandamus Is Warranted. ....................................................20

CONCLUSION .....................................................................................................21

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. ICE,*
    510 F.3d 1 (1st Cir. 2007) ................................................................. 17

*Ajlani v. Chertoff,*
    545 F.3d 229 (2d Cir. 2008)(a) ................................................. 14, 18

*Alvarez v. ICE,*
    818 F.3d 1194 (11th Cir. 2016) ....................................................... 14

*Calcano-Martinez v. INS,*
    232 F.3d 328 (2d Cir. 2000) ............................................................ 17

*Cheney v. U.S. Dist. Court for Dist. of Columbia,*
    542 U.S. 367 (2004) ........................................................................ 21

*Clark v. Martinez,*
    543 U.S. 371 (2005) ........................................................................ 12

*Delgado v. Quarantillo,*
    643 F.3d 52 (2d Cir. 2011) .............................................................. 19

*Demjanjuk v. Meese,*
    784 F.2d 1114 (D.C. Cir. 1986) ....................................................... 10

*Demore v. Kim,*
    538 U.S. 510 (2003) ........................................................................ 20

*E.F.L. v. Prim,*
    986 F.3d 959 (7th Cir. 2021) ........................................................... 12

*Ex parte Endo,*
    323 U.S. 283 (1944) .......................................................................... 9

*Ex parte Fahey,*
    332 U.S. 258–260, (1947) ............................................................... 21

*Hilton v. Braunskill,*
    481 U.S. 770 (1987) .......................................................................... 6

*Hope v. Warden York Cty. Prison*,
    956 F.3d 156 (3d Cir. 2020) ............................................................. 7

*Humphries v. Various Fed. U.S. INS Emps.*,
    164 F.3d 936 (5th Cir. 1999) ..................................................... 13-14

*J.E.F.M. v. Lynch*,
    837 F.3d 1026 (9th Cir. 2016) ................................................... 17, 18

*Jennings v. Rodriguez*,
    583 U.S. 281 (2018) ........................................................... 3, 17, 19

*Johnson v. Whitehead*,
    647 F.3d 120 (4th Cir. 2011) ............................................. 16, 17, 18

*La Buy v. Howes Leather Co.*,
    352 U.S. 249 (1957) ......................................................................... 21

*Mahdawi v. Trump*,
    --- F.4th ----, 2025 WL 1353665 (2d Cir. 2025) ............................... 6

*Malik v. Gonzales*,
    213 F. App'x. 173, 2007 WL 98115 (4th Cir. 2007) (per curiam) ............ 13, 15

*Mapp v. Reno*,
    241 F.3d 221 (2d Cir. 2001) ........................................................... 11

*Maryland v. King*,
    567 U.S. 1301 (2012) ...................................................................... 19

*Miranda v. Garland*,
    34 F.4th 338 (4th Cir. 2022) ......................................................... 17

*Nken v. Holder*,
    556 U.S. 418 (2009) ................................................................... 6, 20

*Padilla v. Rumsfeld*,
    542 U.S. 426 (2004) ........................................................... 7, 8, 9, 10

*Reno v. American-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) .......................................... 12, 13, 14, 15, 16

*Rosario v. Holder*,
    627 F.3d 58 (2d Cir. 2010) ....................................................... 18-19

*Schlanger v. Seamans*,
401 U.S. 487 (1971) ........................................................... 10

*Tazu v. Att'y Gen. United States*,
975 F.3d 292 (3d Cir. 2020) ................................... 12, 13, 14

*Trump v. Hawaii*,
585 U.S. 667 (2018) ........................................................... 20

*Trump v. J.G.G.*,
145 S. Ct. 1003 (2025) ........................................................ 7

*United States ex rel. Knauff v. Shaughnessy*,
338 U.S. 537 (1950) ........................................................... 19

*United States v. Eliely*,
276 F. App'x 270 (4th Cir. 2008) (per curiam) ........................... 5, 10

*United States v. Martinez-Fuerte*,
428 U.S. 543 (1976) ........................................................... 20

*Zundel v. Gonzales*,
230 F. App'x 468 (6th Cir. 2007) ............................................ 13

## Statutes and Regulations

8 U.S.C. § 1226 ......................................................... 3, 6, 17, 20
8 U.S.C. § 1227 ............................................................... 1, 2
8 U.S.C. § 1229a ................................................................. 16
8 U.S.C. § 1252 ............................................................... *passim*
28 U.S.C. § 1292 ................................................................. 7
28 U.S.C. § 1651 ............................................................. 12, 21
28 U.S.C. § 2241 ............................................................. 5, 12
8 C.F.R. § 236.1 ................................................................. 3
8 C.F.R. § 1236.1 ............................................................... 3

## INTRODUCTION

Right now, two forums—an immigration court in Texas and a federal district court in Virginia—are reviewing in parallel whether Badar Khan Suri is removable from this country. That concurrent litigation is *exactly* what the federal immigration laws forbid. Under the statutory scheme that Congress designed, some forum has to give. And Congress could not have been clearer about which one it is.

A stay is warranted here. The district court's order was in excess of its jurisdiction at every turn, inappropriately superintending immigration proceedings in the teeth of congressional command and exercising habeas jurisdiction that it plainly lacked.

## BACKGROUND

### I. Badar Khan Suri.

Suri, a national of India, is a nonimmigrant exchange visitor to the United States. *See* Ex. A, ECF#34, Amended Habeas Petition, ¶¶2, 7, 26. He is not a lawful permanent resident of the United States.

On March 17, 2025, Suri was taken into custody by the Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO"), after Secretary of State Rubio had determined that Suri's presence and activities in the country was seriously adverse to American foreign policy. Ex. A ¶2-4, 9. DHS seeks to remove Suri pursuant to 8 U.S.C. § 1227(a)(4)(C)(i), which renders removable "[a]n alien whose presence or

activities in the United States the Secretary of State has reasonable ground to believe would have potentially serious adverse foreign policy consequences for the United States[.]" *Id.* ¶2.

On the evening of Suri's detention, while performing initial processing, ICE's ERO Washington office made detention arrangements. Due to the lack of detention space available at nearby detention centers, those detained in ICE's Washington area of responsibility are often detained at facilities in other areas, which is an operational necessity to prevent overcrowding at ICE facilities. *See* Ex. B, Declaration of Deputy Field Office Director, ERO Virginia Field Office, Joseph Simon, ECF#26-1, ¶¶8-9. ERO Washington requested and obtained bed space for Suri from ICE ERO's Dallas area of responsibility. *Id.* ¶9. Upon confirmation that bedspace was available at the Prairieland Detention Facility in Alvarado, Texas, ERO Washington determined that Suri would be detained there. *Id.*

While at the ERO Washington office, Suri was issued a Notice to Appear ("NTA"), which charged him as removable pursuant to § 1227(a)(4)(C)(i). *Id.* ¶7. The NTA informed Suri that he would be detained at 1209 Sunflower Lane, Alvarado, Texas, the address of Prairieland Detention Center, and that his removal proceedings would take place while he was detained there. *Id.* ¶¶7-9; *see also* NTA (exhibit to Simon Decl.). The NTA also ordered Suri to appear for his first hearing

before an immigration judge at the Prairieland Detention Center on May 6, 2025, at 8:30 a.m. *Id.* ¶¶6-7; NTA.

Homeland Security Investigations simultaneously served Suri with a Notice of Custody Determination, notifying him that his detention was governed by 8 U.S.C. § 1226(a) (immigration custody during removal proceedings). Ex. B ¶6. Because Suri was detained under Section 1226(a), the decision to detain him was discretionary, and he would have an opportunity to seek release on bond in hearing before an immigration judge. *Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018). *See also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

At approximately 2:35 a.m. on March 18, 2025, Suri arrived at the Farmville Detention Center in Virginia ahead of his transport to an ICE staging facility in Alexandria, Louisiana. *Id.* ¶10-11. Suri was then transported from the Farmville Detention Center to the ERO Washington office in Chesterfield, Virginia, where he arrived at approximately 7:50 a.m. the same day *Id*. ¶11. Suri was next brought to the airport in Richmond, Virginia, where he boarded a flight that departed for Alexandria, Louisiana at 2:47 p.m. *Id*. Suri arrived in Alexandria at approximately 5:03 p.m. EDT (4:03 p.m. CDT) on March 18, 2025. *Id.*

Suri was then transported to the Alexandria Staging Facility in Alexandria, Louisiana, which holds male detainees at various security classification levels for

less than 72 hours. *Id.* ¶12.[1] Suri spent time at the Alexandria facility because it is on the standard flight path of the transporting aircraft. Ex. B ¶12. After spending approximately three days at the Alexandria facility, Suri was transported by ground transport to the Prairieland Detention Facility. *Id.* ¶13. Suri remained at the Prairieland Detention Facility until the district court ordered his release on May 14, 2025.

## II. Proceedings Below.

At 5:59 p.m. on March 18, 2025, when Suri was in Alexandria, Louisiana, Suri filed a habeas petition in the Eastern District of Virginia based on his alleged "targeted, retaliatory detention and attempted removal." Ex. C, ECF#1, Habeas Petition, ¶1. He alleged that his arrest and detention are an attempt to "retaliate against and punish noncitizens like Mr. Suri for his family relationship and constitutionally protected free speech." *Id.* ¶31. He asserted claims under the First Amendment, the Due Process Clause, and the Administrative Procedure Act ("APA"), and he sought release on bail. *Id.* ¶¶38-49.

On March 20, 2025, the district court issued an Order enjoining Suri's removal from the United States "unless and until the [district court] issues a contrary order." Ex. D, ECF#7 at 1.

---

[1] S*ee also* Office of Professional Responsibility: Alexandria Staging Facility Inspection 2024-003-331 (2024), https://www.ice.gov/doclib/foia/odo-compliance-inspections/alexandriaStagingFac_AlexandriaLA_Aug27-29_2024.pdf.

On April 8, 2025, Suri filed his Amended Petition. *See generally* Ex. A. In the Amended Petition, Suri alleges that he first met his now-wife, a United States citizen of Palestinian descent, in Gaza in 2011, and that her father served as a political advisor to the Prime Minister of Gaza. *Id.* ¶¶19-21. He further alleged that he and his wife made social media posts criticizing the war in Gaza after it began in October 2023. *Id.* ¶¶27-28. The Amended Petition added new claims, including one based on First Amendment freedom of association, another arguing that an alleged policy underlying his detention is void for vagueness under the Due Process Clause, and a third based on equal protection under the Fifth Amendment. *Id.* ¶¶96-101, 107-13.

On May 6, 2025, the district court issued a Memorandum Opinion denying the government's motion to dismiss and finding the district court had jurisdiction under the habeas statute (28 U.S.C. § 2241) to hear Suri's petition. *See* Ex. E, ECF#59, Memorandum Opinion; Ex. F, ECF#60, Order Denying Motion to Dismiss.

On May 14, 2025, the district court granted Suri's Motion for Release on Bond and ordered that Suri be immediately released. Ex. G, ECF#65 at 1-2. In an oral ruling issued at a hearing that day, the district court concluded that the jurisdictional bars under 8 U.S.C. §§ 1252(g), 1226(e), 1252(a)(5), and 1252(b)(9) did not bar its review of Suri's habeas claims. Ex. H, Transcript of May 14, 2025 Hearing at 24-26. As for the merits, the court concluded the conditions for relief under *United States v. Eliely*, 276 F. App'x 270 (4th Cir. 2008) (per curiam), were satisfied. At

the hearing, the government moved for a stay of the district court's order pending appeal before this Court, which the district court denied. Ex. H at 36-38. The government filed a notice of appeal in this Court on May 15, 2025. This motion follows.

## **ARGUMENT**

### I.     **This Court Should Stay the District Court's Order Releasing Suri.**

Courts consider four factors in assessing a motion for stay pending appeal: (1) the government's likelihood of prevailing on the merits of the appeal, (2) whether the government will suffer irreparable harm absent a stay, (3) the harm that other parties will suffer if a stay is granted, and (4) the public interest. *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). When the government is a party, its interests and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009).

A stay is warranted here. The district court's order here is immediately reviewable as a collateral order. *Mahdawi v. Trump*, --- F.4th ----, 2025 WL 1353665, at *3 (2nd Cir. 2025) (an order granting bail pending disposition of a habeas petition is an appealable collateral order). The order is also appealable under 28 U.S.C. § 1292(a) as an injunction. *Hope v. Warden York Cty. Prison*, 956 F.3d 156, 162 (3d Cir. 2020) ("By directing the release . . . on their own recognizance, the District Court ordered mandatory, affirmative relief—indeed, the ultimate relief sought by the petitioners in their underlying habeas petition"). And that decision is

fundamentally flawed, because the district court did not have jurisdiction to issue it. More, the equities favor a stay: The government is suffering irreparable harm every moment it cannot administer its sovereign authority under the immigration laws, in this instance, related directly to foreign policy; and the public interest will suffer so long as someone who the Executive has, in an exercise of his lawful discretion, determined should be detained is free.

A. **The district court lacked jurisdiction over the petition because it was never filed in Suri's place of confinement and has never named his immediate custodian as a respondent as *Padilla* requires.**

The order below was unlawful because the district court did not have habeas jurisdiction over this case in the first place. The Supreme Court has made clear that for claims that "fall within the 'core' of the writ of habeas corpus," "jurisdiction lies in only one district: the district of confinement." *Trump v. J.G.G.*, 145 S. Ct. 1003, 1005 (2025) (cleaned up); *see also Padilla v. Rumsfeld*, 542 U.S. 426, 434-35 (2004). For Suri, at the time of his original habeas petition, that was either the Northern District of Texas, which was his destination and place of detention indicated on his notice to appear, or the Western District of Louisiana, where he was then in custody. At the time of his amended petition, it was incontestably the Northern District of Texas. The Eastern District of Virginia, by contrast, had no claim to the case.

**1.** In *Padilla*, the Supreme Court established two rules for habeas jurisdiction: A habeas petitioner must file her petition in the district where she is detained, and the petition must name the custodian detaining her in that district. 542 U.S. at 434-35. In so holding, *Padilla* rebuked the Second Circuit's "relaxed ... immediate custodian rule" that found in non-criminal cases the proper respondent "is the person exercising the 'legal reality of control' over the petitioner.'" 542 U.S. at 437-38 (citations omitted).

*Padilla* controls here. When Suri filed his original habeas petition in the Eastern District of Virginia—naming supervisory officials rather than his immediate custodian—he was physically located in Louisiana, en route to the Northern District of Texas. Ex. B ¶11. Thus, the Eastern District of Virginia did not have jurisdiction over this matter because (1) Suri filed his petition in Virginia, although he was in transit to Texas; (2) no petition was filed in Texas or Louisiana; and (3) he failed to name his immediate custodian in his petition (or in his amended petition) when it was filed. Under *Padilla*, that was improper.

Indeed, in *Padilla* the Supreme Court held that habeas jurisdiction did not exist where "Padilla was moved from New York to South Carolina before his lawyer filed a habeas petition on his behalf." 542 U.S. at 441. The same result must obtain here, where Suri "was moved from [Virginia] to [Louisiana] before his lawyer filed a habeas petition on his behalf." *Id.* The district court should have "dismiss[ed]

without prejudice" so that Suri could properly file in his district of confinement. *Id*. It plainly erred in doing otherwise.

**2.** In reasoning otherwise, the district court relied on *Ex parte Endo*, 323 U.S. 283, 304-07 (1944) to insert "flexibility" into both the district of confinement rule and the immediate custodian rule. Ex. E at 10-11 ("When the default rules of habeas jurisdiction have proved untenable, the Supreme Court and Fourth Circuit have recognized exceptions to these default rules."). That was error.

The Supreme Court has made clear the limited scope of the *Endo* exception: it applies where a district court "acquired jurisdiction in th[e] case" such that the subsequent removal of the petitioner "did not cause the [court] to lose jurisdiction." *Padilla*, 542 U.S. at 440. "Thus, *Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction." Id. at 441.

Here, however, the Eastern District of Virginia never "acquired jurisdiction" because Suri was not physically present when the petition was filed, and Suri never "properly file[d] a petition naming her immediate custodian." *Id.* at 440-41. The district court thus erred in relying on the *Endo* exception to establish habeas jurisdiction.

Additionally, the unknown custodian exception the district court relied upon operates only in extraordinary circumstances where the custodian is *unknowable*, that is, where one's detention is a prolonged secret. *See Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986) (district court would lose habeas jurisdiction if it became known that prisoner being held in unknown location were actually located outside district). Thus, courts have reasoned that the exception effectively allows a district court to relax the immediate custodian rule (and the district of confinement rule) if the identity of the custodian is something the government will not reveal for a prolonged period, and that the petitioner's counsel cannot feasibly obtain. *See id*. In other words, it applies when "a prisoner is held in an undisclosed location by an unknown custodian" because "it is impossible to apply the immediate custodian and district of confinement rules." *Padilla*, 542 U.S. at 450 n.18. That exception does not apply where counsel is unable to identify the proper custodian for a brief period. Thus, here, failure to name the proper respondent subject to a district court's jurisdiction is "fatal." *Schlanger v. Seamans*, 401 U.S. 487, 489-91 (1971).

### B. The District Court Lacked Subject Matter Jurisdiction to Issue its Release Order.

Under this Court's decision in *United States v. Eliely*, a federal district court may grant bail pending review of an alien's habeas petition under certain rare circumstances. 276 F. App'x at 270. But the court may only grant bail in *aid* of its review of a habeas petition, if the court has jurisdiction to review that habeas petition

in the first place. *See Mapp v. Reno*, 241 F.3d 221, 231 (2d Cir. 2001) (court may grant release "to those who are properly before it"), 228 (authority to grant bail may be conditioned or limited by Congress).

That dooms the order below. Suri's habeas petition, at bottom, is a challenge to his removal: It challenges his supposedly "targeted, retaliatory apprehension, detention, transfer, and attempted deportation." Ex. A ¶1; Ex. D (ordering that Suri not be removed from the United States absent a contrary order by the district court). But district courts lack jurisdiction to hear that sort of case. Namely, Suri's claims are barred by 8 U.S.C. § 1252(g), which deprives district courts of jurisdiction to review claims arising from the decision or action to "commence proceedings." Additionally, §§ 1252(a)(5) and (b)(9) deprive district courts of jurisdiction to review actions taken or proceedings brought to remove aliens from the United States, and channel such challenges to the courts of appeals.

**Section 1252(g):** By its plain terms, 8 U.S.C. § 1252(g) eliminates district court jurisdiction over challenges to the decision to commence removal proceedings. Suri seeks to challenge the government's decisions to charge him with removability and detain him, which arise "from the decision [and] action . . . to commence proceedings." 8 U.S.C. § 1252(g). Regardless of the framing of his claims, the court below did not have jurisdiction over such a challenge.

Section 1252(g), as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, 119 Stat. 302, specifically deprives district courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of an alien arising from the decision or action by [the Secretary of Homeland Security] to [1] *commence proceedings*, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter."[2] *Id.* (emphasis added). Section 1252(g) eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title." Though this section "does not sweep broadly," *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 296 (3d Cir. 2020), its "narrow sweep is firm," *E.F.L. v. Prim*, 986 F.3d 959, 964-65 (7th Cir. 2021).

Section 1252(g) is "directed against a particular evil: attempts to impose judicial constraints upon [certain categories of] prosecutorial discretion." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 485 n.9 (1999) ("*AADC*"). Indeed, Section 1252(g) was designed to protect the Executive's discretion and avoid the "deconstruction, fragmentation, and hence prolongation of removal proceedings." *Id.* at 487. It protects the government's authority to make

---

[2] Much of the authority once exercised by the Attorney General has been transferred to the Secretary of Homeland Security. *See Clark v. Martinez*, 543 U.S. 371, 374 n.1 (2005).

"discretionary determinations" over whether and when to commence removal proceedings against an alien, "providing that if they are reviewable at all, they at least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed." *Id.* at 485.

The jurisdictional limitations under Section 1252(g) extend to claims of selective enforcement of the immigration laws. *AADC*, 525 U.S. at 488 (refusing claim that petitioners were selectively detained and placed into removal proceedings in violation of the First Amendment); *see Malik v. Gonzales*, 213 Fed. App'x. 173, 174-75, 2007 WL 98115, at *1 (4th Cir. 2007) (per curiam) (finding Section 1252(g) precluded review of equal protection and due process claims). Other Circuits have found the same. *See, e.g.*, *Tazu*, 975 F.3d at 296-98 (holding that constitutional claims must be brought in a petition for review, not a separate district court action); *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007) (explaining that First Amendment challenge related to immigration enforcement action "is properly characterized as a challenge to a discretionary decision to 'commence proceedings' . . . [and] is insulated from judicial review pursuant to §1252(g)"); *Humphries v. Various Fed. U.S. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (ruling that § 1252(g) prohibited review of an alien's First Amendment claim based on decision to put him into exclusion proceedings).

Indeed, "[w]hile the statute creates an exception for 'constitutional claims or questions of law,' jurisdiction to review such claims is vested exclusively in the courts of appeals and can be exercised only after the alien has exhausted administrative remedies." *Ajlani v. Chertoff*, 545 F.3d 229, 235 (2d Cir. 2008) (internal citations omitted) (finding district court lacked jurisdiction to review Ajlani's constitutional challenges and appellate review was premature before final order of removal) (citing 8 U.S.C. § 1252(a)(2)(D), (a)(5), (b)(4), (d)).

The scope of § 1252(g) also bars district courts from hearing challenges to the *method* by which the Secretary of Homeland Security chooses to commence removal proceedings. *See, e.g.*, *Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and also to review "ICE's decision to take him into custody and to detain him during his removal proceedings"). The act of arresting—and in turn, detaining—an alien to serve a charging document and initiate removal proceedings is an "action ... to commence proceedings" that this Court lacks jurisdiction to review. *See, e.g.*, *Tazu*, 975 F.3d at 298-99 (rejecting challenge to petitioner's re-detention for removal as an action taken to execute his removal order under Sections 1252(g) and (b)(9)).

In *AADC*, the Supreme Court held that a prior version of § 1252(g) barred claims strikingly similar to those brought here. *See* 525 U.S. at 487-92. In *AADC*,

the respondents had alleged that the "INS was selectively enforcing immigration laws against them in violation of their First and Fifth Amendment rights." *Id.* at 474. The Supreme Court noted "an admission by the Government that the alleged First Amendment activity was the basis for selecting the individuals for adverse action." *Id.* at 488 n.10. The respondents argued that a lack of immediate review would have a "chilling effect" on their First Amendment rights. *Id.* at 488. Nonetheless, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g). . . ." *Id.* at 487.

In short, Suri alleges that the government arrested, detained, and commenced removal proceedings against him in retaliation for his exercise of the First Amendment—and he seeks habeas relief on that basis. Ex. A ¶1. But that sort of suit is firmly within § 1252(g)'s reach. *AADC*, 525 U.S. at 487-92; *Malik*, 213 F. App'x at 174-75.

**Sections 1252(a)(5), (b)(9).** Removal proceedings generally provide the exclusive means for determining whether an alien is both removable from the United States and eligible for any relief or protection from removal. *See* 8 U.S.C. § 1229a. In 8 U.S.C. § 1252, Congress channeled into the statutorily prescribed removal process all legal and factual questions—including constitutional issues—that may arise from the removal of an alien, with judicial review of those decisions vested

exclusively in the courts of appeals. *See AADC*, 525 at 483. District courts play no role in that process. Consequently, the court below lacked jurisdiction over Suri's claims, which are all again, at bottom, challenges to removal proceedings. Suri must first raise all his challenges through the administrative removal proceedings, and then, if necessary, in the appropriate court of appeals.

To start, 8 U.S.C. § 1252(b)(9) eliminates the district court's jurisdiction over Suri's claims by channeling all challenges to immigration proceedings (and removal orders) to the courts of appeals:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, *arising from any action taken or proceeding brought to remove an alien* from the United States under this subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction . . . by any . . . provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9) (emphasis added). Section 1252(b)(9) is an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483; *see Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) ("Congress [through § 1252(b)(9)] has specifically prohibited the use of habeas corpus petitions as a way of obtaining review of questions arising in removal proceedings."); *Aguilar v. ICE*, 510 F.3d 1, 9-10 (1st Cir. 2007) (Section 1252(b)(9) acts as a channeling provision throughout the removal process to "put an end to the scattershot and piecemeal

nature of the review process."); *Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000) (Section 1252(b)(9) channels "all challenges . . . into one petition," not "only actions attacking the deportation order itself."); *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1033 (9th Cir. 2016) ("Congress intended to channel all claims arising from removal proceedings . . . to the federal courts of appeals and bypass the district courts.").[3]

By law, "the sole and exclusive means for judicial review of an order of removal" is a "petition for review filed with an appropriate court of appeals," that is, "the court of appeals for the judicial circuit in which the immigration judge completed the proceedings." 8 U.S.C. § 1252(a)(5), (b)(2).

Moreover, Congress intended that a petition for review is the exclusive means for judicial review of immigration proceedings:

> Notwithstanding any other provision of law (statutory or nonstatutory), . . . a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e) [concerning aliens not admitted to the United States].

---

[3] The Fourth Circuit has found Section 1252(b)(9) does not bar jurisdiction in a case where aliens detained under Section 1226(a) sought new bond hearings following prolonged detention. *See Miranda v. Garland*, 34 F.4th 338, 353 n.6 (4th Cir. 2022) (noting *Jennings* appears not to apply Section 1252(b)(9) to preclude review where aliens "are not challenging the decision to detain them in the first place or to seek removal; and they are not even challenging any part of the process by which their removability will be determined."). Suri's clear challenge is to the decision to detain him, to the decision to seek his removal, and to the basis for his removability—easily distinguishing *Miranda* here. *Cf. Whitehead*, 647 F.3d at 124.

8 U.S.C. § 1252(a)(5). "Taken together, § 1252(a)(5) and § 1252(b)(9) mean that *any* issue—whether legal or factual—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process." *J.E.F.M.*, 837 F.3d at 1031; *see id.* at 1035 (stating "that §§ 1252(a)(5) and [(b)(9)] channel review of all claims, including policies-and-practices challenges . . . whenever they 'arise from' removal proceedings"); *see also Whitehead*, 647 F.3d at 124. Indeed, "[n]othing ... in any other provision of this chapter . . . shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." 8 U.S.C. § 1252(a)(2)(D); *see also Ajlani*, 545 F.3d at 235 ("jurisdiction to review such claims is vested exclusively in the courts of appeals").

The petition-for-review process before the court of appeals thus ensures that aliens have a proper forum for claims arising from their immigration proceedings and "receive their 'day in court.'" *J.E.F.M.*, 837 F.3d at 1031-32 (citation omitted); *see also Rosario v. Holder*, 627 F.3d 58, 61 (2d Cir. 2010) ("The REAL ID Act of 2005 amended the [INA] to obviate . . . Suspension Clause concerns" by permitting judicial review of "nondiscretionary" BIA determinations and "all constitutional claims or questions of law.").

In evaluating the reach of subsections (a)(5) and (b)(9), "whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is

seeking." *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Those provisions divest district courts of jurisdiction to review both direct and indirect challenges to removal orders, which includes any challenge that is inextricably intertwined with the final order of removal that precedes issuance of any removal order, *id.*, as well as decisions to detain for purposes of removal or for removal proceedings, *Jennings*, 583 U.S. at 294-95.

Here, Suri's claims fit comfortably within these provisions, as the Supreme Court made express in *Jennings*. Justice Alito explained that whatever the precise scope of § 1252(b)(9), it plainly covered suits challenging the "decision to detain [an alien] in the first place or to seek [his] removal." 583 U.S. at 294-95. And *that* is Suri's challenge here.

## C.    The Equities Favor a Stay.

The government will experience irreparable harm absent a stay. It "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (citation omitted). That is particularly true here because rules governing immigration "implement[] an inherent executive power." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542 (1950) (recognizing that "it is not within the province of any court, unless expressly

19

authorized by law, to review the determination of the political branch of the Government to exclude a given alien").

Moreover, it is well settled that the public interest in the enforcement of the United States' immigration laws is significant. *See, e.g.*, *United States v. Martinez-Fuerte,* 428 U.S. 543, 556-58 (1976) There is "always a public interest in prompt execution of removal orders." *Nken*, 556 U.S. at 436. In granting the relief Suri seeks, the district court impaired the government's ability to carry out its official duties, which is contrary to the public interest. *See* Ex. D.

By seeking an order preventing DHS from detaining him, Suri frustrates the public interest in enforcing the immigration laws and in determining his removability. DHS has a valid statutory basis for detention, *see* 8 U.S.C. § 1226(a), and "detention during [removal] proceedings is a constitutionally valid aspect of the process," *Demore v. Kim*, 538 U.S. 510, 511 (2003); *Trump v. Hawaii*, 585 U.S. 667, 670, 706 (2018) (holding that review of the President's entry policy "is limited to whether the Executive gives a 'facially legitimate and bona fide' reason for its action" which can be satisfied by "a legitimate grounding in national security concerns[.]")).

## II.   Alternatively, Mandamus Is Warranted.

A writ of mandamus against a lower court may be issued "to confine the court against which mandamus is sought to a lawful exercise of its prescribed

jurisdiction." *Cheney v. U.S. Dist. Court for Dist. of Columbia*, 542 U.S. 367, 380 (2004) (cleaned up) (citing *Roche v. Evaporated Milk Assn.*, 319 U.S. 21, 26 (1943)); *see* 28 U.S.C. § 1651(a). While mandamus is a "drastic and extraordinary" remedy "reserved for really extraordinary causes" *Ex parte Fahey*, 332 U.S. 258, 259–260, (1947), mandamus is warranted here. First, the government has no other adequate means to attain the requested relief. *See Cheney*, 542 U.S. at 380. Crucially, the district court ordered DHS to release Suri immediately. Second, considering the jurisdictional bars in 8 U.S.C. §§ 1252(a)(5), (b)(9) and (g), the government has satisfied its burden of showing that its right to issuance of the writ is clear and indisputable. *Id.* Finally, issuance of the writ is appropriate under these circumstances because the district court's order amounts to a judicial usurpation of the Executive's exclusive statutory powers and preeminent constitutional powers over immigration. *Cf. La Buy v. Howes Leather Co.*, 352 U.S. 249, 259-60 (1957).

## CONCLUSION

The Court should grant the government's motion and stay the district court's orders pending appeal.

May 23, 2025                                    Respectfully submitted,


ERIK S. SIEBERT                                 YAAKOV M. ROTH
*United States Attorney*                        *Acting Assistant Attorney General*
                                                Civil Division

                                                DREW C. ENSIGN
                                                *Deputy Assistant Attorney General*

                                                WILLIAM C. PEACHEY
                                                *Director*
                                                Office of Immigration Litigation
                                                District Court National Security Section

                                                YAMILETH G. DAVILA
                                                *Assistant Director*

                                                DAVID J. BYERLEY
                                                TOM B. SCOTT-SHARONI
                                                *Trial Attorneys*

                                                */s/ Brandon D. Zeller*
                                                BRANDON D. ZELLER
                                                Trial Attorney (NC Bar # 50245)
                                                Office of Immigration Litigation
                                                Civil Division, U.S. Dept. of Justice
                                                P.O. Box 878, Ben Franklin Station
                                                Washington, DC 20044
                                                Tel:   (771) 217-8120
                                                Brandon.D.Zeller@usdoj.gov
                                                *Attorneys for Respondents-Appellants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(A), I certify that the foregoing was prepared using 14-point Times New Roman type, is proportionally spaced and contains less than 5,200 words, exclusive of the tables of contents and citations, and certificates of counsel.

May 23, 2025

*/s/ Brandon D. Zeller*
BRANDON D. ZELLER
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel:   (771) 217-8120

*Attorney for Respondents-Appellants*

## CERTIFICATE OF SERVICE

I certify that on May 23, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's CM/ECF System. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished through that system.

May 23, 2025

*s/ Brandon D. Zeller*
BRANDON D. ZELLER
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel:   (771) 217-8120

*Attorney for Respondents-Appellants*