No. 25-1560

# United States Court of Appeals for the Fourth Circuit

◆

BADAR KHAN SURI,

*Petitioner–Appellee,*

v.

DONALD J. TRUMP,

*Respondents–Appellants.*

**On Appeal from the United States District Court
for the Eastern District of Virginia
(Case No. 1:25-cv-480)**

## PETITIONER–APPELLEE'S OPPOSITION TO RESPONDENTS' MOTION FOR STAY PENDING APPEAL

Hassan Ahmad (VSB #83428)
THE HMA LAW FIRM, PLLC
6 Pidgeon Hill Dr, Suite 330
Sterling, VA 20165
(703) 964-0245

Astha Sharma Pokharel
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York, NY 10012
(212) 614-6464

Eden Heilman (VSB #93554)
Sophia Leticia Gregg (VSB #91582)
Geri Greenspan (VSB #76786)
Vishal Agraharkar (VSB #93265)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA
701 E. Franklin St., Suite 1412
Richmond, VA 23219
(804) 644-8022

*(Additional counsel listed on next page.)*

Jessica Myers Vosburgh
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. Box 486
Birmingham, AL 35201
(212) 614-6492

Nermeen Saba Arastu
IMMIGRANT & NON-CITIZEN RIGHTS
CLINIC
MAIN STREET LEGAL SERVICES, INC.
CUNY SCHOOL OF LAW
2 Court Square, 5th Floor
Long Island City, NY 11101
(202) 246-0124

Scarlet Kim
Brian Hauss
Esha Bhandari
Noor Zafar
Sidra Mahfooz
Michael K.T. Tan
Brett Max Kaufman
AMERICAN CIVIL LIBERTIES UNION
    FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

*Counsel for Petitioner–Appellee*

**INTRODUCTION**

In March 2025, the government detained Petitioner Dr. Badar Khan Suri—a research scholar at Georgetown living in the United States on a lawful visa—solely because of his constitutionally protected speech. Two months into his detention, the district court ordered his release on bail, under its inherent authority, *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), pending its resolution of the petition. The court concluded that the petition raised "substantial" claims of unlawful detention under the First and Fifth Amendments and found "extraordinary circumstances" justified Petitioner's temporary release. Tr. 36 (ECF 65).[1]

Respondents have appealed the district court's release order on various grounds, and this Court already scheduled that appeal to proceed in due course. But, apparently, the relief Respondents seek in their appeal—to send Dr. Suri, a husband and father who already spent eight weeks in immigration detention thousands of miles away from his home, back to detention—simply cannot wait. Respondents' request for a stay pending appeal in these circumstances is beyond extraordinary. Not only are they unable to cite a single instance of an appellate court staying a district court's order of habeas release *pendente lite*, but the Second Circuit recently

---

[1] Available as Exhibit H to Respondents' motion. All ECF numbers in this brief are to the district court docket, No. 25-cv-480 (E.D. Va.).

denied the same request in a nearly identical case, in which Respondents raised the same arguments. *See Mahdawi v. Trump*, 136 F.4th 443 (2d Cir. 2025).

Instead of engaging with Petitioner's serious constitutional claims or the lower court's ruling that release on bail is "necessary to make the habeas remedy effective," Tr. 36, Respondents' sole arguments for a stay are jurisdictional. Those arguments are not likely to prevail on appeal. While the district court invoked an exception to the default rules for habeas jurisdiction, it did so soundly, given the unique and disturbing circumstances surrounding Petitioner's detention and post-arrest movement. And, as the Second Circuit's recent analysis made clear, none of the jurisdiction-stripping provisions of the Immigration and Nationality Act ("INA") that Respondents cite deprive the district court of subject matter jurisdiction. Regardless, even if Respondents could show a close question on the merits, it is beyond doubt that Petitioner and the public will suffer serious harm if a stay is granted, whereas Respondents will suffer no harm at all if a stay is denied.

## BACKGROUND

Petitioner is an Indian national. Op. 3 (ECF 59).[2] After receiving a J-1 exchange visa to participate in a teaching fellowship at Georgetown University, he legally entered the United States in December 2022. *Id*. He resides in Rosslyn,

---

[2] Available as Exhibit E to Respondents' motion.

Virginia, with his wife, who is a U.S. citizen, and their three young children. *Id*. at 3–4.

In October 2023, Petitioner's wife began sharing posts online addressing events in Gaza and "express[ing] sorrow for the deaths of Gazan people." *Id*. In February 2025, she learned that she and her family were being targeted by certain websites because of her posts and her father's former position in the government of Gaza. *Id*. at 3–4.

On March 17, 2025, between 9:20 and 9:30 p.m., as Petitioner was returning home from work, a masked man emerged from one of several unmarked cars, prevented Petitioner from entering his building, and, along with other officers, arrested him and drove him away. *Id*. The arresting officers told Petitioner that his visa had been revoked, that the revocation was due to social media, and that he would be deported that same day. *Id*. Unbeknownst to Petitioner, two days earlier, Secretary of State Marco Rubio had revoked Petitioner's visa, and the government had issued a custody determination to detain him. *Id*.

Over the first eleven hours after his arrest, Petitioner was moved to three different locations. First, he was brought to the Enforcement and Removal Operations ("ERO") Washington Field Office for Immigration and Customs Enforcement ("ICE") in Chantilly, Virginia. *Id*. at 5. There, officers informed him that he would be transferred to the Farmville (Virginia) Detention Center and

permitted him to share this information with his wife. *Id*. They also showed him his Notice to Appear ("NTA"), which listed a Texas address as his current residence and specified that he had a May 6 hearing date in immigration court at a different Texas location. *Id*. Officers then drove him to Farmville, and on to a third location (another ERO office in Richmond, Virginia), where he arrived at around 7:50 a.m. on March 18. *Id*. at 6.

Later that afternoon, at 2:11 p.m., Petitioner's lawyer entered an appearance in his immigration case. *Id*. At the time, his lawyer believed Petitioner was still in Farmville, based on the last communication between Petitioner and his wife. *Id*. Then, without being permitted to communicate with his wife or lawyer, Petitioner was placed on a flight that departed at 2:47 p.m. that day and landed in Alexandria, Louisiana, just after 5 o'clock that evening. *Id*. at 7.

At 5:59 p.m., Petitioner's counsel filed a habeas petition seeking his release in the Eastern District of Virginia. *Id*. According to Respondents, at 6:42 p.m., Petitioner was then booked into the Alexandria Staging Facility ("ASF"), where he remained for three nights, until March 21. ECF 49-1 ¶ 3. On March 20, the district court issued an order commanding that Petitioner "not be removed from the United States unless and until the Court issues a contrary order." ECF 7. On March 21, Petitioner was transferred by bus to the Prairieland Detention Center in Texas. Op. 8. He remained detained at Prairieland until his release on bail on May 14.

4

## PROCEDURAL HISTORY

On March 18, Petitioner filed his habeas petition. ECF 1.[3] On March 20, he filed a motion to compel his return to Virginia. ECF 6. And on March 27, he filed a motion for release on bail pending the adjudication of his petition. ECF 20.

On April 1, Respondents filed a motion to dismiss or, in the alternative, to transfer the petition to Texas. ECF 24. On May 6, after a hearing, the court denied that motion, Op. 2, then set a hearing on Petitioner's motion to compel his return and his motion for release on bail, ECF 60.

On May 14, after conducting the bail hearing and ruling from the bench, the court ordered that Petitioner be immediately released. Tr. 36. Rejecting the arguments under the INA that Respondents assert here, the court found that "there is no jurisdictional bar to the Court reaching or deciding this habeas petition." Tr. 24–26. The court further found that Petitioner met both the standards in *Mapp*, 241 F.3d 221, and *United States v. Eliely*, 276 F. App'x 270 (4th Cir. 2008) (per curiam), for release on bail. Tr. 26–36. After the ruling, Respondents sought a stay of the district court's order granting release, which the court denied. Tr. 36–38.

Respondents filed a notice of appeal on May 15, and eight days later, moved for a stay.

---

[3] He filed an amended petition on April 8. ECF 34.

5

## LEGAL STANDARD

This Court reviews a district court's denial of a stay pending appeal for abuse of discretion, *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 380 (4th Cir. 2013), and the district court's factual findings relevant to the stay factors must be accepted unless "clearly erroneous." Fed. R. Civ. P. 52(a)(6).

A stay pending appeal represents an "intrusion into the ordinary processes of administration and judicial review." *Nken v. Holder*, 556 U.S. 418, 427 (2009) (cleaned up). An application for a stay is evaluated under the traditional multi-factor test akin to a motion for preliminary injunction. *Id*. at 434, 426.

## ARGUMENT

**I.    A stay is unwarranted.**

**A.    Respondents are not likely to succeed on the merits.**

**1.    The district court has habeas jurisdiction.**

Respondents argue that the district court "had no claim to [this] case" as a matter of habeas jurisdiction, pointing to the Supreme Court's decision in *Padilla v. Rumsfeld*, 542 U.S. 426 (2004), as "control[ling]." Mot. 7–8. But Respondents fail to engage with the district court's extended analysis, misread *Padilla* and other key precedent, and ignore the intolerable consequences of their position.

First, the district court did not dispute *Padilla*'s "two rules for habeas jurisdiction," Mot. 8, but accurately characterized them as, in *Padilla*'s own words,

"default" rules. Op. 10 (discussing immediate custodian and district of confinement rules); *Padilla*, 542 U.S. at 435. It then explained that when those default rules "have proved untenable, the Supreme Court and Fourth Circuit have recognized exceptions to" them. Op. 10.

Second, the court properly applied the "unknown custodian" exception to the default rules. Op 15. Under this exception—more accurately understood as *both* an "unknown custodian" *and* an "unknown location" exception—when the government holds someone "in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." *Padilla*, 542 U.S. at 450 n.18; *id.* at 458 (Stevens, J., dissenting) (noting the Court's unanimous agreement on this exception); *United States v. Moussaoui*, 382 F.3d 453, 464–65 (4th Cir. 2004); *Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986); *Öztürk v. Hyde*, 136 F.4th 382, 392–93 (2d Cir. 2025); *Khalil v. Joyce* (*Khalil I*), No. 25-cv-01963, 2025 WL 972959, at *14–38 (D.N.J. Apr. 1, 2025); 28 U.S.C. § 2242 (habeas pleading statute expressly permitting not naming immediate custodian when unknown).

Respondents wishfully suggest that the exception only "operates . . . where one's detention is a prolonged secret." Mot. 10. But their argument amounts to the chilling suggestion that habeas corpus would not be available for some government-controlled period after the government effectuates a person's incommunicado

7

detention. *Öztürk*, 136 F.3d at 392–93; *see Khalil I*, 2025 WL 972959, at *37 ("there is no gap in the fabric of habeas," but government's argument creates one); *Boumediene v. Bush*, 553 U.S. 723, 765 (2008) (executive lacks "power to switch the Constitution on or off at will").

As the district court explained, the exception fits this case to a tee. The court found that Respondents made it impossible for a "diligent attorney" like Petitioner's to "know[] that Petitioner was in Louisiana at the time he filed the petition." Op. 17; *see id.* at 15, 26. After Petitioner's arrest, ICE officers told him that he would be taken to Farmville, Virginia, and during the only phone call he was allowed, he relayed that information to his wife. *Id.* at 16. Hours later, he was on a plane to Louisiana. *Id.* Meanwhile, his lawyer worked diligently to file a petition in his last known location while checking government databases for updates on his whereabouts. *Id.* at 17. Upon filing, the E.D. Va. was the only place Petitioner's lawyer could have reasonably filed the petition. And at the time his petition was filed, Petitioner had still not been booked into a Louisiana detention facility, making it "[un]clear who Petitioner's immediate custodian was at the time" of filing, or even "if he had an immediate custodian at all." *Id.* at 15; *id.* at 18 (Respondents have never identified his immediate custodian). What's more, under the "'traditional venue considerations'" that apply "when the default rules became untenable," Op. 29 (quoting *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493

8

(1973)), the E.D. Va. is where Petitioner lives with his family and where he was arrested and initially detained, and litigating there would not prejudice Respondents, *id.* (citing *United States v. Poole*, 531 F.3d 263, 271 (4th Cir. 2008)).

Under those extraordinary circumstances, the unknown custodian exception applies, and habeas jurisdiction over the petition is proper where the petition was filed against Petitioner's ultimate custodian (the Secretary of Homeland Security) in the place of Petitioner's last known location (the E.D. Va.). Op. 16–21; Op. 15 n.7.[4]

Moreover, the district court made factual findings that supported its reliance, in the alternative, on an additional exception discussed in Justice Kennedy's *Padilla* concurrence. As Justice Kennedy explained, the default habeas rules can also be set aside where "there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed." Op. 21 (quoting *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring)). "In cases of that sort, . . . habeas jurisdiction would lie in the district . . . from which he had been removed." *Padilla*, 542 U.S. at 454. Below, the district court

---

[4] True, in *Öztürk*, the Second Circuit relied on the unknown custodian exception only to excuse the immediate custodian rule, and not the district of confinement one. *See* 136 F.4th at 390–94. But the latter rule was not at issue there, because the court was reviewing how the exception applied to the habeas jurisdiction of a court that was, in fact, in the district of confinement. *Id.* at 390–91. As the district court explained, Op. 20, and as *Padilla* makes clear, the exception can, in circumstances like these, apply to excuse both default rules.

correctly found that this exception applied because Respondents' unusual actions
after Petitioner's detention, and their many shifting and contradictory rationales for
those actions, indicated that their "design was to forum shop and spirit Petitioner
away from [the E.D. Va.] before his counsel could file a petition." Op. 23; *see id.* at
22–29 (Respondents' justifications were "post hoc rationalizations" and full of
"myriad contradictory explanations").[5]

Third, Respondents argue that the court erroneously "relied on *Ex parte Endo*,
323 U.S. 283 (1944), to insert 'flexibility' into" its analysis. Mot. 9. But the court
did no such thing. It cited *Endo*—which held that the "objective" of habeas relief
"may be in no way impaired or defeated by the removal of the prisoner from the
[court's] territorial jurisdiction," 323 U.S. at 307—just twice: once for the
uncontestable proposition that *Padilla*'s default rules bend to exceptions in certain
situations, Op. 11, and again to explain that Respondents' highly cramped view of
habeas jurisdiction and the relevant precedents regarding the unknown custodian

---

[5] Below, Respondents argued that habeas "jurisdiction is only proper in the
Northern District of Texas," but Petitioner did not arrive there until three days after
his filing. Op. 12–14. Here, they suggest that he might have filed in Louisiana, too,
Mot. 7, without explaining how Petitioner's lawyer (or "any other diligent
attorney") could have filed in Louisiana without knowing Petitioner was there, or
why the unknown custodian exception would not apply in such circumstances. Op.
17; *see id.* at 15. And contrary to the government's suggestion, Mot. 7, Petitioner's
amendment of his petition has no effect on habeas jurisdiction, as amendments
relate back to the date of the original pleading. *Öztürk*, 136 F.3d at 393–94.

exception "would permit the government to circumvent" the holding of that longstanding case, *id*. at 19 (rejecting notion that venue might shift to the district of confinement once the government chooses to disclose a hidden detainee's location). As the court explained, allowing the government to forum shop in habeas cases under its logic in this case "would defeat the purpose of the great writ." *Id.*

### 2. The INA does not bar Petitioner's detention claim.

Respondents make the sweeping claim that the district court did not have jurisdiction to hear Petitioner's challenge to his unlawful detention because, "at bottom, [it] is a challenge to his removal." Mot. 11. As multiple courts have concluded in recent weeks, that argument is wrong. *See Mahdawi,* 136 F.4th 443; *Öztürk*, 136 F.4th 382; *Khalil v. Joyce* (*Khalil II*), No. 25-cv-01963, 2025 WL 1232369 (D.N.J. Apr. 29, 2025). The Supreme Court has repeatedly affirmed that, notwithstanding the jurisdiction-stripping provisions of the INA, district courts have habeas jurisdiction over claims of illegal civil immigration detention. *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018) (plurality opinion); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019). And the Fourth Circuit and others have reviewed such claims in habeas. *See, e.g.*, *Miranda v. Garland*, 34 F.4th 338, 352–53 (4th Cir. 2022); *Kong v. United States*, 62 F.4th 608, 609 (1st Cir. 2023); *Black v. Decker*, 103 F.4th 133, 138–139 (2d Cir. 2024); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965

11

F.3d 203, 210 (3d Cir. 2020); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1079 (9th Cir. 2006).[6]

Respondents cite multiple INA provisions as precluding the district court's release order, but none apply to Petitioner's claim of unconstitutional detention.

**Section 1252(g).** Respondents "dramatically overstate[]the reach of § 1252(g)," *Mahdawi*, 136 F.4th at 450, when they argue that the provision strips jurisdiction over Petitioner's unlawful detention claim. Section 1252(g) is a "narrow" provision that applies "only to three discrete actions" to "*commence* proceedings*, adjudicate* cases*, or execute* removal orders." *Reno v. American-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 482 (1999) (quoting 8 U.S.C. § 1252(g)); *see also Jennings*, 583 U.S. at 294 (Section 1252(g) "refer[s] to just those three specific actions themselves"); *Casa De Maryland v. DHS*, 924 F.3d 684, 696 (4th Cir. 2019). In line with this precedent, the district court correctly held that Section 1252(g) must be "narrowly construed" to allow jurisdiction over detention claims. Tr. 25.

---

[6] Contrary to Respondents' suggestion, Mot. 10–11, Petitioner's non-detention-related claims are not at issue here. "So long as part of [Dr. Suri's] challenge to his detention falls outside of [the INA's jurisdictional stripping provisions], his petition survives, as does the district court's authority to order his release." *Mahdawi*, 136 F.4th at 450 n.3.

Dr. Suri challenges his retaliatory detention based on protected First Amendment activity with which the government disagrees. This claim plainly "fall[s] outside of § 1252(g)'s narrow jurisdictional bar." *Öztürk*, 136 F.4th at 397; *see Kong*, 62 F.4th at 609 (no 1252(g) bar to federal and state unlawful detention claims); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (same for First Amendment detention challenge).

Respondents' contention that Petitioner's detention is "an action . . . to commence proceedings," Mot. 14, is "mistaken." *Öztürk*, 136 F.4th at 397. "The Supreme Court has already rejected as implausible the Government's suggestion that § 1252(g) covers all claims arising from deportation proceedings." *Id*. (quoting *DHS v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020)) (cleaned up). Section 1252(g) "does not reach claims that are independent of, or wholly collateral to, the removal process," *Kong*, 62 F.4th at 614 (cleaned up), like Petitioner's "claims of unlawful and retaliatory detention." *Öztürk*, 136 F.4th at 397; *see Mahdawi*, 136 F.4th at 450–51; *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999).

None of the cases that Respondents cite support their sweeping position. *AADC* did not involve "unlawful *detention* at all." *Mahdawi*, 136 F.4th at 452. *Alvarez v. ICE*, 818 F.3d 1194 (11th Cir. 2016), involved an after-the-fact *Bivens* challenge to government action, not an effort to seek release. *Id.* at 1199–1200. *Tazu v. Att'y Gen. of the United States*, 975 F.3d 292 (3d Cir. 2020), was a challenge to

13

the execution of a removal order and the "brief door-to-plane detention" required to execute that order, *id.* at 298, and its reasoning has no applicability here. *Ajlani v. Chertoff*, 545 F.3d 229 (2d Cir. 2008), and *Malik v. Gonzales*, 213 Fed. App'x. 173 (4th Cir. 2007), are similarly inapposite challenges to removal proceedings. And neither *Zundel v. Gonzales*, 230 F. App'x 468, 475 (6th Cir. 2007), nor *Humphries v. Various Fed. USINS Emps.*, 164 F. 3d 936 (5th Cir. 1999), addressed whether Section 1252(g) bars review of unlawful detention claims.

**Sections 1252(a)(5) and (b)(9).** Section 1252(a)(5) applies only to review of final orders of removal, *see, e.g.*, *INS v. St. Cyr*, 533 U.S. 289, 311, 313 (2001), but there has been no such order issued here. And while Section 1252(b)(9) requires that claims "arising from any action taken or proceeding brought to remove an alien . . ." be raised "only in judicial review of a final order," 8 U.S.C. § 1252(b)(9), "the very text of § 1252(b) sets out requirements only '[w]ith respect to review of an order of removal under subsection (a)(1).'" *Öztürk*, 136 F.4th at 399 (quoting 8 U.S.C. § 1252(b)). Again, "[n]o order of removal is at issue here." *Id*.

Contrary to Respondents' claim, the decision to detain is not "inextricably intertwined" with removal. Mot. 19. As the Supreme Court explained in *Jennings*, "the applicability of § 1252(b)(9) turns on whether the legal questions that we must decide 'aris[e] from' the actions taken to remove" noncitizens, and construed that phrase narrowly to avoid "extreme" results that would render claims of "excessive

14

detention" "effectively unreviewable." 583 U.S. at 293; *see also Nielsen*, 586 U.S. at 402 (finding Section 1252(b)(9) did not preclude review of detention challenge); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021) (same). Indeed, Congress "stated unequivocally" that Section 1252(b)(9) "should not be read to preclude" "challenges to detention," because detention claims are "independent of challenges to removal orders." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (quoting H.R. Rep. No. 109-72, at 175 (2005)); *see also Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006) (jurisdiction not stripped where "habeas petitions challenged only the constitutionality of the arrest and detention"). Petitioner's "unlawful detention claims may be resolved without affecting pending removal proceedings" at all. *Mahdawi*, 136 F.4th at 452.[7]

From *Jennings*, the Third Circuit derived a simple "now-or-never" principle: "When a detained alien seeks relief that a court of appeals cannot meaningfully provide on petition for review ["PFR"] of a final order of removal, § 1252(b)(9) does not bar consideration by a district court." *E.O.H.C., v. DHS*, 950 F.3d 177, 180 (3d Cir. 2020); *see also Aguilar*, 510 F.3d at 11 (explaining that reading Section

---

[7] Nor is "overlap between a challenge to detention and a challenge to removal" enough to trigger (b)(9), because "even substantial substantive overlap[] does not make one claim arise out of the other, or necessitate that one claim controls the outcome of the other." *Öztürk*, 136 F.4th at 400. To accept such a broad reading would lead to "staggering results." *Jennings*, 583 U.S. at 293.

1252(b)(9) to cover claims that "cannot be raised efficaciously" on a petition for review would effectively bar "any meaningful judicial review").

Here, Petitioner's "core argument is that his free speech and due process rights are being violated, *now*." *Mahdawi,* 136 F.4th at 452. By subjecting him to retaliatory detention, Respondents were chilling his speech and that of others who similarly seek to speak out in support of Palestinian rights, and unlawfully depriving him of his physical liberty. If Petitioner were forced to wait until the end of a lengthy PFR process to raise these claims, "relief [would] come too late to redress these conditions of confinement," *E.O.H.C.*, 950 F.3d at 186, rendering his constitutional claims "effectively unreviewable" and accomplishing the unlawful object of his detention, *Jennings*, 583 U.S. at 293. Indeed, constitutional challenges to detention cannot even be heard on a PFR of a removal order. And even if such challenges could somehow be heard on a PFR, the Immigration Judge and Board of Immigration Appeals do not have jurisdiction to decide constitutional issues, nor can they develop a sufficient factual record for review by the court of appeals. *See Öztürk*, 136 F.4th at 400–401. This is not "meaningful review." *Jennings*, 583 U.S. at 321 (Thomas, J., concurring, joined by Gorsuch, J.).

Respondents seize on language in *Jennings* to argue that Section 1252(b)(9) encompasses challenges to initial detention. Mot. 17 n.3, 19 (citing *Jennings*, 583 U.S. at 294–95 (plurality opinion)). But that language merely emphasized that the

opinion's discussion was limited to the prolonged detention claims before the Court, not purporting to opine on other types of detention claims like those challenging the constitutionality of initial detention. *Öztürk*, 136 F.4th at 399 (rejecting the same argument). And as the district court explained, Tr. 25–26, the decisions from this Court that Respondents cite do not suggest otherwise. *Miranda*, 34 F.4th at 353 n.6 (Section 1252(b)(9) did not bar judicial review of detention claim); *Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) (case not involving detention where petitioner sought to relitigate in habeas claims raised in his removal proceedings).[8]

### B.    The equities and public interest weigh dramatically against a stay.

The balance of equities and public interest factors, which merge when the government seeks a stay, *Nken*, 556 U.S. at 435–436, overwhelmingly favor Petitioner. Both he and the public will suffer grave irreparable harm if he is re-detained, and Respondents can make no plausible claim to harm if a stay is not granted.

First, Petitioner's re-detention would re-inflict irreparable constitutional harm. "The loss of First Amendment freedoms, for even minimal periods of time,

---

[8] Respondents incorrectly claim that Petitioner would have the opportunity to seek release on bond. Mot. 3. Individuals charged under Section 1227(a)(4)(C) are not eligible for bond and may only seek a determination of whether they are properly subject to that removal provision. *See* 8 C.F.R. §§ 1003.19(h)(2)(i)(C), (ii). That is the position Respondents have taken in other litigation involving the same charges. *See* ECF 99 at 16 n.5, *Khalil*, No. 25-cv-01963 (D.N.J. Mar. 23, 2025).

unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 37 (1976). Indeed, the district court found that Petitioner's "release is necessary to make habeas remedy effective" because the record demonstrates that his confinement was "punitive" retaliation for his protected speech and associations. Tr. 35:17–23; *id.* at 15–17.

Re-detention would also impose significant harms on Petitioner and his family. A return to detention in Texas, over a thousand miles away from home, would seriously frustrate his "ability to participate meaningfully in [his] habeas proceedings" by limiting his ability to work with his attorneys, coordinate the appearance of witnesses, and generally present his habeas claims. *Öztürk*, 136 F.4th at 402; *accord Mahdawi*, 136 F.4th at 455. Moreover, while detained in Texas, Petitioner endured miserable conditions, and was initially denied religious accommodations. ECF 47-1 ¶¶ 22–24; *see Öztürk*, 136 F.4th at 402 ("conditions of . . . confinement" relevant to stay equities). If re-detained, Petitioner would likely have to forgo the remainder of his post-doctoral fellowship, which involves teaching at Georgetown University and working on a book project. ECF 21-2. Because his family is almost entirely dependent on him as a source of income, and struggled financially and with mental health issues during his prolonged absence, ECF 6-1 ¶ 19; ECF 62-4 ¶¶ 12, 17, his re-detention would also have profoundly negative

impacts on them. *See Hernandez v. Sessions*, 872 F.3d 976, 996 (9th Cir. 2017) (burden on families caused by "unnecessary detention" relevant to equities).

Further, a habeas petitioner's interest in release pending appeal is "always substantial" and "strongest" where "the possibility of flight" and risk of "danger to the public" are "weakest." *Hilton v. Braunskill*, 481 U.S. 770, 777–78 (1987). As the district court found, "there's no evidence to suggest that Dr. Khan Suri is a flight risk or poses a danger to society." Tr. 34:25–35:01. Those findings cannot be disturbed on appeal absent clear error, Respondents did not even attempt to contest them below.

Second, a stay would be manifestly against the public interest. "[I]t is well-established that the public interest favors protecting constitutional rights." *Leaders of a Beautiful Struggle v. Baltimore Police Dep't*, 2 F.4th 330, 346 (4th Cir. 2021); *accord Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002). There is also critical public interest in ensuring that executive agencies act lawfully. *See Texas v. United States*, 809 F.3d 134, 187 (5th Cir. 2015) (public interest is best served by "curtailing unlawful executive action"); *see also League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016) (finding a "substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations" (cleaned up)). In particular, the Supreme Court has emphasized that "the writ of habeas corpus is itself an indispensable mechanism for monitoring the

19

separation of powers" and "the test for determining the scope of this [remedy] must not be subject to manipulation by those whose power it is designed to restrain." *Boumediene*, 553 U.S. at 765–66. To stay the court's proceedings would profoundly compromise public faith in the Great Writ and the judiciary's truth-seeking function as a whole.

Moreover, "[t]here is a strong public interest in upholding the requirements of the First Amendment." *Amalgamated Transit Union Loc. 85 v. Port Auth. of Allegheny Cnty.*, 39 F.4th 95, 109 (3d Cir. 2022). Where the government punishes or suppresses speech, it "harms not only the speaker, but also the public to whom the speech would be directed." *Sindicato Puertorriqueño de Trabajadores v. Fortuño*, 699 F.3d 1, 15 (1st Cir. 2012) (citing *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 339 (2010)). By detaining Petitioner as punishment for his speech on a matter of urgent public concern, Respondents have deprived "the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration." *Citizens United*, 558 U.S. at 341. It has also unjustifiably chilled political debate on a pressing national and international issue. For that reason, the district court found that Petitioner's release was "the only remedy that could make habeas remedy effective," including because "it would disrupt the chilling effect of retaliation for protected political speech." Tr. 35:20–21; *id.* at 37:22–24.

Finally, while Respondents claim to be suffering irreparable harm "every moment" that Petitioner "is free," Mot. 7, they will suffer no harm at all if a stay is denied. As the district court found, and as discussed above, Petitioner is neither a flight risk nor a danger to the community. *See Hernandez*, 872 F.3d at 994 (holding that the government has "no legitimate interest in detaining individuals" who pose no danger or flight risk). And Petitioner's release will not affect his removal proceedings, *see also Mahdawi*, 136 F.4th at 447; *Öztürk*, 136 F.4th at 402 (same), which continue, Tr. 36–37 (ordering Petitioner to "participate in . . . the separate removal proceedings" by videoconference as a condition of release). Finally, Respondents' claim of irreparable harm based on being "enjoined by a court from effectuating statutes enacted by representatives of its people," Mot. 19, is totally unfounded. *See Mahdawi*, 136 F.4th at 447 (rejecting same argument); *Öztürk*, 136 F.4th at 401–02 (same).

## II.    Mandamus is unwarranted.

Respondents' mandamus claim rehashes its failed jurisdictional arguments into the radical proposition that by issuing a set of rulings that the government did not like, the district court "usurp[ed]" executive power, Mot. 21, sufficient to invoke the "drastic and extraordinary remed[y] of mandamus," *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947). But Respondents ignore the "general rule that appellate courts should avoid determining jurisdictional issues" via mandamus. *In re Ivy*, 901 F.2d

7, 10 (2d Cir. 1990) (discussing *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943), which explained that mandamus is generally inappropriate where jurisdictional decisions by a district court will be "reviewable in the regular course of appeal"); *see Öztürk*, 136 F.4th at 403.

## CONCLUSION

Respectfully, the Court should deny Respondents' motion.


Dated: June 5, 2025                                  Respectfully submitted,

                                                     /s/ *Eden Heilman*
Hassan Ahmad (VSB #83428)                            Eden Heilman (VSB #93554)
THE HMA LAW FIRM, PLLC                               Sophia Leticia Gregg (VSB #91582)
6 Pidgeon Hill Dr, Suite 330                         Geri Greenspan (VSB #76786)
Sterling, VA 20165                                   Vishal Agraharkar (VSB #93265)
(703) 964-0245                                       AMERICAN CIVIL LIBERTIES UNION
                                                     FOUNDATION OF VIRGINIA
Astha Sharma Pokharel                                701 E. Franklin St.
Baher Azmy                                           Suite 1412
CENTER FOR CONSTITUTIONAL RIGHTS                     Richmond, VA 23219
666 Broadway, 7th floor                              (804) 644-8022
New York, NY 10012
(212) 614-6464
                                                     Scarlet Kim
                                                     Brian Hauss
Jessica Myers Vosburgh                               Esha Bhandari
CENTER FOR CONSTITUTIONAL RIGHTS                     Noor Zafar
P.O. Box 486                                         Sidra Mahfooz
Birmingham, AL 35201                                 Michael K.T. Tan
(212) 614-6492                                       Brett Max Kaufman
                                                     AMERICAN CIVIL LIBERTIES UNION
                                                        FOUNDATION
Nermeen Saba Arastu                                  125 Broad Street, 18th Floor
IMMIGRANT & NON-CITIZEN RIGHTS                       New York, NY 10004
CLINIC

22

MAIN STREET LEGAL SERVICES, INC.    (212) 549-2500
CUNY SCHOOL OF LAW
2 Court Square, 5th Floor
Long Island City, NY 11101
(202) 246-0124                 *Counsel for Petitioner–Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on June 5, 2025, I electronically filed the foregoing through the CM/ECF system and it was thereby electronically served via ECF on all counsel of record in this matter. No party is unrepresented in that system.


Date: June 5, 2025                    Respectfully submitted,

                                     /s/ *Eden Heilman*
                                     Eden Heilman
                                     *Counsel for Petitioner–Appellee*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5,198 words. The document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in size-14 Times New Roman font.

Date: June 5, 2025                          Respectfully submitted,

                                            /s/ *Eden Heilman*
                                            Eden Heilman
                                            *Counsel for Petitioner–Appellee*