**No. 25-1560**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

**BADAR KHAN SURI,**
**Petitioner-Appellee,**

**v.**

**DONALD J. TRUMP, ET AL.,**
**Respondents-Appellants.**

---

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**District Court Case No. 1:25-cv-00480**

---

# REPLY BRIEF IN SUPPORT OF MOTION FOR STAY PENDING APPEAL

---

**BRETT SHUMATE**
**Assistant Attorney General**
**Civil Division**

**DREW C. ENSIGN**
**Deputy Assistant Attorney General**
**Office of Immigration Litigation**

**WILLIAM C. PEACHEY**
**Director**

**YAMILETH G. DAVILA**
**Assistant Director**

**ERIK S. SIEBERT**
**United States Attorney**
**Eastern District of Virginia**

**DAVID J. BYERLEY**
**TOM B. SCOTT-SHARONI**
**BRANDON D. ZELLER**
**Trial Attorneys**
**Office of Immigration Litigation**
**Civil Division, U.S. Dept. of Justice**
**P.O. Box 878, Ben Franklin Station**
**Washington, DC 20044**

**Attorneys for Respondents-Appellants**

## **Table of Contents**

Introduction....................................................................................................1

The District Court Lacked Jurisdiction....................................................................1

The District Court Lacked Habeas Jurisdiction.........................................................5

The Balance of Equities Support a Stay..................................................................10

Mandamus is Warranted........................................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Bello-Reyes v. Gaynor*,
985 F.3d 696 (9th Cir. 2021) .............................................................. 2

*Boumediene v. Bush*,
553 U.S. 723 (2008) .............................................................................. 8

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367, (2004) .................................................................... 11, 12

*Delgado v. Quarantillo*,
643 F.3d 52 (2d Cir. 2011) ............................................................... 2, 4

*Demjanjuk v. Meese*,
784 F.2d 1114 (D.C. Cir. 1986) ..................................................... 6, 7, 8

*In re Roman Cath. Diocese of Albany, N.Y., Inc.*,
745 F.3d 30 (2d Cir. 2014) ................................................................. 12

*Jennings v. Rodriguez*, 583 U.S. 219 (2018) ......................................... 3, 4

*Kerr v. U. S. Dist. Ct. for N. Dist. of California*,
426 U.S. 394 (1976) ............................................................................ 11

*Kong v. United States*,
62 F.4th 608 (1st Cir. 2023) ................................................................. 2

*Limpin v. United States*,
828 F. App'x 429 (9th Cir. 2020) ..................................................... 1-2

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) ............................................................... 10

*Noem v. Abrego Garcia*,
604 U.S. ___, ___ (April 10, 2025) ..................................................... 11

*Noem v. Doe*,
605 U.S. ___, ___ (May 30, 2025) ....................................................... 11

*Öztürk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) ...................................................... 3, 9, 10

*Padilla v. Rumsfeld*,
542 U.S. 426 (2004) ........................................................................ 5, 6, 7, 8

*Reno v. American-Arab Anti-Discrimination Comm.*,
525 U.S. 471 (1999) ........................................................................ 2, 3

*Trump v. J.G.G.*,
604 U.S. ___, ___ (April 7, 2025) .......................................................... 11

*United States v. Poole*,
531 F.3d 263 (4th Cir. 2008) ............................................................... 5, 9

*Will v. United States*,
389 U.S. 90 (1967) ............................................................................ 11

**Statutes**

8 U.S.C. § 1226 ................................................................................ 4

8 U.S.C. § 1227 ................................................................................ 10

8 U.S.C. § 1252 .................................................................... 1, 2, 3, 4, 5

## INTRODUCTION

The district court released Suri, notwithstanding the Executive's decision to detain him pending ongoing removal proceedings. Relief is warranted. Suri claims he challenges only the legality of his detention, but that is belied by the district court's orders, which go to the heart of his removal proceedings. The district court's first order blocked Suri's removal and its last prevents Suri's redetention without advance notice, regardless of further developments. If allowed to stand, this decision jeopardizes the carefully-delineated jurisdictional bounds Congress set to separate the immigration and district courts.

### I. The District Court Lacked Jurisdiction.

**Section 1252(g).** When an alien challenges detention by arguing that he should not be removed in the first place, he in substance challenges his removal. And when an alien challenges detention at the outset of removal proceedings, that suit is one that "aris[es] from the decision… to commence [removal] proceedings." 8 U.S.C. § 1252(g).

Here, Suri is not challenging any discrete aspect of his detention; he is challenging the fact he is detained, arguing he cannot properly be removed to begin with. *See, e.g.*, Doc 4-2 at 55-61 ¶¶ 95, 99-101, 109, 111-113, 114-15. That falls squarely within § 1252(g). *See, e.g.*, *Limpin v. United States*, 828 F. App'x 429, 429 (9th Cir. 2020) ("[C]laims stemming from the decision to arrest and detain an alien

at the commencement of removal proceedings are not within any court's jurisdiction.").[1]

Suri's argument otherwise rests on the proposition that his claims are "independent of, or wholly collateral to, the removal process". Opp. at 13 (quoting *Kong v. United States*, 62 F.4th 608, 614 (1st Cir. 2023) (cleaned up)). But the distinction Suri urges cannot be maintained where his arguments against detention are identical to his arguments against removal. Suri's contention, if endorsed, would allow every detained alien to attack the merits of his removal through a habeas suit nominally challenging his detention, subjecting the government to the burdensome, parallel litigation the INA explicitly prohibits. *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482-86 (1999) ("*AADC*"). Instead, what matters is the "substance" of the challenge. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). Where, as here, the challenge to detention is essentially a collateral attack on the decision to commence removal proceedings, § 1252(g) applies.

In *AADC*, where the Supreme Court held that materially identical claims were covered by § 1252(g), nowhere did Justice Scalia hint that the same theories could be raised in federal court if they were couched as a challenge to detention rather than

---

[1] Suri cites *Bello-Reyes v. Gaynor*, 985 F.3d 696, 700 n.4 (9th Cir. 2021) to argue that § 1252(g) does not apply to detention challenges based on alleged First Amendment violations. Opp. at 13. But *Bello-Reyes* involved an allegedly retaliatory re-arrest after an alien's release on bond, not detention at the commencement of removal proceedings.

removal. Nor would that make sense under the logic of *AADC*, which was to bar certain parallel litigation. Preserving *ex ante* litigation that would interrupt the "initiation or prosecution of various stages in the deportation process," 525 U.S. at 483, runs counter to that logic. That reasoning fully applies here, where Suri is challenging being detained as part of being removed. Doc. 4-2 at 94.

Certainly, the Government does not contend that "§ 1252(g) covers all claims arising from deportation proceedings." Opp. at 13 (quoting *Öztürk v. Hyde*, 136 F.4th 382, 397 (2d Cir. 2025)). Rather, where litigants bring habeas petitions in district court challenging their detention during removal proceedings on the same grounds that they contest their removal, that challenge is barred by § 1252(g) because it is, in substance, a challenge to the decision to commence removal proceedings. That is the nature of Suri's petition, and consequently, § 1252(g) precludes jurisdiction.

**Sections 1252(a)(5) and (b)(9).** The INA's exclusive review and zipper provisions independently bar Suri's suit. Suri relies on *Jennings v. Rodriguez* to argue that challenges to detention are outside these bars. Opp. at 14-17. But in *Jennings*, the Supreme Court *specifically said* that whatever § 1252(b)(9)'s reach, it covered the "decision to detain [an] alien in the first place or seek [his] removal." 583 U.S. 219, 294 (2018).

Properly understood, *Jennings* only excludes from § 1252(b)(9)'s reach detention claims that are both otherwise unreviewable *and* disconnected from the substance of the removal action. 583 U.S. at 291-92. Otherwise stated, if the suit in substance is an indirect challenge to a removal order, it is barred by the INA. *Delgado*, 643 F.3d at 55.

Suri's reading of *Jennings* elides the real issue. There, the Government did not argue that § 1252 barred review. The challenge in *Jennings* was purely to detention—specifically, whether the INA's detention provisions contain implicit requirements for bond hearings after six months. Importantly, neither *Jennings* nor the other recent cases Suri cites involved direct or indirect challenges to the validity of underlying removal proceedings. For example, none of those cases involved a challenge by criminal aliens subject to mandatory detention under 8 U.S.C. § 1226(c) to whether their criminal convictions were a proper foundation for mandatory detention and removal charges. If they had, their challenges would have run headlong into the jurisdiction-stripping provisions of § 1252. But that is precisely what Suri does. He does not bring, for instance, a procedural due process claim for a bond hearing collateral to his removal. Instead, he argues that his removal proceedings are unlawful, and so any detention incident to such proceedings is likewise unlawful. That is not a detention challenge cognizable in habeas. It is a challenge to removal proceedings, regardless of any artful pleading. Allowing such

claims to proceed in district court would open the door to the front-end litigation that § 1252 was meant to stop.

## II. The District Court Lacked Habeas Jurisdiction

All agree the seminal case is *Padilla v. Rumsfeld*, 542 U.S. 426 (2004). Here, the district court embraced theorems that *Padilla* rejected, which Suri rehashes on appeal. They are unavailing.

First, the district court minimized *Padilla* as reiterating only "default" rules susceptible to jettison whenever a court feels so inclined. But *Padilla* rejected the proposition, accepted below, that courts may make "ad hoc determinations as to whether the circumstances of a given case are 'exceptional,' 'special,' or 'unusual' enough to require departure from the jurisdictional rules this Court has consistently applied." *Id*. at 450. Indeed, *Padilla* described the "default rule" as a "bright-line rule" that disallows "a habeas petitioner challenging his present physical custody within the United States to name as respondent someone other than the immediate custodian and to file somewhere other than the district of confinement." *Id*. at 449-50. The district court incorrectly skirted these "bright-line" rules and invented an exception based on perceived idiosyncrasies of this case. *United States v. Poole*, 531 F.3d 263, 274 (4th Cir. 2008) (rejecting the proposition that habeas "jurisdiction that would otherwise be improper may nevertheless lie based on necessity or a weighing of the equities").

The district court, *inter alia*, determined that it could circumvent *Padilla* based purely on what Suri's counsel claim to have known at the time the petition was filed, reasoning that "[t]he *Padilla* majority does not address whether it would be proper to find jurisdiction based on the facts available to diligent counsel through reasonable effort under the circumstances." Doc. 4-2 at 115. But that is incorrect. The *Padilla* court rejected the application of that reasoning to the scenario presented there and caveated its whole discussion of the reasoning with, "even if this were a valid legal argument." *Padilla*, 542 U.S. at 449 n.17. *Padilla* addressed the argument that "the facts as they actually existed at the time of filing should not matter, because 'what matters for present purposes are the facts available to [counsel] at the time of filing'"—accepted below—and rejected it. *Id.* Contrary to Suri's arguments, the district court—not Respondents—mischaracterized *Padilla* in this respect.

The district court next incorrectly applied the "unknown custodian" exception, originating in *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986), to get around the immediate custodian rule, and to further find that it could retain jurisdiction as the district of arrest, even though it was undisputed that Suri had left the district hours before filing and was awaiting check-in to the Alexandria Staging Facility ("ASF") in Louisiana at that time. Ex. A, ECF#57 ¶¶15-16.

As a threshold matter, *Demjanjuk* bares no factual resemblance to this case. In *Demjanjuk*, petitioner was held by United States Marshals at "a confidential

location" pending imminent extradition to Isreal to face criminal charges for genocide. 784 F.2d at 1116. Accordingly, given the exigency of imminent extradition, the court determined "petitioner's attorneys cannot be expected to file in the jurisdiction where petitioner is held. It is impracticable to require the attorneys to file in every jurisdiction, and it would be inappropriate to order the whereabouts of the petitioner made public." *Id*.

Here, Suri did not face imminent removal; he was referred to immigration removal proceedings as provided in the NTA. And, importantly, the custodian and location of detention was also known—not confidential. At the minute of filing, Suri's immediate custodian was the officer in charge of ASF, Deputy Field Office Director Ragan Lewis. Ex. B, ECF#49-1 ¶5. If looking at the place of the challenged detention (Prairieland Detention Facility ("PDF") in Alvarado, Texas), his immediate custodian was the Warden of PDF. Ex. C, ECF#30. The district court ignored this information, instead claiming "his immediate custodian at 5:59 p.m. remains unknowable to all, including the Government." Doc. 4-2 at 113. The court then used that selective ignorance to apply *Demjanjuk* to retain jurisdiction because Suri "was arrested in this district" and because he was held in Virginia for a few hours pending his flight. *Id.* at 114-15. But *Demjanjuk* does not go so far. *Demjanjuk*, neither accepted nor rejected by *Padilla*, explained, "[s]hould it become known that petitioner is held in a jurisdiction other than this one, a judge of this circuit would

be divested of jurisdiction." 784 F.2d at 1116. The district court's application of a "district of arrest" rule is unsupported by *Demjanjuk* and improperly avoids *Padilla*.

In retort, Suri relies on rhetorical hyperbole, arguing that properly applying *Padilla* is "[a] chilling suggestion that habeas corpus would not be available for some government-controlled period after the government effectuates a person's incommunicado detention." Opp. at 7. First, the Suspension Clause is in Article I of the U.S. Constitution and restricts the legislature, and—in any event—the writ is not suspended by fleeting impracticalities attendant to detainee transportation. *Boumediene v. Bush*, 553 U.S. 723, 793 (2008) ("Practical considerations… inform the definition and reach of the law's writs, including habeas corpus."). Second, habeas corpus was never suspended, and the writ was always available. The petition should have been filed in the Northern District of Texas *ab initio* because that is where the challenged confinement was set to take place, and Suri's Notice to Appear ("NTA"), dated March 17, 2025, advised him of that fact. Doc. 4-2 at 72-74. The NTA identified the street address of PDF as Suri's residence, listed the PDF's telephone number as Suri's telephone number, and identified the "Prairieland Detention Center" as the room from which Suri would appear at his immigration hearing. *Id*. Suri's counsel had access to the NTA hours before the Petition was filed and thus had notice. Ex. D, ECF#21-1. When faced with this, the district court dismissed the NTA as "irrelevant" because Suri was arrested in Virginia and then

transported midday next to ASF in Louisiana, where he stayed for under 72 hours pending the foretold transit to Texas. But the initial arrest in Virginia and holding there overnight pending an outbound flight did not make Virginia the "original" "district of confinement." *Poole*, 531 F.3d at 273.

Finally, this case is a full step beyond *Öztürk*, which affirmed habeas jurisdiction in Vermont where a petitioner was held in a Vermont facility pending transit to Louisiana at the time of the petition[2]. *Cf. Öztürk*, 136 F.4th at 391. Here, it is undisputed that Suri was not detained in the Eastern District of Virginia at the time the Petition was filed; he was in Louisiana. Ex. E, ECF#57 ¶15. Consequently, under the *Öztürk* analysis, habeas jurisdiction is *still* improper in Virginia because he was physically located in Louisiana at the time of filing. *Id*. at 391 ("At the time the petition was filed, that 'one district' was the District of Vermont, where Öztürk was… for the night.").[3] No authority supports the proposition that the district "from which Petitioner was removed" prior to filing can retain habeas jurisdiction merely because it is "where Petitioner resides with his wife and children, it is where Petitioner was arrested, and it was where Petitioner was detained from the evening of March 17" until his midday flight on March 18. Doc. 4-2 at 122-24. Indeed, Suri

---

2 Öztürk's petition was originally filed in Massachusetts and transferred.

3 *Contra Poole*, 531 F.3d at 273.

acknowledges this case outstretches *Öztürk*. Opp. 9, n.4. The district court grantedhabeas relief without habeas jurisdiction.

## III. The Balance of Equities Support a Stay

While Suri claims his detention will cause financial harms and limit speech, those harms are common to all people who are lawfully detained. In contrast, Suri's release harms the government's sovereign interests in immigration, which, "during the deportation process,… includes detention." *Miranda v. Garland*, 34 F.4th 338, 364 (4th Cir. 2022). Absent intervention, the harms to that interest are irreparable, despite repeated Congressional action to cabin judicial review. *Id.* ("Congress has repeatedly shown that it considers immigration enforcement—even against otherwise non-criminal aliens—to be a vital public interest, so vital that it has tried to cabin judicial review of immigration enforcement."). Such harm is further magnified here given the intrusion on a foreign affairs matter—Secretary of State Rubio's determination that "Suri's presence and activities in the United States would have potentially serious adverse foreign policy consequences." (Doc. 4-2 at 68 ¶6); *see also* 8 U.S.C. § 1227(a)(4)(C)(i).

As for public interest, Suri, like the district court, "erred by not identifying, and thus not considering, the government's significant interest in detaining aliens pending their removal hearings." *Miranda*, 34 F.4th at 365. Further, they fail to recognize the public interest in swift Executive action to carry out its immigration

policies. *See Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 382, (2004) (recognizing "the paramount necessity of protecting the Executive Branch from vexatious litigation that might distract it from the energetic performance of its constitutional duties"). By interfering, the district court committed the same error the Supreme Court has recently repeatedly corrected: overzealous judicial obstruction of the Executive regarding immigration. *See e.g. Noem v. Doe*, 605 U.S. ___, ___ (May 30, 2025); Order of the Court, *Noem v. National TPS Alliance*, 24A1059 (May 19, 2025); *Noem v. Abrego Garcia*, 604 U.S. ___, ___ (April 10, 2025); *Trump v. J.G.G.*, 604 U.S. ___, ___ (April 7, 2025). Like in those and other cases, a stay is necessary for the Executive to enact its policies under Congress's laws without undue delay.

## IV. Mandamus is Warranted

Alternatively, mandamus relief is warranted. Suri argues that mandamus is inappropriate to review a jurisdictional decision, but the Supreme Court "h[as] not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of jurisdiction." *Kerr v. U. S. Dist. Ct. for N. Dist. of California*, 426 U.S. 394, 402 (1976). Instead, "where unwarranted judicial action threaten[s] to embarrass the executive arm of the government in conducting foreign relations," mandamus is appropriate. *Will v. United States*, 389 U.S. 90, 95 (1967) (cleaned up). Just as a discovery order can intrude on the separation of powers to

justify mandamus, so too can a release order, let alone one that implicates foreign policy interests, *see Cheney*, 542 U.S. at 382, issued when the district court lacks jurisdiction, *see In re Roman Cath. Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 37 (2d Cir. 2014).

June 12, 2025

Respectfully submitted,

ERIK S. SIEBERT
*United States Attorney*
*Eastern District of Virginia*

BRETT A. SHUMATE
*Assistant Attorney General*
*Civil Division*

DREW C. ENSIGN
*Deputy Assistant Attorney General*

WILLIAM C. PEACHEY
*Director*
Office of Immigration Litigation
District Court National Security Section

YAMILETH G. DAVILA
*Assistant Director*

DAVID J. BYERLEY
TOM B. SCOTT-SHARONI
*Trial Attorneys*

*/s/ Brandon D. Zeller*
BRANDON D. ZELLER
Trial Attorney (NC Bar # 50245)
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (771) 217-8120
Brandon.D.Zeller@usdoj.gov
*Attorneys for Respondents-Appellants*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Federal Rule of Appellate Procedure 27(d)(2)(C), I certify that the foregoing was prepared using 14-point Times New Roman type, is proportionally spaced and contains less than 2,600 words, exclusive of the tables of contents and citations, and certificates of counsel.

June 12, 2025

*/s/ Brandon D. Zeller*
BRANDON D. ZELLER
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (771) 217-8120

*Attorney for Respondents-Appellants*

## CERTIFICATE OF SERVICE

I certify that on May 23, 2025, I filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit by using the Court's CM/ECF System. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished through that system.

June 12, 2025

*s/ Brandon D. Zeller*
BRANDON D. ZELLER
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Tel: (771) 217-8120

*Attorney for Respondents-Appellants*