UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

**No. 25-1560**

———————

BADAR KHAN SURI,

        Petitioner – Appellee,

v.

DONALD TRUMP, in his official capacity as President of the United States; RUSSELL HOLT, in his official capacity as Field Office Director of Washington, Immigration and Customs Enforcement; TODD LYONS, Acting Director, U.S. Immigration and Customs Enforcement; KRISTI NOEM, in her official capacity as Secretary of the United States Department of Homeland Security; MARCO RUBIO, in his official capacity as Secretary of State; PAMELA BONDI, in her official capacity as Attorney General, U.S. Department of Justice,

        Respondents – Appellants,

and

JEFFREY CRAWFORD, in his official capacity as Warden of Farmville Detention Center,

        Respondent.

———————

ORDER

———————

WYNN, Circuit Judge:

Dr. Badar Khan Suri, who opposed the war in Gaza on social media, was detained by ICE after the government purportedly revoked his J-1 visa. The district court concluded that the government detained Suri in retaliation for his First Amendment activity, so it

ordered his release pending the disposition of his habeas petition. The government moves us to stay the district court's order pending appeal, and in the alternative, petitions for mandamus.

We deny the government's requests.[1]

## I.

## A.

Suri is an Indian national who holds a Ph.D. in Peace and Conflict Studies. Mem. Supp. Mot. to Compel Return, Ex. 1, Decl. of Mapheze Saleh ("Saleh Decl.") ¶¶ 6, 8, *Suri v. Trump*, No. 1:25-cv-480 (E.D. Va. Mar. 20, 2025), ECF No. 6-1. In 2022, Suri came to the United States on a J-1 exchange visa to study at Georgetown University, where he is now a post-doctoral scholar and teaches a class on minority rights in South Asia. *Id.* ¶ 10. He is married to Mapheze Saleh, a United States citizen. *Id.* ¶ 8.

Saleh consistently voiced opposition to the war in Gaza on social media; Suri did so on only a "handful of occasions." *Id.* ¶ 11; Am. Habeas Pet. ¶ 28, *Suri*, No. 1:25-cv-480

---

[1] We are in full agreement with our distinguished colleague's recognition that "Mr. Suri has significant equitable factors in his favor," and that the "district court found that he presents neither a danger to the community nor a risk of flight," Dis. Op. at 27—both undeniably relevant considerations in any ruling on pretrial liberty. But therein lies the rub between us: our colleague would subordinate those weighty individual equities to what he characterizes as the specter of "severe systemic damage" resulting from "parallel adjudications" of a single removal question. *Id.*

We cannot so easily consign an individual's liberty to the concerns of bureaucratic tidiness. The Constitution does not yield to administrative convenience, and due process is not suspended merely because two courts may be asked similar questions. Simply stated, human rights do not cower before the speculative perils of duplicative litigation. So, our courts should not become sanctuaries for efficiency at the expense of justice.

(E.D. Va. Apr. 8, 2025), ECF No. 34. The government asserts that, on March 15, 2025, Secretary of State Marco Rubio issued a secret memorandum—which has yet to be disclosed—purportedly finding that Suri's presence in the United States compromises American foreign policy interests. Mem. Supp. Mot. to Dismiss, Ex. 1, Decl. of Joseph Simon ("First Simon Decl.") ¶ 6, *Suri*, No. 1:25-cv-480 (E.D. Va. Apr. 1, 2025), ECF No. 26-1. The government later told Suri that it also revoked his visa, but it has not submitted evidence to that effect. Opp'n to Mot. to Dismiss, Ex. 1, Decl. of Badar Khan Suri ("Khan Suri Decl.") ¶ 4, *Suri*, No. 1:25-cv-480 (E.D. Va. April 15, 2025), ECF No. 47-1.

At around 9:30 p.m.[2] on March 17, ICE arrested Suri outside of his apartment in Rosslyn, Virginia. *Id.* ¶ 2. When Suri called Saleh downstairs, the officers told her and Suri that Suri would be taken to Chantilly, Virginia. *Id.* ¶ 6. They transported him to the ICE Field Office in Chantilly. *Id.* ¶ 9. At that location, officers presented Suri with a Notice to Appear that incorrectly listed a Texas address as his current residence and listed a hearing date of May 6 at an immigration court in Texas. *Id.* ¶ 19; First Simon Decl., Ex. 1, Notice to Appear ("NTA") at 6.

When Suri asked about the Texas address, an officer explained him that "it was just computer generated, and it might be changed later on." Khan Suri Decl. ¶ 9. An officer told Suri he would be transferred to Farmville, Virginia, and permitted him to call his wife. Khan Suri Decl. ¶ 12–13. Suri arrived at the Farmville Detention Center around 2:30 a.m. on March 18. First Simon Decl. ¶ 10; Khan Suri Decl. ¶¶ 12–14. ICE soon transferred him

---

[2] All times are provided in Eastern Daylight Time.

to Richmond, Virginia, where he arrived at 7:50 a.m.[3] First Simon Decl. ¶ 11; Khan Suri Decl. ¶ 15.

Later on March 18, without informing Suri of his destination and while denying his request to call his wife, government agents transported him to the airport and placed him on a flight departing for Louisiana at 2:47 p.m. First Simon Decl. ¶ 11; Khan Suri Decl. ¶ 15–17. Suri arrived in Alexandria, Louisiana, at 5:03 p.m. that same day, where he was booked into the detention facility at 6:42 p.m. First Simon Decl. ¶ 11; Reply to Mot. to Dismiss, Ex. 1, Second Declaration of Joseph Simon ("Second Simon Decl.") ¶ 3, *Suri*, No. 1:25-cv-480 (E.D. Va. Apr. 21, 2025), ECF No. 49-1. The government claims that it moved Suri from Virginia due to "potential overcrowding in Virginia detention facilities." First Simon Decl. ¶ 8.

Meanwhile, at 10:42 p.m. on March 17, while Suri was being processed at the ICE office in Chantilly, attorney Hassan Ahmad learned of his arrest. Mem. Supp. Mot. to Release, Ex. 1, Decl. of Hassan Ahmad ("Ahmad Decl.") ¶¶ 1, 3, *Suri*, No. 1:25-cv-480 (E.D. Va. Mar. 27, 2025), ECF No. 21-1. On March 18, Ahmad agreed with Saleh to represent Suri, and immediately began drafting a habeas petition. *Id.* ¶ 8.

At that point, Suri's last communication with the outside world had been the night before, when he told his wife that he was being brought to Farmville. Ahmad checked ICE's online detainee locator on March 18, but Suri hadn't yet appeared on that system.

---

[3] Rosslyn, Chantilly, Richmond, and the Farmville Detention Center are located in the Eastern District of Virginia.

*Id.* ¶ 9. Based on that absence—and Suri's final communication—Ahmad and Saleh reasonably believed that he was still in Virginia.

That same afternoon, Ahmad entered his appearance in Suri's immigration proceeding and was permitted to view Suri's Notice to Appear, which incorrectly listed a Texas address as Suri's current residence. *Id.* ¶ 7. Given the information relayed by Suri to Saleh, Ahmad believed that Suri was still "detained in Virginia." *Id.* ¶ 8. At 5:59 p.m. on March 18—after Suri had landed in Louisiana, but before he was booked into the detention facility there—Ahmad filed Suri's habeas petition in the Eastern District of Virginia. Habeas Pet., *Suri*, No. 1:25-cv-480 (E.D. Va. Mar. 18, 2025), ECF No. 1.

Suri was detained in Louisiana for three nights. First Simon Decl. ¶ 12; Khan Suri Decl. ¶ 18–22. It was not until March 19 that Suri appeared on the ICE online detainee locator and Ahmad learned his location. Ahmad Decl. ¶ 9.

On March 20, Suri was told he would be transferred to New York the following day, which he believed meant that he would be deported. Khan Suri Decl. ¶ 21. On that day, the district court ordered the government not to remove Suri from the United States. *Suri v. Trump (Suri I)*, No. 1:25-cv-480, 2025 WL 914757, at *1 (E.D. Va. Mar. 20, 2025). On March 21, Suri was told that he would instead be driven to Texas. Khan Suri Decl. ¶ 22. ICE drove him to the Prairieland Detention Center in Texas, where he arrived on the evening of March 21. Second Simon Decl. ¶ 3; Khan Suri Decl. ¶ 22. Suri was held there until May 14 when the district court ordered him returned to his family and released. *Suri v. Trump (Suri III)*, No. 1:25-cv-480, 2025 WL 1392143, at *1 (E.D. Va. May 14, 2025); Response Br. at 4.

B.

Ahmad filed Suri's habeas petition in the Eastern District of Virginia on March 18, naming Attorney General Pamela Bondi and others as Suri's custodians. *See* Habeas Pet. The petition alleged that Suri's detention was in retaliation for his protected First Amendment activity, and it requested that the district court order his release. *Id.* at 1, 16. On March 20, pursuant to the All Writs Act, the district court ordered "that [Suri] shall not be removed from the United States unless and until the Court issues a contrary order." *Suri I*, 2025 WL 914757, at *1.

The government moved to dismiss or in the alternative to transfer venue, arguing that the district court lacked habeas jurisdiction because Suri wasn't physically present in the Eastern District of Virginia when his petition was filed, and that the Northern District of Texas was the proper venue because Suri was on his way there at the time of filing. Mem. Supp. Mot. to Dismiss at 11, *Suri*, No. 1:25-cv-480 (E.D. Va. Apr. 1, 2025), ECF No. 26. The district court held a hearing on the issue of habeas jurisdiction, and on May 6, it denied the government's motion. *Suri v. Trump* (*Suri II*), No. 1:25-cv-480, 2025 WL 1310745, at *14 (E.D. Va. May 6, 2025). Although it recognized that habeas petitions generally must be filed in the district of confinement, it found persuasive a 2004 concurrence from Justice Kennedy in which he wrote that

> if there is an indication that the Government's purpose in removing a prisoner
> were to make it difficult for his lawyer to know where the habeas petition
> should be filed, or where the Government was not forthcoming with respect
> to the identity of the custodian and the place of detention . . . . habeas
> jurisdiction would be in the district court from whose territory the petitioner
> had been removed.

*Id.* at *5 (quoting *Rumsfeld v. Padilla*, 542 U.S. 426, 454 (2004) (Kennedy, J., concurring)).

The district court found that the government's purported reason for spiriting Suri away—overcrowding in the Virginia facilities—was "riddled with inconsistencies" and "undermined by the fact that Prairieland Detention Center, where petitioner is currently held, is overcrowded. . . . It is uncontroverted that Dr. Khan Suri was placed in a dormitory that has a 36-person capacity but has been filled with at least 50 people since he arrived." *Id.* at *11. Therefore, "it appears that Respondents' goal in moving Petitioner was to make it difficult for Petitioner's counsel to file the petition and to transfer him to the Government's chosen forum." *Id.*

On May 14, after another hearing, the court granted Suri's motion to return him to Virginia and to release him, concluding that Suri was detained in retaliation for protected speech and association. *Suri III*, 2025 WL 1392143, at *1. It rejected the government's argument that several provisions of the immigration code preclude habeas relief. Mot. Ex. H at 24–26 (Transcript of Bond Hearing). And it found that Suri was entitled to bail because there was "no credible evidence supporting that he is a danger to the community" and that his release was necessary to "disrupt the chilling effect of retaliation." *Id.* at 35. The government moved the district court to stay its order pending appeal, *id.* at 36, and the district court denied the motion, *id.* at 37.

The government appealed the March 20 order not to remove Suri and the May 14 order to release him. It now moves this Court for a stay of the release order pending appeal and petitions for mandamus. Mot. at 6, 20.

II.

We consider four factors when weighing a motion to stay: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). "The party requesting a stay"—here, the government—"bears the burden of showing that the circumstances justify an exercise of [the Court's] discretion." *Nken v. Holder*, 556 U.S. 418, 433–34 (2009).

The government doesn't contest the district court's finding that it detained Suri in retaliation for his First Amendment activity. Instead, it makes two jurisdictional arguments: that the district court lacked jurisdiction because Suri was physically present in Louisiana when his habeas petition was filed, and that various provisions of the immigration code prohibit the district court from exercising subject-matter jurisdiction over Suri's habeas petition. The government is unlikely to succeed on the merits of either argument. Furthermore, the equities lie firmly in Suri's favor.

We therefore deny the government's motion.

A.

First, the government contends that the district court, sitting in the Eastern District of Virginia, lacked habeas jurisdiction because Suri wasn't physically present in that

district at the time of filing.[4] Mot. at 7. (He had landed in Louisiana less than an hour earlier.) The government has not shown a strong likelihood of success on this argument.

Certainly, 28 U.S.C. § 2241 provides district courts authority to grant writs of habeas corpus "within their respective jurisdictions." The Supreme Court has held that "[t]he plain language of the habeas statute thus confirms the general rule that for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Padilla*, 542 U.S. at 443. And because "[b]y definition, the immediate custodian and the prisoner reside in the same district," the Court generally requires petitioners to name "some person who has the *immediate custody* of the party detained" rather than "the Attorney General or some other remote supervisory official." *Id.* at 435, 444 (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

However, these "default" rules are not absolute. *Id.* at 435. When a detainee is held in a secret location, their attorneys "cannot be expected to file in the jurisdiction where [they are] held" as it "is impracticable to require the attorneys to file in every jurisdiction." *Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986) (Bork, J., in chambers)

---

[4] The government is unclear where Suri should have filed instead. It argued to the district court that if it did not dismiss the case, it should transfer it to the Northern District of Texas. Mot. to Dismiss at 14. But transfers are only permissible to "a district where [a case] could have been brought." 28 U.S.C. § 1406(a). There is absolutely no reason to think, and the government points to no case indicating, that a habeas petition challenging present confinement could be filed in a district to which a petitioner had not yet been. Only begrudgingly, and in the alternative, did the government argue that a transfer to the Western District of Louisiana might be permissible under "out-of-circuit" precedent. Mot. to Dismiss at 14. On appeal, the government reiterates that Suri should have filed in "either the Northern District of Texas . . . or the Western District of Louisiana." Mot. at 7.

(allowing suspected war criminal held in confidential location to file a habeas petition in the D.C. Circuit). Yet "it is essential that [the] petitioner not be denied the right to petition for a writ of habeas corpus." *Id.* The Supreme Court thus recognized an exception in *Rumsfeld v. Padilla*, writing that when "a prisoner is held in an undisclosed location by an unknown custodian, it is impossible to apply the immediate custodian and district of confinement rules." 542 U.S. at 450 n.18 (citing *Demjanjuk*, 784 F.2d at 1116).

Although it also encompasses a "district of confinement" exception, *id.* at 450 n. 18, courts refer to this as the "unknown custodian exception," *see, e.g.*, *Khalil v. Joyce*, No. 25-cv-01963, 2025 WL 972959, at *28 (D.N.J. Apr. 1, 2025), *mot. to certify appeal granted*, No. 25-cv-01963, 2025 WL 1019658 (D.N.J. Apr. 4, 2025). We applied that exception in *United States v. Moussaoui*, 382 F.3d 453 (4th Cir. 2004), albeit not in a challenge to present confinement. When a suspected terrorist filed a writ of habeas corpus ad testificandum to require the testimony of several "enemy combatant witnesses" who were in U.S. military custody, we held that "the writ is properly served on the prisoner's ultimate custodian" because "the immediate custodian is unknown." *Id.* at 465 (first citing *Demjanjuk*, 784 F.2d at 1116; and then citing *Padilla*, 542 U.S. at 450 n.18).

The unknown-custodian exception is critical because a detainee must always have an available forum for a habeas petition, even if the government doesn't disclose their location. As Blackstone put it, "the king is at all times [e]ntitled to have an account, why the liberty of any of his subjects is restrained, wherever that restraint may be inflicted." 3 William Blackstone, *Commentaries* *131. Put another way, "there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States

cannot call on a court to hear his case and decide it." *Khalil*, 2025 WL 972959, at *37. Challenges to present confinement, such as Suri's, "fall within the 'core' of the writ of habeas corpus." *Trump v. J. G. G.*, 145 S. Ct. 1003, 1005 (2025) (quoting *Nance v. Ward*, 597 U.S. 159, 167 (2022)). And "absent suspension, the writ of habeas corpus remains available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004).

This case is a prime example for why the unknown-custodian exception exists. After detaining Suri, ICE officers told him that he would be taken to Farmville, Virginia, and allowed him to inform his wife of that fact. Khan Suri Decl. ¶ 12–13. But ICE took Suri to Farmville for only a few hours before driving him to Richmond, Virginia, and then flying him to Louisiana—while denying his request to tell his wife of these developments. *See* First Simon Decl. ¶ 11; Khan Suri Decl. ¶ 15–17.

The government does not contest the district court's finding that it used these tactics to shop for a forum it perceived as more favorable and to make it difficult for Suri's attorney to file a habeas petition on his behalf.[5] *Suri II*, 2025 WL 1310745, at *11. Further, the ICE online detainee tracker did not show Suri's location until the day after his petition was filed. Ahmad Decl. ¶ 9. Under those circumstances, no "diligent attorney could have

---

[5] The government argued to the district court that it moved Suri due to overcrowding concerns, but, as the district court noted, it transferred him from a facility with available beds to an overcrowded facility where he was forced to sleep on a plastic cot on the floor. *Suri II*, 2025 WL 1310745, at *11.

known that [Suri] was in Louisiana at the time [his attorney] filed the petition." *Suri II*, 2025 WL 1310745, at *8.

The government also doesn't contest the district court's finding that it apparently intended to deport Suri on March 21—meaning that the district court's order forbidding the government from doing so came with just hours to spare. *See id.* at *4. Without that order, Suri may well have been deported without the reasonable notice and opportunity for judicial review that "all nine Justices agree[]" is due. *A. A. R. P. v. Trump*, 145 S. Ct. 1364, 1368 (2025) (citing *J. G. G.*, 145 S. Ct. at 1006). If there is little case law applying the unknown-custodian exception, that is because the government has rarely resorted to such tactics in the past.

Furthermore, even had Suri's attorney known that Suri was in Louisiana, it still wouldn't have been possible to file there. Given the government's repeated failure to identify Suri's immediate custodian at the time of filing—despite multiple entreaties—the district court found that Suri had no immediate custodian at that time. *Suri II*, 2025 WL 1310745, at *8. We agree with the district court. For the first time in its reply brief on appeal, the government lamely contends that Suri was "awaiting check-in" at the Alexandria Staging Facility in Louisiana when his petition was filed, so his immediate custodian was the director of that facility. Reply Br. at 6–7. But the government's only evidence for this assertion is a declaration claiming that Suri was "recorded as booked into the Alexandria Staging Facility shortly after at 6:42 p.m."—forty-three minutes *after* his petition was filed. *Id.* at 6 (citing Reply Br. Ex. A, at ¶¶ 15–16). This reinforces the

conclusion that if Suri wasn't allowed to file in the Eastern District of Virginia, he couldn't have filed anywhere.

We thus cannot agree that the district court lacked habeas jurisdiction to intervene. "The very nature of the writ demands that it be administered with the initiative and flexibility essential to insure that miscarriages of justice within its reach are surfaced and corrected." *Harris v. Nelson*, 394 U.S. 286, 291 (1969). So, if the government moves a detainee from a district and their attorney cannot discover their location with reasonable inquiry, that attorney must be able to file a habeas petition in the detainee's last-known location against their ultimate custodian. Otherwise, that detainee would lack the ability to seek habeas relief as long as the government kept their location and custodian a secret, thus granting "the political branches . . . the power to switch the Constitution on or off at will," "leading to a regime in which . . . the President, not th[e Supreme] Court, say[s] 'what the law is.'" *Boumediene v. Bush*, 553 U.S. 723, 765 (2008) (quoting *Marbury v Madison*, 5 U.S. (1 Cranch) 137, 177 (1803)).

The government protests that the unknown-custodian exception applies only "where one's detention is a *prolonged* secret." Mot. at 10 (emphasis added). The only authority it cites for this proposition is *Demjanjuk*, which says no such thing. *Id.* (citing 784 F.2d at 1116). Neither does *Padilla*. 542 U.S. at 450 n.18. Nor *Moussaoui*. 382 F.3d at 465.

Here, had the Eastern District of Virginia not intervened, the government apparently would have deported Suri long before a "prolonged" period elapsed. *See Suri II*, 2025 WL 1310745, at *4. Indeed, recently, the government has provided some detainees just hours of notice before attempting to deport them. *See A. A. R. P.*, 145 S. Ct. at 1368. It has also

argued that, once a detainee is deported, it is powerless to secure their return—even if they never received the ability to defend themselves, and even if their deportation was in error. *Id.* (citing Decl. of Joseph N. Mazzara, *Abrego Garcia v. Noem*, No. 8:25–cv–951 (D. Md. Apr. 15, 2015), ECF No. 77). Amid these circumstances, even temporary lapses in the protections of habeas corpus could result in a detainee's deportation without judicial review. Yet, "[t]he test for determining the scope of [the writ of habeas corpus] must not be subject to manipulation by those whose power it is designed to restrain." *Boumediene*, 553 U.S. at 765–66. We will not require attorneys to wait to file a habeas petition until a "prolonged" period has elapsed or the government sees fit to reveal their client's location. At that point, it might be too late.

In sum, the unknown-custodian exception squarely applies here. At the time of filing, Suri was undisputedly held in an undisclosed location by an unknown custodian. Despite his best efforts, Suri's attorney had no way of knowing where Suri was or who held immediate custody over him. *Suri II*, 2025 WL 1310745, at *8. Jurisdiction is therefore proper in Suri's last-known location, and the only place his attorney reasonably could have filed a petition: the Eastern District of Virginia.[6]

---

[6] As an alternative basis for our conclusion, we adopt Justice Kennedy's reasoning from his concurrence in *Padilla*, which the First Circuit anticipated in its 2000 decision in *Vasquez v. Reno*. *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring) (where "there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention . . . habeas jurisdiction would be in the district court from whose territory the petitioner had

B.

Next, the government contends that the immigration code deprived the district court of jurisdiction over Suri's habeas petition. The government has not made a strong showing that this argument is likely to succeed.

To the contrary, the Supreme Court instructs that we should "take account . . . of the presumption favoring interpretations of statutes [to] allow judicial review . . . absent clear statement." *Kucana v. Holder*, 558 U.S. 233, 237 (2010) (quotation marks and citation omitted). We see no indication at all that Congress intended to strip district courts of jurisdiction over habeas challenges to unconstitutional immigration detention.

As an initial matter, the government moves to stay only the district court's May 14 order to release Suri. Mot. at 6 ("This Court Should Stay the District Court's Order Releasing Suri."). The district court's other orders, and Suri's other prayers for relief, are not at issue here. "So long as part of [Suri's] challenge to his detention falls outside of [the immigration code's jurisdiction-stripping provisions], his petition survives, as does the district court's authority to order his release." *Mahdawi v. Trump*, 136 F.4th 443, 450 n.3 (2d Cir. 2025). Therefore, all we must determine is whether the district court had authority to order Suri's release from detention.

_____

been removed"); *see Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000) (the default habeas rules do not apply if the government "spirited an alien from one site to another in an attempt to manipulate jurisdiction"). That is precisely the situation here: the government doesn't contest the district court's finding that it removed Suri from the Eastern District of Virginia in part "to make it difficult for Petitioner's counsel to file the petition." *Suri II*, 2025 WL 1310745, at *11. Jurisdiction is therefore proper in that district.

The first provision the government points to is 8 U.S.C. § 1252(g), which provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The government argues that Suri's challenge arises from a decision "to commence removal proceedings," so he must bring his challenges in the normal course of immigration proceedings. Mot. at 11. Our dissenting colleague agrees. Dis. Op. at 25–26.

This argument stretches § 1252(g) beyond its text in direct contravention of Supreme Court precedent. In *Zadvydas v. Davis*, 533 U.S. 678 (2001), the Supreme Court specifically rejected the idea that § 1252(g) stripped federal courts of jurisdiction over habeas challenges to present immigration confinement. *Id.* at 688. The Supreme Court has elsewhere described § 1252(g) as "narrow[]" and directed "against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion." *Reno v. Am.-Arab Anti-Discrimination Comm.* (*AADC*), 525 U.S. 471, 482, 485 n.9 (1999). This bar on judicial review is thus cabined "to three discrete actions": a decision "to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Id.* at 482 (quoting 8 U.S.C. § 1252(g)). The Supreme Court has accordingly "rejected as 'implausible' the Government's suggestion that § 1252(g) covers 'all claims arising from deportation proceedings' or imposes 'a general jurisdictional limitation.'" *Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (quoting *AADC*, 525 U.S. at 482).

Because § 1252(g) simply doesn't extend to habeas challenges to present immigration confinement, courts routinely exercise jurisdiction over such challenges. For

example, the Supreme Court granted a habeas petition challenging present immigration confinement in *Clark v. Martinez*, 543 U.S. 371, 386–87 (2005). In *Castaneda v. Perry*, 95 F.4th 750 (4th Cir. 2024), we exercised jurisdiction over a habeas challenge to present immigration confinement, though we denied it on the merits. *Id.* at 762. In a scenario materially identical to Suri's, the Second Circuit rejected the government's argument that § 1252(g) precluded a district court's jurisdiction because the habeas petitioner's "claims of unlawful and retaliatory detention are independent of, and collateral to, the removal process," so the petitioner's "detention does not arise from the government's 'commence[ment of] proceedings.'" *Öztürk v. Hyde*, 136 F.4th 382, 397–98 (2d Cir. 2025) (quoting *AADC*, 525 U.S. at 482). And, were there any remaining doubt, the Supreme Court recently reaffirmed that challenges to present immigration confinement "fall within the 'core' of the writ of habeas corpus." *J. G. G.*, 145 S. Ct. at 1005 (quoting *Nance*, 597 U.S. at 167).

Under the government's (and the dissent's) sweeping interpretation of § 1252(g), each of those courts lacked jurisdiction over habeas challenges to present confinement. That view contravenes *Zadvydas* and reads into § 1252(g) precisely the kind of "general jurisdictional limitation" that the Supreme Court "rejected as 'implausible.'" *Regents of the Univ. of Cal.*, 591 U.S. at 19 (quoting *AADC*, 525 U.S. at 482). And in contrast to this uniform body of case law, neither the government nor the dissent points to a single case holding that § 1252(g) strips jurisdiction over habeas challenges to present confinement. The government contends that the Supreme Court's decision in *Reno v. AADC* "barred claims strikingly similar to those brought here." Mot. at 14 (citing 525 U.S. at 487–92).

But unlike Suri, the *AADC* petitioners sought "to prevent the initiation of deportation proceedings," and therefore fell squarely within the statute's scope. *AADC*, 525 U.S. at 474. "The habeas claims in that case did not sound in unlawful *detention* at all, and it is therefore of no help to the government." *Öztürk*, 136 F.4th at 398. For the same reason, the dissent's citation to *Johnson v. Whitehead*, 647 F.3d 120 (4th Cir. 2011), is unavailing. That case involved a habeas petitioner's attempt to "have [the Department of Homeland Security] forever precluded from seeking his removal," rather than a challenge to present confinement. *Id.* at 123.

Here, the district court's May 14 order—which is the only order that the government moves to stay—required the government to release Suri from detention. *Suri v. Trump*, No. 1:25-cv-480, 2025 WL 1392143, at *1 (E.D. Va. May 14, 2025). It did not interfere with the decision to commence removal proceedings against him; in fact, the district court specifically required Suri to "participate in his removal proceedings" as a condition of his release. *Id.* The May 14 order therefore falls outside § 1252(g)'s scope.

Nor are the normal course of immigration proceedings sufficient for Suri to obtain his requested habeas relief. *Contra* Dis. Op. at 23–24. The district court concluded—and the government *does not contest*—that ICE unconstitutionally *detained* Suri in retaliation for posting on social media in opposition to the war in Gaza and for his familial associations, so it ordered his immediate release. Mot. Ex. H, at 35. Absent habeas relief, an immigration detainee can generally seek judicial review of a final order of removal—but the court would be powerless to remedy any unconstitutional detention that had already occurred. That is why we have habeas proceedings in the first place. *See* 28 U.S.C. § 2241

(granting federal courts habeas jurisdiction for challenges to "custody in violation of the Constitution"); *see Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990) ("[W]rits of habeas corpus are intended to afford a swift and imperative remedy in all cases of illegal restraint or confinement."). We thus cannot "sanction the abrogation of habeas corpus . . . in the manner attempted here." *Abrego Garcia v. Noem*, No. 25-1404, 2025 WL 1135112, at *2 (4th Cir. Apr. 17, 2025).

Beyond its lack of statutory basis, the dissent's concern over "unsustainable litigiousness" is overblown. Dis. Op. at 23. As discussed, there is nothing novel about immigration detainees filing habeas petitions challenging their present confinement. We expect that in the ordinary course, the government will have no difficulty justifying a noncitizen's confinement pending removal proceedings and answering any allegations of unconstitutional detention. Here, the government has done neither. In any event, the alternative—permitting the government to unconstitutionally detain noncitizens on trumped-up charges with little or no evidence and leaving them to await the outcome of removal proceedings—presents a far greater risk of "severe systemic damage." *Id.* at 27.

The government next points to 8 U.S.C. § 1252(a)(5) and (b).[7] Mot. at 15. Section 1252(b) provides that, "[w]ith respect to review of an order of removal," any question "arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under

_____

[7] The government cites (b)(9) in particular, Mot. at 15, but we cannot analyze (b)(9) without reference to the limiting language in (b).

this section." Section 1252(a)(5) provides that procedure, granting courts of appeals exclusive jurisdiction over "judicial review of an order of removal entered or issued under any provision of this chapter." The government argues that these provisions work together to strip district courts of habeas jurisdiction over "decisions to detain for purposes of removal or for removal proceedings" because they are "inextricably intertwined with the final order of removal that precedes issuance of any removal order." Mot. at 19.

On their face, these provisions apply only to challenges to an "order of removal." There is no such order here, so these provisions don't apply. *See Öztürk*, 136 F.4th at 399 (rejecting the government's argument because "[n]o such order of removal is at issue here").

We therefore conclude that the government has not shown a strong likelihood of success on either of the arguments in its stay motion.

## C.

The other stay factors also weigh strongly against our intervention at this preliminary stage.

The government argues that it "suffers a form of irreparable injury" "[a]ny time [it] is enjoined by a court from effectuating statutes enacted by representatives of its people." Mot. at 19 (quoting *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers)). But it fails to explain why releasing Suri prevents it from enforcing the immigration statutes. It is still free to pursue an order of removal through the normal process—indeed, the district court required Suri to "participate in his removal proceedings" as a condition of his release. *Suri III*, 2025 WL 1392143, at *2.

Furthermore, the equities and the public interest lie firmly in Suri's favor. The government doesn't contest the district court's finding that it detained Suri in retaliation for his First Amendment activity. Motion Ex. H, at 30. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). A stay here would allow the government to immediately re-detain Suri, which would further chill speech protected by the First Amendment.

Finally, the government's apparent "goal in moving [Suri] was to make it difficult for [his] counsel to file the petition and to transfer him to the Government's chosen forum." *Suri II*, 2025 WL 1310745, at *11. "[A] stay of a lower-court decision is an equitable remedy. It should not be given if the moving party has not acted equitably, and that is the situation here." *Danco Lab'ys, LLC v. All. for Hippocratic Med.*, 143 S. Ct. 1075, 1076 (2023) (Alito, J., dissenting from grant of application for stays).

### III.

The government alternatively requests that we issue a writ of mandamus "because the district court's order amounts to a judicial usurpation of the Executive's exclusive statutory powers and preeminent constitutional powers over immigration." Mot. at 21. But, aside from this heated rhetoric, the government's only substantive argument is that the district court lacked jurisdiction over Suri's habeas petition. In considering a petition for mandamus, "appellate courts are reluctant to interfere with the decision of a lower court on jurisdictional questions which it was competent to decide and which are reviewable in the regular course of appeal." *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 26 (1943). And

regardless, we conclude that the district court did possess habeas jurisdiction. We therefore decline to order the "drastic and extraordinary remed[y]" of mandamus. *Ex parte Fahey*, 332 U.S. 258, 259 (1947).

IV.

In sum, the sequence of events here underscores a critical point: jurisdiction in this matter was neither speculative nor opportunistic. Instead, it was based on the only information available to the petitioner and his counsel, because the government chose to move Suri without informing his wife or attorney of his location or custodian. If not for our conclusion that jurisdiction lies in the Eastern District of Virginia, that deliberate choice would have deprived the petitioner of any meaningful opportunity to contest his detention prior to removal to a distant jurisdiction.

Such conduct raises serious concerns. To allow the government to undermine habeas jurisdiction by moving detainees without notice or accountability reduces the writ of habeas corpus to a game of jurisdictional hide-and-seek.

Because the government has not demonstrated that it is entitled to preliminary relief, we deny its motion for stay pending appeal and its petition for mandamus.

Entered at the direction of Judge Wynn with the concurrence of Judge Benjamin. Judge Wilkinson filed a dissenting opinion.

FOR THE COURT

/s/ Nwamaka Anowi, Clerk

WILKINSON, Circuit Judge, dissenting:

As the majority opinion reveals, this case has a perfectly confusing core. Questions abound: Who was where, and why? Who knew what, and when? When the fog lifts, however, a crystal clear inquiry emerges: Are federal habeas proceedings, valued as they are, intended as a means of circumventing the usual immigration process?

I do not believe they were meant to serve this function. If they were, the parties would face largely duplicative proceedings over the same issues, one before an immigration judge and another before a federal district court judge. I am reluctant to take this first step towards such unsustainable litigiousness. While I do not make light of the difficulties that have led my good colleagues to a different answer, I would grant the government's motion for a stay pending appeal. Anything else would presage a perennial clash of rulings and orders between two different sets of federal tribunals.

I.

Mr. Suri has filed a habeas petition in the Eastern District of Virginia challenging his detention during the pendency of deportation proceedings in Texas. Stripped to their essentials, both proceedings seek to determine the same underlying question of Mr. Suri's removability. Indeed, his arguments against detention are substantially the same as his arguments against his attempted removal. As the majority notes, he asserts that both are acts of "retaliation for his protected First Amendment activity." Maj. Op. at 6.

This would be a different case if the procedures afforded to Mr. Suri in his deportation proceedings were constitutionally insufficient. I am not persuaded, however, that factfinding by an Immigration Judge and review by the Board of Immigration Appeals,

with possible judicial review of an order of removal, render the process so deficient in fairness that it should be displaced by habeas proceedings.

This would also be a different case if the deportation proceedings did not afford Mr. Suri the opportunity to be heard on his constitutional claims. But neither Mr. Suri nor the majority appear to contest that judicial review of an order of removal, if one is entered, will extend to the essential constitutional questions. *See* 8 U.S.C. § 1252(b)(9) (providing that judicial review of a final removal order shall encompass "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien"). Although the factual record may be more limited than it would be in the district court, due process does not require that all constitutional claims be entertained in identical circumstances. *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976) ("Due process is flexible, and calls for such procedural protections as the particular situation demands.").

Allowing both proceedings to move forward thus presents the government with the prospect of having to defend against the same constitutional arguments in two different forums. It will face, in essence, a double burden of proof here and in many a removal case. This is a prescription for "the deconstruction, fragmentation, and hence prolongation of removal proceedings" at odds with the express wishes of Congress and the Supreme Court to achieve at least a modest measure of clarity and expedition in immigration enforcement. *Reno v. Am.-Arab Anti-Discrimination Comm. (AADC)*, 525 U.S. 471, 487 (1999).

## II.

It is no answer to say that, when there is a conflict of this sort, the habeas proceeding should invariably take precedence. I fear that it will be too easy a matter to extract from the majority's rhetoric such an open habeas availability rule. Habeas is a hallowed vehicle for challenging confinement and "an integral part of our common law heritage." *Preiser v. Rodriguez*, 411 U.S. 475, 485 (1973). The habeas rules, however, were not developed over the centuries with an eye toward immigration proceedings, whereas the Immigration and Nationality Act (INA) was drafted with such proceedings solely in mind. In other words, the INA is more specific and on point. And a specific, on point statute may divest courts of jurisdiction even over claims at the "core" of the Great Writ. Maj. Op. at 17; *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The power of federal courts to enjoin unlawful executive action is subject to . . . statutory limitations."); *Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) ("Congress has specifically prohibited the use of habeas corpus petitions as a way of obtaining review of questions arising in removal proceedings.").

Indeed, the INA divests courts of habeas jurisdiction over claims "arising from" the government's decision to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). The clarity and force of this provision limits the hair-breadth distinctions that the majority would have us draw. *See* Maj. Op. at 16–17. In my view, when the government detains an alien under § 1226(a)—which authorizes detention "pending a decision on whether the alien is to be removed"—the detention arises from the commencement of proceedings or adjudication of cases. As a result, the government's

decision to detain is one of the "discretionary determinations" that the INA provides "some measure of protection" from judicial intervention. *AADC*, 525 U.S. at 485. Although the majority writes that a different outcome is dictated by *Zadvydas*, that case is inapposite because it concerned a challenge to the government's authority to indefinitely detain, not the government's discretionary *decision* to detain under the circumstances here. *See* Maj. Op. at 16; *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001).

The government is thus not wrong to suggest that the habeas proceeding here should step aside. The opposite result will convert the habeas proceeding into a vehicle for collateral attacks on the deportation proceeding, requiring the courts to resolve a host of complex, fact-bound jurisdictional questions. The majority's lengthy discussions in this case concerning the district of confinement rule, the immediate custodian rule, and the unknown custodian exception offer but a foretaste of the confusion lying in wait for the majority's decision. *See* Maj. Op. at 8–14. Direct appeals are often thought a more desirable route to justice than collateral attacks, and lengthy collateral attacks on ongoing rather than completed proceedings seem less desirable still.

III.

The parties are far apart in their general perceptions. The government would have too little litigation while those resisting deportation wish to have too much. Each position in its absolute form has serious infirmities. Too little litigation strips those facing vast dislocations in their lives and personal relationships of their basic right to due process of law. But too much litigation brings no end to legal entanglements and delays, undermining

the prosecutorial discretion that is core to the government's legitimate claims of sovereignty.

I do respect and acknowledge the fact that Mr. Suri has significant equitable factors in his favor. The district court found that he presents neither a danger to the community nor a risk of flight, which are both important considerations in rulings on pretrial release and bond pending appeal. Hr'g Tr., May 14, 2025, at 34–35. Yet the government's jurisdictional arguments with regard to the INA are not without considerable force, and they weigh against Mr. Suri's likelihood of success on the merits of the appeal. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (describing the likelihood of success inquiry as more important than the balancing of the equities).

Ultimately, the severe systemic damage that would result from allowing parallel adjudications upon the same essential question of Mr. Suri's removability persuades me, with all respect to my fine colleagues, that we should grant the government's motion for a stay pending this appeal.