No. 25-1560

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

BADAR KHAN SURI,
Petitioner-Appellee,

v.

DONALD J. TRUMP, *et al.*,
Respondent-Appellants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
District Court Case No. 1:25-cv-00480

---

RESPONDENT-APPELLANTS' OPENING BRIEF

---

BRETT SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney
General
Office of Immigration Litigation

WILLIAM C. PEACHEY
Director

YAMILETH G. DAVILA
Assistant Director

ERIK S. SIEBERT
United States Attorney
Eastern District of Virginia

DAVID J. BYERLEY
BRANDON D. ZELLER
Trial Attorneys
Office of Immigration Litigation
Civil Division, U.S. Dept. of
Justice
P.O. Box 878, Ben Franklin
Station
Washington, DC 20044

*Attorneys for Federal
Respondents*

## TABLE OF CONTENTS

**INTRODUCTION**.................................................................................1

**JURISDICTIONAL STATEMENT** ....................................................3

**STATEMENT OF THE ISSUES**.........................................................3

**STATEMENT OF THE CASE**.............................................................4

    I.    **Factual Background**................................................4

    II.   **Procedural History**................................................8

**SUMMARY OF ARGUMENT** .............................................................11

**STANDARD OF REVIEW**..................................................................12

**ARGUMENT** .......................................................................................13

    I.    **The district court lacked jurisdiction over the habeas petition**..................................................................13

        A.  **Habeas jurisdiction attaches only if the petition is filed in the district of confinement against the immediate custodian** ...................................................13

        B.  **The district court misapplied precedent by recognizing exceptions to the immediate custodian and district of confinement rules** ..........18

        C.  **The district court improperly sought to punish the Government by applying exceptions to the default rules of habeas jurisdiction** ........................................28

        D.  **Even if the district court had habeas jurisdiction, it should have transferred the case** ..............................30

**II.    The INA stripped the court of jurisdiction to enter the challenged orders** ...................................................... 34

    **A.   Section 1252(g)** ...................................................... 34

    **B**.   **Section 1252(a)(5) and (b)(9)** ..................................... 47

**III.   The All Writs Act did not authorize the district court's injunction preventing petitioner's removal** ... 55

**CONCLUSION** ....................................................................... 60

**CERTIFICATE OF SERVICE** ........................................... 62

# TABLE OF AUTHORITIES

**PAGE(S)**

### Cases

*Aguilar v. ICE*,
   510 F.3d 1 (1st Cir. 2007)....................................................................48

*Alvarez v. U.S. ICE*,
   818 F.3d 1194 (11th Cir. 2016) .........................................................43

*BedRoc Ltd., LLC v. United States*,
   541 U.S. 176 (2004) .............................................................................29

*Bostock v. Clayton Cnty., Georgia*,
   590 U.S. 644, (2020) ............................................................................27

*Braden v. 30th Jud. Cir. Ct. of Ky.*,
   410 U.S. 484 (1973) .............................................................................28

*Calcano-Martinez v. INS*,
   232 F.3d 328 (2d Cir. 2000)...............................................................48

*Castaneda v. Perry*,
   95 F.4th 750 (4th Cir. 2024)............................................. 41, 42, 46

*Clark v. Martinez*,
   543 U.S. 371 (2005) ....................................................................41, 46

*Clinton v. Goldsmith*,
   526 U.S. 529 (1999) .............................................................................56

*Demjanjuk v. Meese*,
   784 F.2d 1114 (D.C. Cir. 1986) ................................................. passim

*Dep't of Homeland Sec. v. Regents of the Univ. of California*,
   591 U.S. 1 (2020) .................................................................................43

*Diaz-Portillo v. Garland*,
   2023 WL 7212269 (4th Cir. Nov. 2, 2023) .....................................37

*Don v. Garland*,
   855 F. App'x 158 (Mem) ......................................................................37

*Dvortsin v. Noem*,
   2025 WL 1751968 n.10 (D. Colo. June 12, 2025)...........................31

E.F.L. v. Prim,
   986 F.3d 959 (7th Cir. 2021) .............................................................35

*Enriquez-Perdomo v. Newman*,
   54 F.4th 855 ................................................................. 35
*Ex Parte Endo*,
   323 U.S. 283 (1944) ....................................... 15, 16, 28
*FTC v. Dean Foods Co.*,
   384 U.S. 597 (1966) ....................................................... 8
*Gupta v. McGahey*,
   709 F.3d 1062 (11th Cir. 2013) ................................. 43
*Harris v. Nelson*,
   394 U.S. 286 (1969) ..................................................... 27
*Humphries v. Various Fed. USINS Emps.*,
   164 F.3d 936 (5th Cir. 1999) ..................................... 37
*Öztürk v. Hyde*,
   136 F.4th 382 (2d Cir. 2025) ...................................... 51
*INS v. St. Cyr*,
   533 U.S. 289 (2001) ..................................................... 53
*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) ................................... 49
*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ................................................. 6, 54
*Jimenez-Angeles v. Ashcroft*,
   291 F.3d 594 (9th Cir. 2002) ..................................... 37
*Johnson v. Whitehead*,
   647 F.3d 120 (4th Cir. 2011) ................................. 45, 48
*Khalil v. Joyce*,
   771 F. Supp. 3d 268 (S.D.N.Y. 2025) ..................... 28, 31
*Khalil v. Joyce*,
   2025 WL 1232369 (D.N.J. Apr. 29, 2025) ............. 51, 52
*Las Americas Immigrant Advoc. Ctr. v. Trump*,
   451 F. Supp. 3d 1191 (D. Or. 2020) ......................... 57
*Limpin v. United States*,
   828 F. App'x 429 (9th Cir. 2020) ........................... 38, 46
*Loera Arellano v. Barr*,
   785 F. App'x 195 (4th Cir. 2019) ............................... 37
*Loper Bright Enters. v. Raimondo*,
   603 U.S. 369 (2024) ..................................................... 27
*Lovern v. Edwards*,
   190 F.3d 648 (4th Cir. 1999) ..................................... 12

*Malik v. Gonzales,*
   213 F. App'x 173 (4th Cir. 2007).........................................37

*Mehr v. Gonzalez,*
   246 F. App'x 211 (4th Cir. 2007).........................................37

*Miranda v. Garland,*
   34 F.4th 338 (4th Cir. 2022).........................................49, 50

*Omega World Travel, Inc. v. Trans World Airlines,*
   111 F.3d 14 (4th Cir. 1997).........................................57

*Pa. Bureau of Corr. v. U.S. Marshals Serv.,*
   474 U.S. 34 (1985).........................................59

*Padilla v. Rumsfeld,*
   542 U.S. 426 (2004)................................................. passim

*Pineda-Perez v. Garland,*
   2023 WL 5771045 (4th Cir. Sept. 7, 2022) .........................................37

*Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC,*
   139 F.4th 404 (4th Cir. 2025).........................................13

*Rauda v. Jennings,*
   55 F.4th 773 (9th Cir. 2022).........................................35, 46, 55

*Reno v. Am.-Arab Anti-Discrimination Comm.,*
   ("AADC"), 525 U.S. 471 (1999)................................................. passim

*Schmitz v. Zilveti,*
   20 F.3d 1043 (9th Cir. 1994) .........................................25

*Sissoko v. Rocha,*
   509 F.3d 947 (9th Cir. 2007) .........................................37

*Solomon v. Gonzales,*
   182 F. App'x 170 (4th Cir. 2006).........................................37

*State Oil Co. v. Khan,*
   522 U.S. 3 (1997).........................................19

*Syngenta Crop Prot., Inc. v. Henson,*
   537 U.S. 28 (2002).........................................56

*Tazu v. Att'y Gen. United States,*
   975 F.3d 292 (3d Cir. 2020).........................................35, 49

*Trabelsi v. Crawford,*
   2024 WL 5497113 (E.D. Va. Dec. 2, 2024).........................................38, 49

*Trump v. CASA, Inc.,*
   No. 24A884, 2025 WL 1773631 (U.S. June 27, 2025) .........................................30

*Trump v. J.G.G.,*
   145 S Ct. 1003 (U.S. Apr. 7, 2025).........................................13, 41, 42

v

*United States v. Fisher,*
  6 U.S. 358 (1805) ................................................................ 29
*Vasquez v. Reno,*
  233 F.3d 688 (1st Cir. 2000) ............................................... 26
*Villanueva-Herrera,*
  33 F. App'x 145 (4th Cir. 2002) ..................................... 36, 37
*Zadvydas v. Davis,*
  533 U.S. 678 (2001) ..................................................... 40, 46
*Öztürk v. Trump,*
  777 F. Supp. 3d 26 (D. Mass. 2025) ............................... 25, 31

### Statutes

6 U.S.C. § 202(3) ................................................................ 35
8 U.S.C. § 1101(a)(15)(j) ....................................................... 4
8 U.S.C. § 1226 ................................................................... 40
8 U.S.C. § 1226(a) ................................................................ 5
8 U.S.C. § 1226(e) ............................................................... 50
8 U.S.C. § 1229a ................................................................. 58
8 U.S.C. § 1231(a)(1) ........................................................... 59
8 U.S.C. § 1231(a)(6) ........................................................... 41
8 U.S.C. § 1252 .................................................................... 3
8 U.S.C. § 1252(a)(5) .................................................... passim
8 U.S.C. § 1252(b)(9) ..................................................... 48, 51
8 U.S.C. § 1252(g) ........................................................ 34, 42
28 U.S.C. § 1292(a)(1) ........................................................... 3
28 U.S.C. § 1651 ............................................................. 8, 56
28 U.S.C. § 2241 ......................................................... passim
28 U.S.C. § 2242 ................................................................ 15
50 U.S.C. § 21 ................................................................... 42
Pub. L. 109-13 ................................................................... 35
Pub. L. 104-208 ................................................................. 34

### Regulations

8 C.F.R. § 236.1(d)(1) ........................................................... 6
8 C.F.R. § 1236.1(d)(1) .......................................................... 6

## INTRODUCTION

The district court enjoined Respondents ("the Government") from removing Petitioner Badar Khan Suri ("Suri") and then ordered he be immediately released from custody. Those orders contravened longstanding limits on federal courts' habeas jurisdiction and additional provisions of the Immigration and Nationality Act ("INA") stripping district courts of authority to adjudicate challenges to the Executive's commencement of removal proceedings. The district court had no power to issue the orders on appeal. This Court should reverse.

The district court's order flouted fundamental limits on its habeas jurisdiction. The Supreme Court has long held that a district court may exercise jurisdiction over a habeas petition only when it names the immediate custodian and is filed in the district of confinement. *See Padilla v. Rumsfeld*, 542 U.S. 426 (2004). Neither was true here: When Suri filed his habeas petition in the Eastern District of Virginia, he was located in Louisiana. And the petition did not name the warden of that facility. Habeas jurisdiction never attached. The district court relied on a supposed "unknown custodian" exception to the normal habeas rules, but

even if that exception exists, no court has applied it where, as here, the petitioner's location was known.

Yet even if the court below has *habeas* jurisdiction, its orders run headlong into the provisions of the INA that strip district courts of authority to review the Executive's authority to initiate removal proceedings. *See* 8 U.S.C. § 1252(a)(5), (b)(9), (g). The district court thought these provisions inapplicable because Suri does not yet have a final order of removal, but neither this Court nor the Supreme Court has ever read such a requirement into the INA's jurisdictional bar. And doing so would fundamentally undermine the objective of these provisions to consolidate and channel challenges to removal through the petition for review process. Nor can Suri escape the jurisdictional bar on the theory that he is challenging his detention, not his removal proceedings. The Government detained Suri pending removal; the decision to detain and the decision to remove are inextricably intertwined.

Finally, the district court erred in invoking the All Writs Act. That law is not an independent grant of jurisdiction but allows district courts to issue orders to preserve their jurisdiction. Although the lower court appears to have credited Suri's counsel's fear that Suri would be

imminently removed from the country, that concern was refuted by Suri's Notice to Appear, which stated that he was scheduled for removal proceedings in Texas more than a month later. The district court was not at risk of losing jurisdiction (assuming it had any to begin with).

## JURISDICTIONAL STATEMENT

This interlocutory appeal arises from orders issued by the United States District Court for the Eastern District of Virginia in a petition for writ of habeas corpus filed by Suri on March 20, 2025, and May 14, 2025. The district court lacked jurisdiction to enter both orders. Because the district court issued injunctive relief to Suri in both the March 20 Order and the May 14 Order, this Court has jurisdiction to review those orders under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES

1. Whether the district court had habeas jurisdiction to order Suri's immediate release when Suri's immediate custodian is not located in the Eastern District of Virginia.

2. Whether the district court lacked jurisdiction to enjoin Suri's removal given the applicable INA review bars of 8 U.S.C. § 1252.

3

3. Whether the district court exceeded its authority under the All Writs Act in enjoining the Government from removing Suri and ordering his release.

## STATEMENT OF THE CASE

## I.     Factual Background

Suri is a citizen and national of India who entered the United States as a J-1 nonimmigrant in December 2022. JA084 ¶5. [1] On March 17, 2025, Immigration and Customs Enforcement ("ICE") Special Agents from the Homeland Security Investigations ("HSI") arrested Suri at 9:30 p.m. in Arlington, Virginia pursuant to a valid arrest warrant. *Id.* ¶7. Following arrest, Suri was transported to the ICE Enforcement and Removal Operations ("ERO") Washington office in Chantilly, Virginia for initial processing. *Id.* While there, Suri called his wife and told her that he would be taken to the Farmville Detention Center in Virginia, and that an immigration hearing was scheduled for May 6, 2025, in Texas. JA045-46 ¶¶13-14.

---

[1] The INA provides a nonimmigrant visa category for individuals approved to participate in work- and study-based exchange visitor programs in the United States. 8 U.S.C. § 1101(a)(15)(j) ("J-1 nonimmigrant").

4

While at the ERO Washington office in Chantilly, Suri was issued a Notice to Appear ("NTA") in removal proceedings. JA088-90. The NTA charged Suri with removability pursuant to Section 237(a)(4)(C)(i) of the INA (8 U.S.C. § 1227(a)(4)(C)(i)), as amended, "in that the Secretary of State ha[d] reasonable ground to believe that [Suri's] presence or activities in the United States would have potentially serious adverse foreign policy consequences for the United States." *Id.*

The NTA identified the street address of the Prairieland Detention Facility in Alvarado, Texas as Suri's residence and listed the Prairieland Detention Facility's telephone number as Suri's telephone number. *Id.* The NTA also provided details regarding Suri's first immigration hearing, which was scheduled for May 6, 2025. *Id.* The "Prairieland Detention Center" was listed as the room from which Suri would appear at his first immigration hearing on May 6, 2025. *Id.*

At the same time, HSI served Suri with a Notice of Custody Determination, informing him that his detention was governed by 8 U.S.C. § 1226(a), which authorizes immigration custody during removal proceedings. JA084 ¶6. Detention under Section 1226(a) meant Suri would have an opportunity to seek release on bond in a hearing before an

immigration judge. *See Jennings v. Rodriguez*, 583 U.S. 281, 303 (2018); *see also* 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1).

ERO made detention arrangements for Suri. Due to resource constraints, those initially detained in ICE's Washington area of responsibility are often detained at facilities in other areas as an operational necessity to minimize overcrowding at ICE facilities. JA084-85 ¶¶8-9. Upon confirmation that bed space was available at the Prairieland Detention Facility, ERO determined that Suri would be transferred there. JA085 ¶9.

The transfer occurred in three stages over several days. Because the ERO Washington office in Chantilly did not have the capacity to house detainees in holding rooms for more than 12 hours except in emergency situations, Suri was first transported to the Farmville Detention Center in Virginia, arriving at approximately 2:35 a.m. on March 18, 2025. *Id.* ¶¶10-11; JA203-04 ¶13. From there, Suri was transported to an ERO Washington office in Chesterfield, Virginia, where he arrived at approximately 7:50 a.m. the same day. JA085 ¶11. These stops were on the way to an airport in Richmond, Virginia, where Suri

boarded a flight that departed for Alexandria, Louisiana at 2:47 p.m. *Id.* *See also* JA203 ¶12.

Around the time that Suri boarded the plane to Louisiana, his counsel entered an appearance in his immigration proceedings and obtained access to the NTA listing the Prairieland Detention Facility as Suri's assigned place of detention. JA053 ¶7. Suri arrived in Alexandria at approximately 5:03 p.m. EDT (4:03 p.m. CDT) on March 18, 2025. JA203 ¶12.

ICE's Alexandria Staging Facility in Alexandria, Louisiana, is in the same facility as the Alexandria airport. JA204 ¶15. The Alexandria Staging Facility holds male detainees at various security classifications levels for 72 hours or less. JA085 ¶12.[2] Suri was recorded as booked into the Alexandria Staging Facility at 6:42 p.m. EDT on March 18. JA204 ¶15. He spent time there because it is on the standard flight path of the transporting aircraft. JA085 ¶12; JA203 ¶12. On March 21, Suri was transported via regularly running ground transportation to the Prairieland Detention Facility, departing at approximately 9:30 a.m.

---

[2]  *See also* Office of Professional Responsibility: Alexandria Staging Facility Inspection 2024-003-331 (2024), https://shorturl.at/SCebt.

EDT and arriving at approximately 7:30 p.m. JA086 ¶13; JA204 ¶16. Suri remained detained at the Prairieland Detention Facility until the district court ordered his release on May 14, 2025.

## II.    Procedural History

Suri filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241 in the Eastern District of Virginia at 5:59 p.m. EDT on March 18, 2025, after his counsel had seen his NTA indicating he would be detained in Texas. JA036; JA053 ¶7. At that time, Suri was detained at the Alexandria Staging Facility in Alexandria, Louisiana, having arrived there at 5:03 p.m. EDT. *See* JA085 ¶11; JA204 ¶15; *see supra* at 10.

On March 20, 2025, Suri's counsel filed a motion to compel Suri's return to the Eastern District of Virginia and to prohibit the Government from removing Suri from the United States. JA026. The same day, without a hearing and without soliciting any input from the Government, the district court *sua sponte* issued an order pursuant to the All Writs Act, 28 U.S.C. § 1651, "that [Suri] shall not be removed from the United States unless and until the [district court] issues a contrary order." JA048 (citing 28 U.S.C. § 1651 and *FTC v. Dean Foods Co.*, 384 U.S. 597, 603 (1966)). The court's order was based on nothing more than Suri's

8

counsel's unsupported representation that the Alexandria Staging Facility "is commonly the last stop for many detainees before they are removed from the country permanently, leading [Suri's counsel] to believe that [] Suri is in imminent danger of being removed from the country prior to his May 6 hearing before an immigration judge." JA041.

The district court's order did not address Suri's NTA for proceedings on May 6, 2025, or that Suri was—and had been ever since the night of March 17—en route to the Prairieland Detention Facility exactly as his NTA described. *See supra* at 2-4. The order also did not explain how the district court possessed habeas jurisdiction in Virginia, when Suri was being held in Louisiana.

On March 27, 2025, Suri's counsel filed a Motion for Immediate Release. The Government opposed the motion, arguing that the district court lacked jurisdiction to consider the motion or to order the requested relief pursuant to the INA. *See generally* ECF#28. The Government also asked the district court to defer decision on the Motion for Immediate Release until the district court had decided the Government's pending Motion to Dismiss and Motion to Transfer. *Id.* at 6; JA079-82; ECF#26.

9

On May 6, 2025, the district court issued an opinion denying the Government's motion to dismiss and motion to transfer. JA206. Then, on May 14, 2025, the district court issued an order granting Suri's Motion for Immediate Release. JA237, 239.

In the May 14 order, the district court ordered that Suri "be immediately released on his personal recognizance during the pendency of his habeas proceedings subject to the following conditions: (1) [Suri] will reside in Virginia; (2) [Suri] will attend all court hearings in this case in person unless excused by order of the Court; and (3) [Suri] will participate in his removal proceedings." JA238. The district court further ordered that the Government cannot attempt to re-detain Suri without providing 48 hours' notice to the Court and Suri's counsel. *Id.* The district court also denied the Government's oral request to stay its ruling pending appeal. *Id.*

The Government timely appealed the district court's March 20 and May 14 orders. JA280. The Government sought a stay pending appeal from this Court, which was denied. Docs. 4, 27.

10

## SUMMARY OF ARGUMENT

The district court's orders should be set aside.

I. First, the district court lacked habeas jurisdiction. Under longstanding precedent, habeas jurisdiction never vested in the district court because Suri was not detained within the district at the time his petition was filed, and no exception to the clear rules of habeas jurisdiction applied.

The district court erred by finding that it could exercise habeas jurisdiction under an exception to the rules because Suri's location was not known to his counsel at the moment Suri's petition was filed. The Supreme Court expressly rejected an exception to the district of confinement rule based on what facts were available to counsel at the time of filing determine which district has habeas jurisdiction. The Supreme Court also rejected the argument—adopted by the district court—that the rules of habeas jurisdiction can be modified to punish alleged Government misconduct. The Government disclosed in advance where Suri would be detained, and it accounted for Suri's location throughout his transit to that location. In those circumstances, the default rules of habeas jurisdiction applied.

11

In the alternative, even if the district court could initially exercise habeas jurisdiction, it should have transferred the case once it became clear that Suri was not in the Eastern District of Virginia at the time his petition was filed.

II.    Second, the INA, which governs federal courts' jurisdiction over immigration-related matters, barred district court jurisdiction over Suri's petition. Title 8, Section 1252(g) deprives district courts of jurisdiction to review claims arising from the decision or action to "commence proceedings." And Sections 1252(a)(5) and (b)(9) deprive district courts of jurisdiction to review actions taken or proceedings brought to remove aliens, channeling such challenges to the petition-for-review process outlined in the INA.

III.    Finally, the district court's order prohibiting Suri's removal unless or until the district court entered a contrary order exceeded the authority granted under the All Writs Act. This Court should reverse the district court's orders.

## STANDARD OF REVIEW

A district court's determination of its jurisdiction is a conclusion of law and reviewed de novo. *Lovern v. Edwards*, 190 F.3d 648, 654 (4th Cir.

1999). A preliminary injunction award is reviewed for abuse of discretion. *2311 Racing LLC v. Nat'l Ass'n for Stock Car Auto Racing, LLC*, 139 F.4th 404, 408 (4th Cir. 2025).

## ARGUMENT

### I.     The district court lacked jurisdiction over the habeas petition

The district court had no power to act in this case because it never acquired habeas jurisdiction over Suri's petition. For courts to exercise jurisdiction over petitions for habeas corpus, they must be "within their respective jurisdiction." 28 U.S.C. § 2241. For cases in which the petitioner is detained, that "jurisdiction lies in only one district: the district of confinement." *Trump v. J.G.G.*, 145 S Ct. 1003, 1005-06 (U.S. Apr. 7, 2025) (quoting *Padilla v. Rumsfeld*, 542 U.S. 426, 443 (2004)). Because Suri was not detained in the Eastern District of Virginia at the time his habeas petition was filed, habeas jurisdiction never vested there.

### A.     Habeas jurisdiction attaches only if the petition is filed in the district of confinement against the immediate custodian

The Supreme Court's decision in *Padilla* established two central prerequisites for establishing habeas jurisdiction: first, a habeas petitioner may file his petition only in the district where he is detained;

13

second, the petition must name the custodian detaining him in that district. 542 U.S. at 434-35.

1.    In *Padilla*, a habeas petitioner challenged his detention as an "enemy combatant" on a Navy brig in Charleston, South Carolina, following his arrest in Manhattan, New York. 542 U.S. at 426. His counsel filed a habeas petition in the Southern District of New York under 28 U.S.C. § 2241, which alleged that Padilla's military detention violated the Constitution, and named as respondents the President, the Secretary of Defense, and Melanie Marr, the brig's commander. *Id.* at 432-33.

The Supreme Court determined that Commander Marr, as Padilla's immediate custodian, was the only proper respondent, and that the Southern District of New York lacked habeas jurisdiction over her because she was located outside that district. In so holding, the Supreme Court reiterated the immediate custodian rule: "longstanding practice confirms that in habeas challenges to present physical confinement— 'core challenges'—the default rule is that the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." *Id.* at 435. The

Supreme Court based this rule on the text of 28 U.S.C. § 2242, which "straightforwardly provides that the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Id.* (quoting 28 U.S.C. § 2242).

*Padilla* rejected the Second Circuit's contrary "relaxed ... immediate custodian rule," which recognized the proper respondent in non-criminal cases to be "the person exercising 'the reality of control over the petitioner.'" *Id.* at 437-38 (citations omitted). The Court also specifically rejected the idea that "exceptional," "special," or "unusual" circumstances could warrant *ad hoc* exceptions to the immediate custodian rule because the Court "d[id] not think Congress intended such a result." *Id.* at 448-50. And the Supreme Court also rejected the position "that a district court can exercise statutory jurisdiction based on a series of events that did not occur, or that jurisdiction might be premised on 'punishing' alleged Government misconduct." *Id.* at 448.

Importantly, *Padilla* explicitly declined to extend the Court's prior holding in *Ex Parte Endo*, 323 U.S. 283 (1944). *Padilla*, 542 U.S. at 440-41. In *Endo*, a Japanese American citizen interned in California filed a § 2241 petition in the Northern District of California, naming as a

respondent her immediate custodian. *Endo*, 323 U.S. at 284-85. After she filed the petition—and habeas jurisdiction had attached in California—the Government moved her to Utah. *Id.* at 285.

At that point, the prisoner's immediate physical custodian was no longer within the jurisdiction of the District Court; nevertheless, the Court determined the Northern District of California retained jurisdiction. *Id.* at 305-06. In limiting the scope of the *Endo* exception, the *Padilla* Court explained that "*Endo* stands for the important but limited proposition that when the Government moves a habeas petitioner *after* she properly files a petition naming her immediate custodian, the District Court retains jurisdiction." *Padilla*, 542 U.S. at 441 (emphasis added). Thus, the Court soundly rejected the proposition that *Endo* allows a petitioner challenging present physical confinement to "properly name as respondent someone other than the immediate physical custodian." *Id.* at 440. And it made clear a critical limitation on the *Endo* exception: it applies only "when the Government moves a habeas petitioner *after* she properly files a petition," *id.* at 441 (emphasis added)—not to pre-suit movement.

2. Here, a straightforward application of the immediate custodian and district of confinement rules reiterated and reaffirmed in *Padilla* demonstrates that Suri's habeas petition was not properly filed in the Eastern District of Virginia. It is undisputed that when Suri's counsel filed his habeas petition at 5:59 pm EDT on March 18, 2025, Suri was *not* confined in the Eastern District of Virginia. He had left the district hours before, had recently landed in Alexandria, Louisiana, and was being detained and awaiting booking into the Alexandria Staging Facility. JA084-86.

Under a straightforward application of the Supreme Court's district of confinement rules, jurisdiction vested either in the district where Suri was assigned to be detained, the Northern District of Texas, or, at the very least, in the district where Suri was being detained at the time the petition was filed, the Western District of Louisiana. But the Eastern District of Virginia was neither the district of confinement nor the location of Suri's immediate custodian at the time that this suit was filed. Under *Padilla*, the district court was wholly without habeas jurisdiction here. Nor could *Endo* backfill that dispositive deficiency: it applies only

when a petitioner is moved *after* a district court validly acquired habeas jurisdiction. Nothing of the sort occurred here.

## B. The district court misapplied precedent by recognizing exceptions to the immediate custodian and district of confinement rules

While purporting to acknowledge the district of confinement and immediate custodian rules laid out in *Padilla*, JA214-15, the district court flouted that well-established precedent. Instead, it rested its novel decision on the so-called unknown custodian exception—an exception never actually recognized by the Supreme Court.

In *Padilla*, the Supreme Court acknowledged in two footnotes the *possibility* of an exception to the district of confinement and immediate custodian rules where the petitioner "is held in an undisclosed location by an unknown custodian." 542 U.S. at 450 n.18. But that was far from an actual holding. Indeed, in footnote 17, the Court rejected the dissent's view that "the facts as they actually existed at the time of filing should not matter, because 'what matters for present purposes are the facts available to [counsel] at the time of filing.'" 542 U.S. at 449 n.17 (quoting *id.* at 458 n.3 (Stevens, J., dissenting)).

18

Under Justice Steven's position, the district court would have possessed habeas jurisdiction. But his opinion, of course, was a *dissent*. And lower courts lack authority to convert Supreme Court dissents into the binding law of the land. *See*, *e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997) ("[I]t is this Court's prerogative alone to overrule one of its precedents.").

The Court also refused to endorse the view that government secrecy would change the analysis. *See Padilla*, 542 U.S. at 449 n.17. And although the Court acknowledged that *Demjanjuk v. Meese,* 784 F.2d 1114 (D.C. Cir. 1986) (Bork, J., in chambers) suggested an exception when the custodian is unknown, the Court found that case unhelpful because the exception it recognized applied only when "a prisoner is held in an undisclosed location by an unknown custodian, [making] it *impossible* to apply the immediate custodian and district of confinement rules." 542 U.S. at 450 n.18 (emphasis added).

At no point, however, did the Court suggest that an unknown custodian exception, if it exists, would perpetually vest jurisdiction in the district of arrest *after* a detainee's whereabouts are known and the assigned place of detention is disclosed, much less where the identity of

19

the immediate custodian and the location of the appropriate district court are clear. *See Demjanjuk*, 784 at 1116.

Rather, the clearest support in *Padilla* for any proposition that an unknown custodian exception exists comes from Justice Kennedy's concurrence. In that concurrence, Justice Kennedy indicated that he

> would acknowledge an exception if there is an indication that the Government's purpose in removing a prisoner were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention. In cases of that sort, habeas jurisdiction would be in the district court from whose territory the petitioner had been removed. In this case, if the Government had removed Padilla from the Southern District of New York *but refused to tell his lawyer where he had been taken*, the District Court would have had jurisdiction over the petition. Or, if the Government did inform the lawyer where a prisoner was being taken but kept moving him so a filing could not catch up to the prisoner, again, in my view, habeas jurisdiction would lie in the district or districts from which he had been removed.

542 U.S. at 454 (Kennedy, J., concurring) (emphasis added).

Even if Justice Kennedy's concurring opinion—which garnered only two votes—governed, Suri's petition would fail. Here, the Government has not "refused to tell his lawyer where he *had been* taken." *Id.*

20

(emphasis added). To the contrary, the Government gave Suri ample notice that he was being moved to the Prairieland Detention Facility, where he had a hearing scheduled for May 6.

Nor does Justice Kennedy's opinion suggest that moving a detainee to another jurisdiction once is sufficient to trigger any exception; rather, he would have applied an exception only where the Government "ke[eps] moving him so a filing could not catch up to the prisoner." *Id.*

Nothing of the sort occurred here, where the government moved Suri essentially in a straight line from Virginia to Alexandria, Louisiana, on his way to his final destination in Texas. There were no movements so quick that "a filing could not catch up to the prisoner"—let alone multiple such movements.

*Demjanjuk* also provides no support for the expansive unknown custodian rule posited by the district court. In that case, Judge Bork declined to transfer a habeas petition that had been filed with the D.C. Circuit "because it is absolutely clear from the application that the applicant is not entitled to an award of the writ." 784 F.2d at 1115. Judge Bork held that he could exercise jurisdiction over the case with the Attorney General as the respondent and immediate custodian because

the petitioner was held in a confidential location by the United States Marshal. *Id.* at 1115-16. Although Judge Bork acknowledged a Supreme Court justice could have had jurisdiction to hear the case because of their nationwide jurisdiction, he concluded that "requiring all such petitions to be filed in the Supreme Court could produce inconvenience for the members of that Court." *Id.* at 1116. He therefore held that treating the Attorney General as the custodian was appropriate where "it would be inappropriate to order the whereabouts of the petitioner made public." *Id.* He also noted that "[s]hould it become known that petitioner is held in a jurisdiction other than this one, a judge of this circuit would be divested of jurisdiction." *Id.* In other words, *Demjanjuk* holds that as soon as the Government discloses the location of confinement, the usual rules of habeas jurisdiction are restored—assuming they were even suspended to begin with. *Id.*

Here, the Government did not refuse to tell Suri's counsel where he had been taken. Nothing in the record suggests that Suri's counsel made any effort to determine his location prior to filing the habeas petition other than checking ICE's online detainee locator, speaking to Suri's spouse, and consulting the NTA. JA053 ¶¶6-9; JA078. Suri's NTA

22

explicitly indicated where he ultimately would be detained, and information on his transient location became available shortly after Suri's habeas petition was filed. JA088-90; JA143 ¶3; JA204 ¶15. In short, there was *nothing* remotely "unknown" about Suri's ultimate destination.

The Government not only accounted for every minute of Suri's whereabouts in responding to his habeas petition but also told Suri where he would be detained in advance of his transfer to the Alexandria Staging Facility in the NTA, to which his counsel had access upon entering his appearance in his immigration proceedings. *See supra* at 7-11. Suri's custodian and location of detention at the time of his petition were *known*—not unknown: Suri was in the Western District of Louisiana, in the custody of the Alexandria Staging Facility's Deputy Field Office Director Ragan Lewis, en route to the Prairieland Detention Facility at the time the habeas petition was filed. JA088-90; JA143 ¶3; JA204 ¶15. And, by the time the Government filed its Motion to Transfer—let alone the time the district court ruled on the motion—Suri was known to be at the Prairieland Detention Facility in the Northern District of Texas. JA086 ¶13 (Suri transported to Prairieland Detention Facility on March

21, 2025); JA081 (Motion to Transfer filed April 2, 2025); JA235 (Order denying Motion to Transfer on May 6, 2025). Nonetheless, the district court applied the unknown custodian exception because Suri's counsel was unaware of his location at the time the petition was filed. JA221-23. Applying the "unknown custodian" exception at a time when Suri's custodian was *known to the district court* stretches that exception beyond any conceivably defensible scope. Indeed, the district court's application of the exception even when it knew Suri's custodian rendered that exception an oxymoron.

Contrary to the district court's holding, the knowledge of habeas petitioner's counsel is not relevant to determining jurisdiction. Suri's counsel's lack of knowledge of the government's operational choices did not cause the Eastern District of Virginia to acquire habeas jurisdiction regardless of the facts as they actually existed. Indeed, that was precisely the position of Justice Stevens's *dissent* in *Padilla*—which did *not* carry the day.

Moreover, to hold otherwise would mean that every time the Government transfers a detainee, the court where the person was originally detained would continue to exercise jurisdiction until counsel

has actual, provable knowledge of the transfer—a dubious proposition that flies in the face of the rules that provide only the district of confinement can exercise jurisdiction. No precedent supported extending the district court's habeas jurisdiction in this way. To the contrary: Congress has long limited courts' habeas authority to issuing writs "within their respective jurisdictions." 28 U.S.C. § 2241(a).

The district court misapplied the *Padilla* concurrence to override the *Padilla* majority opinion, relying on out-of-circuit cases that suggest that this concurrence "is at least 'given particular weight.'" JA216 (quoting *Öztürk v. Trump*, 777 F. Supp. 3d 26, 37 (D. Mass. 2025) (citing *Schmitz v. Zilveti*, 20 F.3d 1043, 1045 (9th Cir. 1994)). True, Justices Kennedy and O'Connor were necessary to the majority and speculated that "where the Government was not forthcoming with respect to the identity of the custodian and the place of detention ... habeas jurisdiction would be in the district court from whose territory the petitioner had been removed." *Padilla*, 542 U.S. at 454 (Kennedy, J., concurring). But nothing in those opinions was remotely necessary or controlling to the judgment in *Padilla.*

25

Thus, the two-Justice concurring view regarding unknown custodian cases is pure *dicta*. Giving it precedential force would effectively re-write the majority opinion—which was an opinion for the *Court*—into a plurality with concurrences in the judgment only. That simply was not the disposition in *Padilla*. The district court thus was not free to depart from *Padilla* merely because it desired an outcome incompatible with the majority opinion.

The district court accordingly erred when it relied on the idea that "extraordinary circumstances" or unusual facts could justify an exception to the normal rules of habeas jurisdiction endorsed by the Supreme Court. JA216 (quoting *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000)). The district court reasoned that it could arrogate habeas jurisdiction to itself because "[t]he *Padilla* majority does not address whether it would be proper to find jurisdiction based on the facts available to diligent counsel through reasonable effort under the circumstances." JA 225. Not so. The *Padilla* majority did just that. 542 U.S. at 449 n.17 (rejecting argument that "what matters for present purposes are the facts available to [counsel] at the time of filing.") The district court did not explain how "exceptional circumstances" can allow

for district courts to just flatly ignore *Padilla*'s holding and rationale that Congress did not intend to allow for such fact bound, *ad hoc* considerations. 542 U.S. at 450.

In an attempt to avoid *Padilla*'s clear instructions, the district court cited to older Supreme Court caselaw which emphasizes "[t]he scope and flexibility of the writ". JA226 (citing *Harris v. Nelson*, 394 U.S. 286, 291 (1969)). But *Harris* addressed what discovery tools and evidentiary procedures a district court could authorize in habeas proceedings, not the district of confinement rule. 394 U.S. at 292-300. While the writ itself may be flexible, the jurisdictional rules that attend to it are strict—as *Padilla* makes clear.

*Harris* notably did not address which district court has the jurisdiction to issue it, which is fixed in statute and therefore has a fixed meaning. 28 U.S.C. § 2241; *see Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 674, (2020) ("[T]he law's ordinary meaning at the time of enactment usually governs"); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400, 407-09 (2024) (rejecting the idea that ambiguous statutory text is subject to multiple meanings and instead holding that statutes should

27

be interpreted based on their best reading).[3] Thus, while an exception to the default rules of habeas jurisdiction may exist in certain circumstances, the district court was wrong to find an exception here.

### C. The district court improperly sought to punish the Government by applying exceptions to the default rules of habeas jurisdiction

The district court relied on the notion that "extraordinary circumstances" existed because the government allegedly had moved Suri out of the Eastern District of Virginia quickly[4] and therefore was engaging in forum shopping. JA216, 226-30 (finding Suri's movements following his arrest "appear[ed] exceptional for immigration detainees who are arrested in Virginia, if not in general"). *Cf. Khalil v. Joyce*, 771

---

[3] Neither *Braden v. 30th Jud. Cir. Ct. of Ky.*, 410 U.S. 484, 499 (1973) nor *Endo*, 323 U.S at 304-07, two other cases the district court relied on, provide authority for the sweeping and unprecedented exceptions that the district court recognized. JA215-16 ("When the default rules of habeas jurisdiction have proved untenable, the Supreme Court and Fourth Circuit have recognized exceptions to these default rules."). Suri never properly filed a habeas petition in the Eastern District of Virginia while he was detained there, meaning *Endo*'s rule regarding post-filing transferals does not apply. And nothing in *Braden*'s general invocation of flexibility suggests that the district court could create the kind of *ad hoc* exception *Padilla* ruled out.

[4] Suri was moved from Washington, D.C. to Richmond, VA over the course of approximately 17 hours in accordance with a planned—and disclosed—transfer for long-term detention in the Northern District of Texas. JA084-85.

F. Supp. 3d 268, 283 (S.D.N.Y. 2025) (collecting cases showing that multiple transfers of immigration detainees to locations remote from the place of arrest is a common, longstanding practice). In fact, the district court explicitly held that "[t]he facts at hand demand that the default habeas jurisdiction rules adjust accordingly." JA231. The district court reasoned that "limiting the facts to those that could be discovered by diligent counsel constrains the ability of either side to engage in impermissible forum shopping." JA226.

It is exceedingly doubtful whether this entire line of policy-trumps-text reasoning is a proper basis on which to interpret a statutory limitation on jurisdiction. *See BedRoc Ltd., LLC v. United States*, 541 U.S. 176, 187 (2004) ("Where a law is plain and unambiguous, whether it be expressed in general or limited terms, the legislature should be interpreted to mean what they have plainly expressed, and consequently no room is left for construction." (quoting *United States v. Fisher*, 6 U.S. 358, 399 (1805)). But even if it were otherwise proper to interpret the jurisdictional limitation in 28 U.S.C. § 2241 based on alleged forum shopping, the district court's interpretation disregards that *Padilla* authoritatively rejected the notion that "jurisdiction might be premised

29

on punishing alleged Government misconduct." 542 U.S. at 448 (internal quotations omitted).

The *Padilla* Court further scorned the dissent's argument that alleged secrecy and detainee's counsel's lack of knowledge should provide a basis for jurisdiction in the district from which the detainee was removed, noting that it was not based in any authority and was not "a valid legal argument." *Id.* at 449 n. 17. Justice Kennedy's concurring opinion further provides no grounds for the district court to find jurisdiction based in part on the need to punish or deter the government for its supposed misconduct in alleged forum shopping. Yet that is exactly what the district court did here. And that was error. S*ee Trump v. CASA, Inc.*, No. 24A884, 2025 WL 1773631, at *15 (U.S. June 27, 2025) (concluding that even if "a court concludes that the Executive Branch has acted unlawfully, the answer is not for the court to exceed its power, too.").

## D. Even if the district court had habeas jurisdiction, it should have transferred the case

Alternatively, even if the district court here initially had jurisdiction over the habeas petition, it should have transferred the case

once it became aware that Suri had been removed from the district before the filing of the habeas petition.

This is the course of action set forth in *Demjanjuk*, wherein Judge Bork acknowledged that "[s]hould it become known that petitioner is held in a jurisdiction other than this one, a judge of this circuit would be divested of jurisdiction." 784 F.2d at 1116. And other courts faced with situations similar to Suri's have concluded that transfer would be appropriate. *See Dvortsin v. Noem*, 2025 WL 1751968, at *4 n.10 (D. Colo. June 12, 2025) (concluding transfer would be appropriate where habeas petitioner filed in district that "was likely the only logical choice based on the information [p]etitioner knew at the time she filed" but where detainees were not located in the district at the time of filing); *Öztürk v. Trump*, 777 F. Supp. 3d at 42-43 (transferring where the petitioner was not located within the district at the time of petition even though petitioner's counsel "[could not] be faulted for filing the Petition in this Court against Respondents with national and regional supervision over ICE"); *Khalil*, 771 F. Supp. at 287-90 (transferring despite recognizing that petitioner's attorneys had filed in the district "based on a good-faith and reasonable belief that he was then detained [there.]"). Their

conclusions acknowledge and respect the limits Congress has placed on the jurisdiction of courts to issue habeas writs "within their respective jurisdictions." 28 U.S.C. § 2241.

Ironically for an opinion so heavily reliant on the *Padilla* concurrence's dicta, the decision below swept Judge Bork's language aside as dicta that would allow the government to manipulate jurisdiction to "defeat the purpose of the great writ." JA224. But the district court's holding was based on the hypothetical possibility that "the Government could withhold the location of an individual, wait to see if and where a petition is filed, then disclose their custodian or location, and claim the court in which the petition was filed is divested of jurisdiction." *Id.* The district court hypothesized the Government might refuse to disclose a detainee's location and then move the detainee after a habeas petition was filed in order to defeat habeas jurisdiction. *Id.* But that is not remotely what happened here. Suri's counsel filed his petition at a time when he was in Louisiana, and when a transfer to Texas was underway. But Suri's location was updated pursuant to normal booking operations shortly after the petition was filed. JA204 ¶15; JA078. Nothing was hidden from Suri's counsel—let alone for the sort of

protracted time that might justify invocation of the unknown custodian exception.

Moreover, the district court's hypothetical appears to misapprehend *Demjanjuk*. Judge Bork did not suggest that the Government could move a detainee after a habeas petition was filed in order to defeat jurisdiction. Rather, the implicit premise of Judge Bork's holding is that the detainee's location—originally undisclosed but later disclosed—remains static. 784 F.2d at 1116.

*Demjanjuk* at most would allow a district court to exercise habeas jurisdiction until such time as the district of confinement became clear. At that point, transfer would be appropriate. This ensures there is no gap in habeas because any interim orders will remain valid until the transferee court decides otherwise. But there was never any such gap here.

The district court exceeded the statutory limitations on its habeas jurisdiction affirmed by the *Padilla* majority opinion and acknowledged by *Demjanjuk* when it refused to dismiss or transfer Suri's habeas petition once it became known it was not the district of confinement at

the time the habeas petition was filed. The district court's exercise of habeas jurisdiction should be reversed.

## II. The INA stripped the court of jurisdiction to enter the challenged orders

Even if the district court had jurisdiction over Suri's habeas petition, three provisions of the INA, 8 U.S.C. §§ 1252(a)(5), 1252(b)(9), and 1252(g), separately stripped the district of jurisdiction to order relief and required Suri to pursue his claims in immigration court and to seek any review in the relevant court of appeals through a petition for review.

### A. Section 1252(g)

Section 1252(g) deprives courts of jurisdiction, including habeas corpus jurisdiction, to review "any cause or claim by or on behalf of any alien arising from the decision of action by the Attorney General to [1] commence proceedings, [2] adjudicate cases, or [3] execute removal orders against any alien under this chapter." 8 U.S.C. § 1252(g). It thus eliminates jurisdiction "[e]xcept as provided in this section and notwithstanding any other provision of law (statutory or nonstatutory)."[5]

---

[5] Congress initially passed § 1252(g) in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. 104-208, 110 Stat. 3009. In 2005, Congress amended § 1252(g) by adding "statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such

34

Except as provided by § 1252, courts "cannot entertain challenges to the enumerated executive branch decisions or actions." *E.F.L. v. Prim*, 986 F.3d 959, 964 (7th Cir. 2021).

The statute was "directed against a particular evil: attempts to impose judicial constraints upon prosecutorial discretion," and to protect "similar discretionary decisions." *Tazu v. Att'y Gen. United States*, 975 F.3d 292, 297 (3d Cir. 2020) (quoting *Reno v. Am.-Arab Anti-Discrimination Comm.* ("*AADC*"), 525 U.S. 471, 485 (1999)). Additionally, through § 1252(g) and other provisions of the INA, Congress "aimed to prevent removal proceedings from becoming 'fragment[ed], and hence prolong[ed]." *Tazu¸* 975 F.3d at 296 (alterations in original) (quoting *AADC*, 525 U.S. at 487); *see Rauda v. Jennings*, 55 F.4th 773, 777-78 (9th Cir. 2022) ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by

---

title" after "notwithstanding any other provision of law." REAL ID Act of 2005, Pub. L. 109-13, § 106(a), 119 Stat.231, 311. After Congress enacted the Homeland Security Act of 2002, § 1252(g)'s reference to the "Attorney General" includes the Secretary of Homeland Security. 6 U.S.C. § 202(3); *see also Enriquez-Perdomo v. Newman*, 54 F.4th 855, 863 & nn.3-4 (6th Cir. 2022) (explaining the historical development of § 1252(g)).

limiting judicial review to final orders, litigated in the context of petitions for review.").

In *AADC*, the Supreme Court held that a previous version of § 1252(g) precluded jurisdiction over claims similar to Suri's. *See* 525 U.S. at 487-92. There, respondents had alleged that the "INS was selectively enforcing immigration laws against them in violation of their First and Fifth Amendment rights." *Id.* at 474. The Supreme Court noted "an admission by the Government that the alleged First Amendment activity was the basis for selecting the individuals for adverse action," and the respondents argued that a lack of immediate review would have a "chilling effect" on their First Amendment rights. *Id.* at 488 & n.10. Nevertheless, the Supreme Court held that the "challenge to the Attorney General's decision to 'commence proceedings' against them falls squarely within § 1252(g)." *Id.* at 487.

Section 1252(g) prohibits district courts from hearing challenges to decisions and actions about both *whether* and *when* to commence removal proceedings. *See Villanueva-Herrera*, 33 F. App'x 145, 146 ("We interpret § 1252(g)'s reference to the 'decision ... to commence proceedings' as encompassing the decision of *when* to commence proceedings.")

(emphasis in original); *Jimenez-Angeles v. Ashcroft*, 291 F.3d 594, 599 (9th Cir. 2002) (same). This Court has applied § 1252(g) to the discretionary decision to execute a removal order, and to the discretionary decision to institute removal proceedings.[6] *Loera Arellano v. Barr*, 785 F. App'x 195, 196 (4th Cir. 2019). *See also AADC*, 525 U.S. at 485 (§ 1252(g) "provid[es] that if [discretionary decisions regarding commencement of removal proceedings] are reviewable at all, they are least will not be made the bases for separate rounds of judicial intervention outside the streamlined process that Congress has designed"); *Sissoko v. Rocha*, 509 F.3d 947, 950-51 (9th Cir. 2007) (holding that § 1252(g) barred review of a Fourth Amendment false arrest claim that "directly challenge[d] [the] decision to commence expedited removal proceedings"); *Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (determining that § 1252(g)

---

[6] *Diaz-Portillo v. Garland*, 2023 WL 7212269, *2 (4th Cir. Nov. 2, 2023); *Pineda-Perez v. Garland*, 2023 WL 5771045, *2 (4th Cir. Sept. 7, 2022); *Don v. Garland*, 855 F. App'x 158, 159 (Mem) (4th Cir. Aug. 10, 2021); *Mehr v. Gonzalez*, 246 F. App'x 211, 212 (4th Cir. 2007); *Malik v. Gonzales*, 213 F. App'x 173, 174 (4th Cir. 2007); *Solomon v. Gonzales*, 182 F. App'x 170, 171 (4th Cir. 2006); *Villanueva-Herrera*, 33 F. App'x 145, 146 (4th Cir. 2002).

prohibited review of an alien's First Amendment retaliation claim based on the Attorney General's decision to place him in exclusion proceedings).

Here, Suri challenges his initial detention in connection with charges of removability under the INA. *See, e.g.*, JA122-27 ¶¶95, 99-101, 109, 111-113, 114-15. Suri does not challenge any particular aspect of his detention; rather, he argues that both the charges of removability brought against him and his detention incident to those charges are part of an effort to retaliate against him for protected speech and association. *See id.*; Doc. 27 at 23 ("Stripped to their essentials, both proceedings seek to determine the same underlying question of [Suri's] removability."). Suri is, in other words, challenging the Attorney General's decision to commence removal proceedings against him—which falls squarely within § 1252(g). *See Limpin v. United States*, 828 F. App'x 429, 429 (9th Cir. 2020) (holding that under § 1252(g), "claims stemming from the decision to arrest and detain an alien *at the commencement of removal proceedings* are not within any court's jurisdiction.") (emphasis added). *See also Trabelsi v. Crawford*, 2024 WL 5497113, at *7-9 (E.D. Va. Dec. 2, 2024) (holding § 1252(g) precluded jurisdiction where petitioner's arguments against detention amounted to arguments that removal proceedings

should never have commenced in the first place). Therefore, the district court lacked jurisdiction.

The district court rejected the Government' argument based solely on the Supreme Court's holding in *AADC* that § 1252(g) "is to be narrowly construed, and it only reaches three discrete actions of the Attorney General, and that is the decision or action to commence proceedings, adjudicate cases, or to execute removal orders." JA263 lines 7-13; *AADC*, 525 U.S. at 482. The district court thus did not analyze whether Suri's initial detention was an action taken to commence removal proceedings. That omission flouts § 1252(g).

The panel that considered the Government' motion for a stay pending appeal discussed § 1252(g) in greater detail. Doc. 27 at 16-19. However, the panel majority misunderstood the Government' argument. For example, the Government does not contend that § 1252(g) categorically precludes habeas challenges to present immigration detention. Doc. 27 at 16-17. Rather, the Government contends that § 1252(g) precludes habeas challenges to initial detention *in connection with* the commencement of proceedings asserting charges of

39

removability—particularly where the basis of the alien's habeas challenge mirrors his defense to the charges of removability.

The panel majority cited Z*advydas v. Davis*, 533 U.S. 678 (2001) for the general proposition that "the Supreme Court specifically rejected the idea that § 1252(g) stripped federal courts of jurisdiction over habeas challenges to present immigration confinement." Doc. 27 at 16 (citing 533 U.S. at 688). But as Judge Wilkinson noted in dissent, *Zadvydas* dealt with the more specific question of whether the Constitution permits indefinite immigration confinement under 8 U.S.C. § 1226 following the 90-day removal period after issuance of a final order of removal, "not the government's discretionary *decision* to detain under the circumstances here." Doc. 27 at 26 (emphasis in original) (citing 533 U.S. at 682). The *Zadvydas* court mentioned § 1252(g) only in passing, in a "see also" citation, as one of several sections of the INA that did not impede the Supreme Court's jurisdiction to "conclude that § 2241 habeas corpus proceedings remain available as a forum for statutory and constitutional challenges to *post-removal-period detention*." 533 U.S. at 688 (emphasis added). Nothing in *Zadvydas* suggests that habeas proceedings are available as a forum to challenge the basis for removal charges against

40

an alien when the alien is detained at the commencement of his removal proceedings.

Further, and contrary to the panel majority's assertion, the Government does not contend that the courts in *Clark v. Martinez*, 543 U.S. 371, 386-87 (2005), *Castaneda v. Perry*, 95 F.4th 750 (4th Cir. 2024), and *Trump v. J.G.G.*, 145 S. Ct. 1003 (2025) lacked jurisdiction under § 1252(g). Doc. 27 at 17. Indeed, § 1252(g) was nowhere mentioned in those cases, as they did not deal with initial detention at the commencement of removal proceedings under the INA.

In *Clark*, aliens whose parole had been revoked following felony convictions and who were detained after being given removal orders challenged their indefinite detention beyond the 90-day removal period provided in 8 U.S.C. § 1231(a)(6). 543 U.S. at 371. That was not a habeas challenge to initial detention on the same grounds used to contest deportability in pending removal proceedings—the aliens' removability had already been established, and they had chosen not to contest it further. 543 U.S. at 374-76.

Similarly, *Castaneda* dealt with allegedly indefinite detention after the 90-day removal period during withholding-only proceedings following

reinstatement of a removal order. 95 F.4th at 752-54. Again, removability had already been determined and was not contested.

And in *Trump v. J.G.G.*, the Supreme Court held that aliens challenging their removal under the Alien Enemies Act, 50 U.S.C. § 21, were required to bring their challenge in a habeas proceeding. Section 1252(g) limits courts' jurisdiction to hear habeas claims "arising from the decision or action ... to commence proceedings ... *under this chapter*"— meaning the INA, not the Alien Enemies Act. 8 U.S.C. § 1252(g) (emphasis added). Unlike the INA, the Alien Enemies Act does not provide a process for aliens to challenge their removability; the Supreme Court therefore held that such challenges "must be brought in habeas." 145 S. Ct. at 1005. The Government' interpretation of § 1252(g) is consistent with that ruling.

The stay panel majority concluded that district courts may exercise jurisdiction over habeas petitions challenging present immigration confinement. Doc. 27 at 16-17. As a general matter, the Government does not disagree so long as no jurisdictional bar applies. Here, however, one does: Suri explicitly challenges initial immigration detention on the same basis he uses to argue he is not removable. In that scenario, the habeas

challenge creates the "deconstruction, fragmentation, and hence prolongation of removal proceedings" that Congress sought to avoid in enacting § 1252(g). *AADC*, 525 U.S. at 487.

To be clear, the Government does not contend that § 1252(g) covers "all claims arising from deportation proceedings" or that it imposes "a general jurisdictional limitation." *AADC*, 525 U.S. at 482; *Dep't of Homeland Sec. v. Regents of the Univ. of California*, 591 U.S. 1, 19 (2020). Indeed, far from being "sweeping" (Doc. 27 at 17), the Government's interpretation of § 1252(g) is consistent with precedent: by its terms, the statute covers the Secretary of Homeland Security's decision to commence removal proceedings. *AADC*, 525 U.S. at 482. The decision to detain an alien at the outset of removal proceedings is part of that decision. *Alvarez v. U.S. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("By its plain terms, [§ 1252(g)] bars us from questioning ICE's discretionary decisions to commence removal—and thus necessarily prevents us from considering whether the agency should have used a different statutory procedure to initiate the removal process."); *Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) ("[S]ecuring an alien while awaiting [his removal hearing] constitutes an action taken to commence proceedings").

43

And that conclusion holds even more strongly where an alien files a habeas petition challenging his initial detention for the exact reasons he contends he is not removable, as Suri does. That is a challenge to the government's decision to commence immigration proceedings in the first place.

In denying the Government' motion to stay the district court's rulings pending appeal, the stay panel majority repeatedly relied on an assertion that the Government did not contest that Suri was detained for removal proceedings in violation of his First Amendment rights. Doc. 27. at 18, 21. The panel majority specifically noted that the Secretary of State's determination under 8 U.S.C. § 1227(a)(4)(C)(i)—the basis of the charge of removability brought against Suri—was never filed with the district court. Doc. 27 at 3; JA088 (NTA charging Suri as removal under § 1227(a)(4)(C)(i)).

The panel majority's reliance on what the Government did not say exemplifies the problem § 1252(g) seeks to remedy. The Government is not required to present full arguments on the merits of removal in preliminary motion papers in a habeas proceeding challenging initial detention. The INA precludes parallel district court jurisdiction—and,

therefore, district court consideration of the merits of removal—in such a proceeding. Requiring the Government to present its entire merits case in the district court (while it simultaneously does so before an immigration judge) would defeat the entire purpose of § 1252(g).

Moreover, the stay panel majority's reliance on the Government's reticence is at odds with its insistence that habeas proceedings are collateral to removal proceedings and therefore unaffected by the INA's jurisdiction-stripping provisions. Doc. 27 at 18. *See also* JA263-64 ("The proceedings before me are totally separate from the removal proceedings"), JA268-69 (citing statements regarding alleged intent to *remove* Suri in support of ruling granting Suri's motion for immediate release); JA048 (ordering that Suri not be *removed* unless or until the district court issued a contrary order). Both the district court's order granting immediate release and the panel majority's denial of the Government' stay motion were inextricably intertwined with the issue of Suri's removability. For this reason, attempts to distinguish cases like *AADC* and *Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) based on the district court's order's requirement that Suri participate in his removal proceedings miss the point. *See* Doc. 27 at 18. District court

adjudication of issues that may be determinative of an alien's removability under the guise of a habeas challenge to initial detention is precisely the sort of challenge to the decision to commence removal proceedings that § 1252(g) seeks to avoid. *See Rauda*, 55 F.4th at 777-78 ("Limiting federal jurisdiction in this way is understandable because Congress wanted to streamline immigration proceedings by limiting judicial review to final orders, litigated in the context of petitions for review."); *Limpin*, 828 F. App'x at 429 ("claims stemming from the decision to arrest and detain an alien at the commencement of removal proceedings are not within any court's jurisdiction.").

There are cases where habeas proceedings challenging present immigration detention are collateral to removal proceedings, but this is not one of them. For example, habeas proceedings may be collateral to removal proceedings if there is no significant overlap between the grounds for the habeas petition and the habeas petitioner's defense to charges of removability. *See, e.g.*, *Zadvydas*, 533 U.S. 678 (challenge to Government's authority to impose indefinite detention after issuance of removal order); *Clark*, 543 U.S. 371 (same); *Castaneda*, 95 F.4th 750 (same). But habeas petitions decidedly are not collateral to removal

proceedings where, as here, the petitioner challenges his initial detention on the same basis as he defends against removability. *See, e.g.*, JA122-27 ¶¶95, 99-101, 109, 111-113, 114-15.

Section 1252(g) precludes district court jurisdiction over habeas petitions challenging the Secretary of Homeland Security's decision to commence removal proceedings. That prohibition includes the decision to commence removal proceedings by detaining an alien pursuant to a warrant. Suri cannot overcome that prohibition by challenging the constitutionality of his initial detention for the same reasons he challenges his removability. As a result, the district court had no jurisdiction to issue injunctive relief prohibiting Suri's removal without the district court's consent or ordering Suri's immediate release.

## B.  Section 1252(a)(5) and (b)(9)

The district court was also stripped of jurisdiction by 8 U.S.C. §§ 1252(a)(5) and (b)(9), which channel all challenges to removal proceedings into the federal circuit courts under the petition for review process:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this

subchapter shall be available only in judicial review of a final order under this section. Except as otherwise provided in this section, no court shall have jurisdiction ... by any ... provision of law (statutory or nonstatutory), to review such an order or such questions of law or fact.

8 U.S.C. § 1252(b)(9). The Supreme Court has called § 1252(b)(9) an "unmistakable 'zipper' clause" that "channels judicial review of *all* [claims arising from deportation proceedings]" to a court of appeals in the first instance. *AADC*, 525 U.S. at 483 (emphasis in original). And this Court has held that "Congress [through § 1252(b)(9)] has specifically prohibited the use of habeas corpus petitions as a way of obtaining review of questions arising in removal proceedings." *Whitehead*, 647 F.3d at 124. *See also Aguilar v. ICE*, 510 F.3d 1, 9-10 (1st Cir. 2007) (Section 1252(b)(9) acts as a channeling provision throughout the removal process to "put an end to the scattershot and piecemeal nature of the review process."); *Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000) (Section 1252(b)(9) channels "*all* challenges ... into one petition," not "only actions attacking the deportation order itself.") (emphasis added).

The INA further provides that:

Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, or any other habeas corpus provision ... a petition for review filed with an appropriate court of appeals in accordance with this section

48

shall be the sole and exclusive means for judicial review of an order of removal entered or issued under any provision of this chapter, except as provided in subsection (e).

8 U.S.C. § 1252(a)(5).

"Taken together, § 1252(a)(5) and 1252(b)(9) mean that *any* issue—whether factual or legal—arising from *any* removal-related activity can be reviewed *only* through the [petition-for-review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016). Notably, the Ninth Circuit's holding in *J.E.F.M.* applied to aliens at various stages of removal proceedings, including "some [] waiting to have their first removal hearing, some [who had] already had a hearing, and some [who had] been ordered removed in absentia." *Id.* at 1029. *See also Trabelsi*, 2024 WL 5297113, at *6 ("[C]ourts have recognized that challenges to detention that do not focus on the length of detention or the conditions of detention are foreclosed by Section 1252(b)(9) because they arise out of the removal process.") (citing *Tazu*, 975 F.3d at 299).

The district court relied on *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022) to reason that § 1252(b)(9) did not bar jurisdiction over Suri's claims because he challenges "the government's authority." JA263-64. In *Garland*, this Court concluded that § 1252(b)(9) did not limit its

49

jurisdiction over claims that the detention and bond provisions of 8 U.S.C. § 1226(e) violate the Fourth and Fifth Amendment rights of immigration detainees. 34 F.4th at 353 n.6. However, the *Garland* panel did not state that § 1252(b)(9) does not apply to challenges to the Government's authority. Rather, the *Garland* court merely noted that, in *Jennings*, five justices concluded—for varying reasons—that § 1252(b)(9) did not preclude jurisdiction there and held without further explanation that the statute "would not preclude review under these circumstances." *Id.*

Whatever circumstances the *Garland* panel saw in common between that case and *Jennings* are not present here. The panel certainly did not mean, as the direct court held, that both cases involved a challenge to government authority. Nothing in *Jennings*—the only authority the *Garland* panel cited for its conclusion—supports such a broad limitation on the application of § 1252(b)(9).

If the district court meant that neither *Garland* nor *Jennings* involved review of an order of removal, then it misread § 1252(b)(9). Courts, including the panel that denied the Government's motion to stay in this matter, that have tentatively reasoned that § 1252(b)(9) applies

only to review of an order of removal have relied on an overly restrictive reading of the statute. *See* Doc. 27 at 19-20 (citing *Öztürk v. Hyde*, 136 F.4th 382, 399 (2d Cir. 2025)); *Khalil v. Joyce*, 2025 WL 1232369, at *13-16 (D.N.J. Apr. 29, 2025)). Those courts relied on the heading of § 1252(b)—"Requirements for review of orders of removal"—and the first sentence of the subsection, which states that "[w]ith respect to review of an order of removal under subsection (a)(1), the following requirements apply".

The proper reading of § 1252(b)(9), however, is that one of the prerequisites to obtaining review of an order of removal is compliance with the review process outlined in § 1252(b) as the exclusive avenue available for review of "all questions of law and fact ... arising from any action taken or proceeding brought to remove an alien from the United States." 8 U.S.C. § 1252(b)(9). That is, no other judicial review—regardless of whether it is initiated before or after issuance of the order of removal—is available. Indeed, subsection (b)(9) goes on to state that "Except as otherwise provided in this section, no court shall have jurisdiction ... by any ... provision of law (statutory or nonstatutory), to review ... such questions of law or fact."

Although the Supreme Court has not addressed the issue directly,[7] it does not appear to view the preliminary language in subsection (b) as limiting subsection (b)(9) to post-order-of-removal cases. For example, the majority's analysis in *AADC* suggests that § 1252(b)(9) applies pre-order-of-removal. There, the Supreme Court addressed the interplay between § 1252(g) and § 1252(b)(9), noting a potential argument "that § 1252(g) is redundant if it channels judicial review of only *some* decisions and actions, since § 1252(b)(9) channels review of *all* of them anyway." 525 U.S. at 483. Justice Scalia first noted that § 1252(g) was not redundant because the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") applied it—and not § 1252(b)(9)— to "transitional cases," meaning cases pending on the effective date of IIRIRA. *Id.* He went on to state that "even after all the transitional cases have passed through the system, § 1252(g) as we interpret it serves the continuing function of making it clear that those specified decisions and actions ... *are* covered by the 'zipper' clause of § 1252(b)(9)." *Id.* (emphasis in original). But there is no question that § 1252(g) applies pre-order-of-

---

[7] *See Khalil*, 2025 WL 1232369, at *16 ("At the Supreme Court, there is no binding authority. A majority of Justices has not directly passed on the question one way or another.").

removal; indeed, *AADC* itself arose in such a context. 525 U.S. at 473 (plaintiffs filed suit "almost immediately" upon initiation of removal proceedings against them). If, per Justice Scalia's opinion, § 1252(b)(9) also channeled review of the plaintiffs' claims in *AADC*, that subsection must apply before an order of removal is issued.

Additionally, in *INS v. St. Cyr*, 533 U.S. 289 (2001), the Supreme Court interpreted the preliminary language in subsection (b) to distinguish between removal orders under § 1252(a)(1) and other removal orders, such as those "against aliens who are removable by reason of having committed one or more criminal offenses." 533 U.S. at 313. Thus, the function of the preliminary language was not to impose a temporal limitation on the effect of subsection (b)(9), but to clarify that the requirements in § 1252(b) do not apply to removal orders not covered in § 1252(a)(1). The *St. Cyr* decision further clarified that § 1252(b)(9) requires "claims that were viewed as being outside of a 'final order'" to be "consolidated in a petition for review and considered by the courts of appeals" in their review of the final removal order under § 1252(a)(1). *Id.* at 313, n. 37.

53

And in *Jennings*, 583 U.S. at 294-95 (2018), Justice Alito, writing for himself and two other Justices, opined that § 1252(b)(9) did not bar the Court from considering the plaintiffs' challenge to the Government's authority to detain them indefinitely following the 90-day removal period. However, Justice Alito did not conclude that § 1252(b)(9) applies only to challenges to removal orders; that was the dissent's view. 583 U.S. at 355 (Breyer, J. dissenting). On the other hand, Justices Thomas and Gorsuch wrote in concurrence that the text of § 1252(b)(9) "refers to '*all* questions of law and fact' arising from removal, not just removal orders." 583 U.S. at 320 (emphasis in original). Thus, five Justices viewed § 1252(b)(9) as being sufficiently broad to encompass *at least* this case.

Further, by its own terms, subsection (b)(9) limits judicial review of an "such an order [of removal] *or* such questions of law or fact." 8 U.S.C. § 1252(b)(9) (emphasis added). Interpreting subsection (b)(9) to apply only post-order-of removal would read "or such questions of law or fact" out of the statute and make redundant § 1252(a)(5), which already provides that a petition for review is the "sole and exclusive means for judicial review of an order of removal." 583 U.S. at 320.

Finally, reading § 1252(b)(9) to apply only post-order-of-removal leads to the absurd conclusion that, absent any other prohibition on judicial review, an alien would be free to litigate any "question of law [or] fact ... arising from any action taken or proceeding brought to remove an alien from the United States"—including the alien's ultimate removability—in district court so long as he does so before an order of removal is issued against him. That result is antithetical to Congress's clear intent to channel all claims arising out of removal proceedings to the immigration courts and the subsequent petition-for-review process. *Rauda*, 55 F.4th at 777-78. For these reasons, the district court lacked jurisdiction under § 1252(b)(9).

## III. The All Writs Act did not authorize the district court's injunction preventing petitioner's removal

The preceding discussion establishes that the district court had no jurisdiction—either as a matter of habeas or under the INA—to issue its orders. But even if it had jurisdiction, the district court had no authority to issue its March 20, 2025, order directing, without exception, "that Petitioner shall not be removed from the United States unless and until the Court issues a contrary order." JA048. For that order, the district

court relied solely on its "authority to preserve its jurisdiction under the All Writs Act," 28 U.S.C. § 1651. *Id.* That was error.[8]

The March 20 order was overbroad for multiple reasons. First, the order was not necessary to preserve the district court's jurisdiction. "While the All Writs Act authorizes employment of extraordinary writs, it confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction." *Goldsmith*, 526 U.S. at 534 (quoting 28 U.S.C. § 1651(a)). Yet it is entirely unclear here how this order helped preserve jurisdiction. The district court issued its order *ex parte*, without opportunity for the Government to oppose Suri's motion. Further, the district court offered no reason for its assertion that the order was necessary to preserve its jurisdiction. The Government can only assume

---

[8] The All Writs Act is not an independent grant of jurisdiction, making the authority to enter an order under it dependent on having jurisdiction over the underlying matter. *See Syngenta Crop Prot., Inc. v. Henson*, 537 U.S. 28, 33 (2002) ("[T]he All Writs Act does not, by its specific terms, provide federal courts with an independent grant of jurisdiction." (cleaned up)); *Clinton v. Goldsmith*, 526 U.S. 529, 534–35 (1999) (concluding that "the express terms of the Act confine the power of [courts] to issuing process in aid of its existing statutory jurisdiction; the Act does not enlarge that jurisdiction...." (cleaned up)). For all the reasons discussed *supra*, the district court lacked jurisdiction over Suri's habeas claims. It therefore lacked jurisdiction to issue an order under the All Writs Act.

that the district court credited Suri's counsel's representation that Suri's presence at the Alexandria Staging Facility was a precursor to imminent removal. JA041. However, Suri's counsel offered no support—whether in fact or law—for his assertion other his own belief. *Id.* In contrast, Suri's NTA clearly indicated that he had a hearing scheduled for May 6. JA088.

Second, the order was overbroad because, under the district court's interpretation of Suri's petition, there was no reasonable connection between the relief ordered and Suri's claims, which is necessary for a court to issue an injunction. *See Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997); *Las Americas Immigrant Advoc. Ctr. v. Trump*, 451 F. Supp. 3d 1191, 1193 (D. Or. 2020) ("Accordingly, the All Writs Act requires that there be some nexus between the relief sought in a temporary restraining order and the relief sought in the Complaint."). A "preliminary injunction may *never* issue to prevent an injury or harm which not even the moving party contends was caused by the wrong claimed in the underlying action." *Omega World Travel*, 111 F.3d at 16 (emphasis added). The district court reasoned that Suri's habeas petition was "totally separate" from his removal proceedings, JA263-64. But if Suri's petition was "totally separate" from his removal

57

proceedings, then the district court's order enjoining Suri's removal was improper because it exceeded the scope of the petition.

In addition to being overbroad, the district court's order arrogated to itself the very authority that Congress has denied it to review final orders of removal. Suri is in removal proceedings. JA210 (noting he was served with an NTA and had a scheduled immigration court appearance for May 6, 2025); JA238 (ordering Suri to participate in his removal proceedings). A possible outcome of those removal proceedings is that Suri will be ordered removed. *See generally* 8 U.S.C. § 1229a (prescribing procedures for removal proceedings). Any appeal of such an order unquestionably must go directly to the proper court of appeals via a petition for review. A district court has no role to play in reviewing a removal order. 8 U.S.C. §§ 1252(a)(5), (b)(9). Yet the district court inserted itself into the removal process by requiring that the Government obtain its pre-approval before it may remove Suri, even if he is ordered removed by an immigration judge and that removal is upheld on appeal. JA048 (ordering "that Petitioner shall not be removed from the United States unless and until the Court issues a contrary order"). But because all review of orders of review are channeled *directly* to the courts of

appeals—bypassing district courts—the district court here had no jurisdiction to "preserve," and thus no lawful recourse to the All Writs Act.

"Although [the All Writs] Act empowers federal courts to fashion extraordinary remedies when the need arises, it does not authorize them to issue *ad hoc* writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). Instead, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Id.* Congress has provided procedures governing review of both removal orders and "all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove and alien from the United States," and firmly placed such review in the courts of appeal. 8 U.S.C. §§ 1252(a)(5), (b)(9). Once such an appeal is exhausted, or if an appellate court declines to stay a removal order, Congress requires that the Attorney General "shall remove the alien from the United States within a period of 90 days." 8 U.S.C. § 1231(a)(1). The district courts have no role to play in that

59

required process, and it is improper for the district court to use this case to create for itself a role that Congress has specifically denied it.

This Court should reverse the district court's order requiring its permission to remove Suri because the district court lacked jurisdiction to enter the order, the order was not necessary to protect the district court's jurisdiction, and it was not reasonably related to the injuries alleged in the habeas petition. At a minimum, this Court should reverse the district court's order to the extent that it enjoins the government from removing Suri pursuant to a final order of removal because jurisdiction to review and stay such a removal order lies with the appropriate court of appeals and not the district court.

## CONCLUSION

For the reasons stated herein, the Government respectfully requests that the Court find that the district court lacked jurisdiction to issue the challenged orders and that the matter be remanded to the district court with instructions to dismiss Suri's habeas petition. In the alternative, the Government requests that the case be remanded with instructions to transfer Suri's petition to either the Northern District of Texas or the Western District of Louisiana.

May 23, 2025                              Respectfully submitted,


ERIK S. SIEBERT                          BRETT A. SHUMATE
*United States Attorney*                 *Assistant Attorney General*
                                         Civil Division

                                         DREW C. ENSIGN
                                         *Deputy Assistant Attorney General*

                                         WILLIAM C. PEACHEY
                                         *Director*
                                         Office of Immigration Litigation
                                         District Court National Security
                                         Section

                                         YAMILETH G. DAVILA
                                         *Assistant Director*

                                         DAVID J. BYERLEY
                                         *Trial Attorney*

                                         */s/ Brandon D. Zeller*
                                         BRANDON D. ZELLER
                                         Trial Attorney (NC Bar # 50245)
                                         Office of Immigration Litigation
                                         Civil Division, U.S. Dept. of
                                         Justice
                                         P.O. Box 878, Ben Franklin
                                         Station
                                         Washington, DC 20044
                                         Tel: (771) 217-8120
                                         Brandon.D.Zeller@usdoj.gov
                                         *Attorneys for Federal Respondents*

61

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and with Local Rule 32(b) because it contains 12,033 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).

This the 13th day of August, 2025.

Respectfully submitted,

*/s/* Brandon D. Zeller
Brandon D. Zeller, NC Bar No. 50245
Trial Attorney
Office of Immigration Litigation
Civil Division, U.S. Dept. of Justice
P.O. Box 878, Ben Franklin Station
Washington, DC 20044
Brandon.D.Zeller@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 13, 2025, the foregoing brief was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

<u>/s/ Brandon D. Zeller</u>

Brandon D. Zeller
Trial Attorney

3