No. 25-1560

# United States Court of Appeals
## for the Fourth Circuit

◆

BADAR KHAN SURI,

*Petitioner–Appellee,*

v.

DONALD J. TRUMP,

*Respondents–Appellants.*

---

**On Appeal from the United States District Court
for the Eastern District of Virginia
(Case No. 1:25-cv-480)**

---

**PETITIONER–APPELLEE'S RESPONSE BRIEF**

---

Hassan Ahmad (VSB #83428)
THE HMA LAW FIRM, PLLC
6 Pidgeon Hill Dr, Suite 330
Sterling, VA 20165
(703) 964-0245

Astha Sharma Pokharel
Baher Azmy
CENTER FOR CONSTITUTIONAL RIGHTS
666 Broadway, 7th floor
New York, NY 10012
(212) 614-6464

Eden Heilman (VSB #93554)
Sophia Leticia Gregg (VSB #91582)
Geri Greenspan (VSB #76786)
Vishal Agraharkar (VSB #93265)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF VIRGINIA
701 E. Franklin St., Suite 1412
Richmond, VA 23219
(804) 644-8022

Brett Max Kaufman
Scarlet Kim
Brian Hauss

Jessica Myers Vosburgh
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. Box 486
Birmingham, AL 35201
(212) 614-6492

Nermeen Saba Arastu
IMMIGRANT & NON-CITIZEN RIGHTS
CLINIC
MAIN STREET LEGAL SERVICES, INC.
CUNY SCHOOL OF LAW
2 Court Square, 5th Floor
Long Island City, NY 11101
(202) 246-0124

Esha Bhandari
Noor Zafar
Sidra Mahfooz
Michael K.T. Tan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500


*Counsel for Petitioner–Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................. iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF JURISDICTION ..................................................................... 2

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ........................... 2

STATEMENT OF THE CASE .............................................................................. 3

    Factual Background ....................................................................................... 3

    Procedural History ........................................................................................ 6

SUMMARY OF THE ARGUMENT .................................................................... 9

STANDARD OF REVIEW ................................................................................. 12

ARGUMENT ..................................................................................................... 13

    I.  The district court has habeas jurisdiction ................................................. 13

        A. The district court properly applied the unknown-custodian
        exception ........................................................................................... 13

        B. Alternatively, the district court properly applied the
        principles of Justice Kennedy's concurrence in *Padilla* .................... 19

        C.The district court did not abuse its discretion by denying the
        government's request to transfer the petition ..................................... 22

    II.  The INA does not strip the district court of subject-matter
        jurisdiction to review Dr. Suri's unconstitutional detention claims
        and order his release ................................................................................ 27

        A. 8 U.S.C. § 1252(g) does not bar review ......................................... 29

        B. 8 U.S.C. § 1252(b)(9) does not bar review...................................... 38

        C. Reading section 1252 to bar review would raise serious
        concerns under the Suspension Clause and First Amendment .......... 45

III. The district court did not abuse its discretion by staying Dr. Suri's removal under the All Writs Act pending adjudication of his petition ...................................................................................47

CONCLUSION ..........................................................................................52

## **Cases**

*A.A.R.P. v. Trump*,
   605 U.S. 91 (2025) ................................................................... 22, 49

*Abrego Garcia v. Noem*,
   2025 WL 1135112 (4th Cir. Apr. 17, 2025) ............................... 37, 52

*Adams v. United States*,
   317 U.S. 269 (1942) .................................................................. 47, 50

*Aguilar v. ICE*,
   510 F.3d 1 (1st Cir. 2007) .............................................................. 42

*Anariba v. Dir. Hudson Cnty. Corr. Ctr.*,
   17 F.4th 434 (3d Cir. 2021) ........................................................... 24

*Arce v. United States*,
   899 F.3d 796 (9th Cir. 2018) ......................................................... 36

*Arostegui-Maldonado v. Baltazar*,
   2025 WL 2280357 (D. Colo. Aug. 8, 2025) .................................... 48

*Bello-Reyes v. Gaynor*,
   985 F.3d 696 (9th Cir. 2021) ......................................................... 31

*Berg v. Kingdom of the Neth.*,
   24 F.4th 987 (4th Cir. 2022) .......................................................... 23

*Black v. Decker*,
   103 F.4th 133 (2d Cir. 2024) ......................................................... 28

*Boumediene v. Bush*,
   553 U.S. 723 (2008) ............................................................ 2, 15, 46

*California v. M&P Invs.*,
   46 F. App'x 876 (9th Cir. 2002) .................................................... 47

*Camarena v. Dir., ICE*,
   988 F.3d 1268 (11th Cir. 2021) ..................................................... 36

*Casa De Maryland v. DHS*,
 924 F.3d 684 (4th Cir. 2019) ........................................................ 11, 30, 38, 39

*Castaneda v. Perry*,
 95 F.4th 750 (4th Cir. 2024) .............................................................33

*Chehazeh v. Att'y Gen. of U.S.*,
 666 F.3d 118 (3d Cir. 2012) ..............................................................39

*Clark v. Martinez*,
 543 U.S. 371 (2005).................................................................... 33, 45

*Delgado v. Quarantillo*,
 643 F.3d 52 (2d Cir. 2011) ........................................................... 42, 43

*Demjanjuk v. Meese*,
 784 F.2d 1114 (D.C. Cir. 1986)...................................................... 14, 16, 23

*DHS v. Regents of the Univ. of Cal.*,
 591 U.S. 1 (2020)..................................................................... 30, 35, 41

*DHS v. Thuraissigiam*,
 591 U.S. 103 (2020).................................................................. 28, 38, 46

*Dombrowski v. Pfister*,
 380 U.S. 479 (1965)......................................................................46

*E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*,
 950 F.3d 177 (3d Cir. 2020) .......................................................... 42, 43

*Eisel v. Sec'y of the Army*,
 477 F.2d 1251 (D.C. Cir. 1973)............................................................24

*Elrod v. Burns*,
 427 U.S. 347 (1976)......................................................................43

*Ex parte Catanzaro*,
 138 F.2d 100 (3d Cir. 1943) ..............................................................17

*Ex parte Endo*,
 323 U.S. 283 (1944)................................................................... 24, 25

*F.T.C. v. Dean Foods Co.*,
384 U.S. 597 (1966)......................................................47

*Garcia v. Att'y Gen. of U.S.*,
553 F.3d 724 (3d Cir. 2009) ...........................................36

*German Santos v. Warden Pike Cnty. Corr. Facility*,
965 F.3d 203 (3d Cir. 2020) ...........................................29

*Ghamelian v. Baker*,
2025 WL 2074155 (D. Md. July 23, 2025) ......................48

*Gilchrist v. Gen. Elec. Cap. Corp.*,
262 F.3d 295 (4th Cir. 2001) ..........................................51

*Gonzalez v. ICE*,
975 F.3d 788 (9th Cir. 2020) ..........................................42

*Griffin v. Ebbert*,
751 F.3d 288 (5th Cir. 2014) ..........................................24

*Guerrero-Lasprilla v. Barr*,
589 U.S. 221 (2020)........................................................28

*Hernandez v. Gonzales*,
424 F.3d 42 (1st Cir. 2005)............................................29

*Humphries v. Various Fed. USINS Emps.*,
164 F.3d 936 (5th Cir. 1999) ..........................................32

*I.N.S. v. St. Cyr*,
533 U.S. 289 (2001)................................................. 38, 39

*In re March*,
988 F.2d 498 (4th Cir. 1993) ..........................................12

*J.E.F.M. v. Lynch*,
837 F.3d 1026 (9th Cir. 2016) ........................................45

*Jennings v. Rodriguez*,
583 U.S. 281 (2018).................................................*passim*

*Johnson v. Arteaga-Martinez*,
596 U.S. 573 (2022) .................................................................45

*Johnson v. Guzman Chavez*,
594 U.S. 523 (2021) ................................................. 28, 41, 44

*Johnson v. Whitehead*,
647 F.3d 120 (4th Cir. 2011) ...............................................45

*Kellici v. Gonzales*,
472 F.3d 416 (6th Cir. 2006) ...................................... 31, 42

*Khalil v. Joyce*,
771 F. Supp. 3d 268 (S.D.N.Y. 2025) ........................ 25, 26

*Khalil v. Joyce*,
777 F. Supp. 3d 369 (D.N.J. 2025) ...................... 14, 18, 19

*Khalil v. Joyce*,
780 F. Supp. 3d 476 (D.N.J. 2025) ............................ 39, 44

*Klay v. United Healthgroup*, Inc.,
376 F.3d 1092 (11th Cir. 2004) ............................................51

*Kong v. United States*,
62 F.4th 608 (1st Cir. 2023) ...................................... 30, 32, 35

*Kucana v. Holder*,
558 U.S. 233 (2010) .................................................................28

*Las Ams. Immigrant Advoc. Ctr. v. Trump*,
451 F. Supp. 3d 1191 (D. Or. 2020) ...................................50

*Limpin v. United States*,
828 F. App'x 429 (9th Cir. 2020) .......................................34

*Madu v. U.S. Att'y Gen.*,
470 F.3d 1362 (11th Cir. 2006) ............................. 31, 39, 52

*Mahdawi v. Trump*,
136 F.4th 443 (2d Cir. 2025) ...................................... *passim*

*Mapp v. Reno*,
241 F.3d 221 (2d Cir. 2001) ...................................................................8

*Meza v. Renaud*,
9 F.4th 930 (D.C. Cir. 2021)..............................................................39

*Miranda v. Garland*,
34 F.4th 338 (4th Cir. 2022) ........................................... 28, 33, 42, 44

*Monsalvo Velasquez v. Bondi*,
145 S. Ct. 1232 (2024)........................................................................41

*Nadarajah v. Gonzales*,
443 F.3d 1069 (9th Cir. 2006) ...........................................................29

*Nichols v. G.D. Searle & Co.*,
991 F.2d 1195 (4th Cir. 1993) ..................................................... 12, 23

*Nielsen v. Preap*,
586 U.S. 392 (2019)..................................................................... 41, 44

*Omega World Travel, Inc. v. Trans World Airlines*,
111 F.3d 14 (4th Cir. 1997) ...............................................................50

*Öztürk v. Hyde*,
136 F.4th 382 (2d Cir. 2025) ..................................................... *passim*

*Öztürk v. Hyde*,
2025 WL 2679904 (2d Cir. Sept. 19, 2025) ........................... 33, 35, 49

*Öztürk v. Trump*,
777 F. Supp. 3d 26 (D. Mass. 2025)....................................... 25, 26, 48

*Parra v. Perryman*,
172 F.3d 954 (7th Cir. 1999) .............................................................30

*Ragbir v. United States*,
2018 WL 1446407 (D.N.J. Mar. 23, 2018) .........................................48

*Rauda v. Jennings*,
55 F.4th 773 (9th Cir. 2022) ..............................................................33

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999)..................................................................... *passim*

*Rumsfeld v. Padilla*,
    542 U.S. 426 (2004)..................................................................... *passim*

*Singh v. Gonzales*,
    499 F.3d 969 (9th Cir. 2007) ...............................................................39

*Sissoko v. Rocha*,
    509 F.3d 947 (9th Cir. 2007) ...............................................................34

*Suri v. Trump*,
    2025 WL 1806692 (4th Cir. July 1, 2025) ................................ *passim*

*Tazu v. Att'y Gen. U.S.*,
    975 F.3d 292 (3d Cir. 2020) ................................................. 34, 36, 45

*Trabelsi v. Crawford*,
    2024 WL 5497113 (E.D. Va. Dec. 2, 2024)............................... 34, 45

*United States v. Eliely*,
    276 F. App'x 270 (4th Cir. 2008) ..........................................................8

*United States v. Moussaoui*,
    382 F.3d 453 (4th Cir. 2004) ....................................... 14, 16, 17, 18

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977)................................................................................50

*United States v. Russell*,
    WL 2448955 (D. Md. Aug. 26, 2025) ..............................................48

*Vasquez v. Reno*,
    233 F.3d 688 (1st Cir. 2000)................................................................24

*Velasco v. Gov't of Indon.*,
    370 F.3d 392 (4th Cir. 2004) ..............................................................12

*Webster v. Doe*,
    486 U.S. 592 (1988)................................................................................37

*Zadvydas v. Davis*,
    533 U.S. 678 (2001)........................................................... 33, 35

**Constitutional Provisions**

U.S. Const. art. I, § 9, cl. 2.................................................................2, 45

U.S. Const. art. III .........................................................................................2

**Statutes**

5 U.S.C. § 701 ...............................................................................................2

8 U.S.C. § 1182 .............................................................................................4

8 U.S.C. § 1252 .................................................................................. *passim*

28 U.S.C. § 1292 ...........................................................................................2

28 U.S.C. § 1331 ...........................................................................................2

28 U.S.C. § 1361 .........................................................................................36

28 U.S.C. § 1404 .........................................................................................26

28 U.S.C. § 1406 ............................................................................. 23, 25, 27

28 U.S.C. § 1631 ................................................................................. 25, 27

28 U.S.C. § 1651 .................................................................................. *passim*

28 U.S.C. § 2201 ...........................................................................................2

28 U.S.C. § 2241 .....................................................................................2, 36

28 U.S.C. § 2242 ............................................................................. 14, 16, 18

8 C.F.R. § 1003.19 ......................................................................................44

**Other Authorities**

Br. for Pet'rs, *United States v. Texas*, 2022 WL 4278395, (Sep. 12, 2022)............32

Brian R. Means, Federal Habeas Manual § 1:93 (2025) .........................................16

H.R. Rep. No. 109-72 (2005) (Conf. Rep.) ...................................................... 30, 42

Mem. from Asa Hutchinson, Undersecretary, Border & Transp. Sec., to
    Michael J. Garcia, Assistant Sec'y, U.S. ICE, and Robert Bonner,
    Comm'r, U.S. CBP (Mar. 30, 2004), https://perma.cc/F3RF-VK6E..................32

Resp't's Opp. to Pet'r's Mot. for Release, *Khalil v. Joyce*, No. 25-cv-1963
    (D.N.J. Mar. 23, 2025), Dkt. No. 99..................................................................44

# **INTRODUCTION**

The government seeks to re-imprison Petitioner–Appellee Dr. Badar Khan Suri—a post-doctoral Fellow and scholar of peace and conflict studies at Georgetown University, father of three young children, and husband to a U.S. citizen—for nothing more than what it concedes are his constitutionally protected speech in support of Palestinian human rights and marriage to the daughter of a former foreign government official the U.S. government dislikes. The government's egregiously unconstitutional targeting of Dr. Suri is disturbing enough, but the manner in which the government has sought to avert judicial review of its conduct is equally grave.

In its appeal, the government takes a radically restrictive view of the federal courts' equitable and flexible habeas jurisdiction and a radically expansive view of the Immigration and Nationality Act ("INA") that would, if accepted, run headlong into the Suspension Clause's protection of the Great Writ. Together, its arguments mean that someone like Dr. Suri is essentially helpless, at least until the conclusion of executive-run immigration proceedings, to challenge an unconstitutional government attempt to retaliate against and silence them—and that any challenge to that kind of attempt can only occur in a jurisdiction of the government's choosing. But that is not what the rules regarding habeas jurisdiction or the INA permit, and

the executive branch cannot itself choose "to switch the Constitution on or off at will[.]" *Boumediene v. Bush*, 553 U.S. 723, 765 (2008).

## STATEMENT OF JURISDICTION

The district court had jurisdiction over the habeas petition under 28 U.S.C. § 2241 (habeas statute); 28 U.S.C. § 1331 (federal question jurisdiction); Art. I, § 9, cl. 2 (Suspension Clause) and Article III of the U.S. Constitution; 5 U.S.C. § 701 (Administrative Procedure Act); and 28 U.S.C. § 2201 (Declaratory Judgment Act). It had jurisdiction to enjoin Dr. Suri's removal pending a ruling on the habeas petition under 28 U.S.C. § 1651(a) (All Writs Act ("AWA")) and the court's inherent equitable power.

This Court has appellate jurisdiction under 28 U.S.C. § 1292(a)(1).

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1. Whether the district court properly assumed habeas jurisdiction over this petition.

2. Whether the INA strips district courts of subject-matter jurisdiction over Dr. Suri's detention claim.

3. Whether the district court abused its discretion in enjoining Dr. Suri's removal pending litigation of the petition.

## STATEMENT OF THE CASE

### Factual Background

Dr. Suri is an Indian national who legally entered the United States in December 2022 on a J-1 exchange visa to participate in a postdoctoral fellowship at Georgetown University. JA103; JA105. He resides in Rosslyn, Virginia, with his wife, who is a U.S. citizen, and their three young children. JA104-105.

In October 2023, Dr. Suri's wife began sharing posts online addressing events in Gaza and "express[ing] sorrow for the deaths of Gazan people." JA045. In February 2025, she learned that she and her family were being targeted online by certain organizations because of her posts and her father's former position in the government of Gaza. JA105-106.

On March 17, 2025, just before 9:30 p.m.,[1] as Dr. Suri was returning home from his Ramadan iftar, masked federal officers emerged from unmarked cars, seized him, and drove him away. JA035; JA113-114. The arresting officers told him that his visa had been revoked, that the revocation was due to social media, and that he would be deported from the country that same day. JA114. Unbeknownst to Dr. Suri, two days earlier, Secretary of State Marco Rubio had terminated Petitioner's J-

---

[1] All times are Eastern Daylight Time.

1 status, and the government had issued a custody determination to detain him. JA084; JA284.

Secretary Rubio had done so based on purported authority in a rarely used provision of the INA, 8 U.S.C. § 1182(a)(3)(C)(iii) (the "Foreign Policy Ground" or "FPG"). JA111. Secretary Rubio made a determination (in this case and others) under the FPG—pursuant to a government policy (the "Policy") of targeting for detention and removal noncitizens who engage in protected expressive activity in support of Palestinian rights or critical of Israel—by finding that Dr. Suri's presence or otherwise lawful speech activities in the United States would compromise a compelling United States foreign policy interest. JA111.

Over the first eleven hours after his arrest, Dr. Suri was moved to three different locations. First, he was brought to the Enforcement and Removal Operations ("ERO") Washington Field Office for Immigration and Customs Enforcement ("ICE") in Chantilly, Virginia. JA135. There, officers informed him that he would be transferred to the Farmville (Virginia) Detention Center and permitted him to share that information with his wife. JA135. They also showed him his Notice to Appear ("NTA"), which listed a Texas detention facility's address as his "current residence" and specified that he had a May 6 hearing date in immigration court at a different Texas location in a different judicial district. JA088; JA135. In response to Dr. Suri's question as to why his NTA listed a Texas address, an ICE

4

officer told him that it "was just computer generated, and it might be changed later on." JA136. Officers then drove him to Farmville. JA136. Only a few hours later, he was moved again to another ERO office near Richmond, Virginia, arriving at around 7:50 a.m. on March 18. JA085; JA136. Then, without being permitted to communicate with his wife or lawyer, and without being told where he was being taken, Dr. Suri was placed on a flight that departed at 2:47 p.m. and landed in Alexandria, Louisiana, just after 5:00 p.m. JA085; JA136-137. However, according to the government, Dr. Suri was not booked into the Alexandria Staging Facility ("ASF") in Louisiana until 6:42 p.m. JA204.

Meanwhile, at approximately 1:52 p.m. on March 18, Dr. Suri's counsel spoke to Dr. Suri's wife for the first time. JA053. Immediately thereafter, at 2:11 p.m., that attorney entered an appearance in Dr. Suri's immigration case. JA053. At the time, his lawyer believed Dr. Suri was still detained at the Farmville Detention Center, based on the last communication between Dr. Suri and his wife. JA053. Over the course of the afternoon, counsel repeatedly checked ICE's Online Detainee Locator in an effort to verify Dr. Suri's location, but Dr. Suri did not appear in that system at all. JA053. At 5:59 p.m. on March 18, Dr. Suri's counsel filed a habeas petition in the Eastern District of Virginia ("E.D. Va.") seeking his release. JA053.

Dr. Suri remained at the ASF for three nights, until March 21. JA204. He was then driven to the Prairieland Detention Center in Texas. JA086; JA138. Despite the

government's representations that ICE "receiv[ed] confirmation of availability" of bedspace at Prairieland while Dr. Suri was still in Virginia, JA085, when Dr. Suri arrived there, there was no bed available for him, and he slept on a sleeping mat on the floor for twelve days. JA095; JA138. He remained detained at Prairieland until his release on bail on May 14.

## Procedural History

On March 18, Dr. Suri's lawyer filed a habeas petition seeking his release in the E.D. Va. JA053.[2] On March 20, with his counsel now aware of his actual whereabouts, Dr. Suri filed a motion asking the district court to order the government to return him to the E.D. Va. and prohibit them from removing him from the country while his case was pending. JA027. That same day, the district court entered an order under the AWA, 28 U.S.C. § 1651, prohibiting the government from removing Dr. Suri from the United States "unless and until the Court issues a contrary order." JA048.

Dr. Suri then filed a motion for release on bail, JA049, and the government filed motions to dismiss or transfer the case, JA079; JA081. The district court held oral argument on the government's motions to dismiss or transfer on May 1, and ordered the government to provide supplemental factual information. JA145-199.

---

[2] Dr. Suri has filed two amended petitions since his initial filing. JA097-131; JA282-325.

After receiving the government's submission, ECF 57,[3] and Dr. Suri's response, ECF 58, the court issued a written opinion and order on May 6, JA206-234; JA235-236.

The district court determined that, based upon its factual findings that the government had engaged in evasive conduct and the whereabouts of Dr. Suri at the time of filing were unknowable, it was proper to apply the "unknown custodian exception" to the default rules of habeas venue, making the Secretary of Homeland Security the appropriate respondent as Dr. Suri's ultimate custodian at the time the petition was filed. JA220. The court concluded that "jurisdiction should lie in the district from which Petitioner was removed—the Eastern District of Virginia," JA 232-233. This was, in part, because "[a]t the time the petition was filed, neither Petitioner's presence in Louisiana nor movement through Louisiana was ever disclosed." JA220. And because, as the district court found, the government failed to produce a coherent account of the timeline and rationale for the decision to transfer Dr. Suri to Texas, the court concluded that "Petitioner's transfer to Texas was not about bedspace" (as the government had initially claimed) and that "Respondents' goal in moving Petitioner was to make it difficult for Petitioner's counsel to file the petition and to transfer him to the Government's chosen forum."

---

[3] ECF numbers reference entries on the district court docket that are not included in the JA.

JA228. Further, the court noted that even after reviewing the government's briefing and accompanying declarations—which misled both the court and Dr. Suri into believing he had been booked into the ASF *before* his petition was filed—and after asking follow-up questions, Dr. Suri's "immediate custodian at 5:59 p.m. remains unknowable to all, including the Government." JA223; JA222.[4] Accordingly, the court declined to dismiss the petition or transfer it to another district.

Next, on May 14, the court held a bail hearing and ruled from the bench, ordering Dr. Suri's immediate release. JA239-278. The court found that "there is no jurisdictional bar to the Court reaching or deciding this habeas petition." JA264. The court further found that Petitioner met both the standards in *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001), and *United States v. Eliely*, 276 F. App'x 270 (4th Cir. 2008) (per curiam), for release on bail. JA264-274. The court explained, based on "uncontroverted" evidence, that the speech upon which the government had purported to detain Dr. Suri was "likely protected political speech," JA266, JA268; that the government had "declined to dispute the merits of [his] claims that" the government was "retaliat[ing] against and punishing [him] for his marital relationship and his wife's familial relationship," which "concern his freedom of

---

[4] Respondents now suggest that Dr. Suri's immediate custodian at the time of filing was the warden of the ASF. Br. 1. But before the district court, they argued otherwise. ECF 49 at 8 (immediate custodian was "Warden of the Prairieland Detention Facility, located in the Northern District of Texas").

8

intimate association," JA267-269; that Dr. Suri had demonstrated a "high probability of prevailing on [his] constitutional claims" under the First and Fifth Amendments, JA272; that Dr. Suri was neither a flight risk or danger, JA273; and that his release was "necessary to make [the] habeas remedy effective," JA273.

This appeal followed. JA280. The government moved to stay the district court's release order, but on July 1, rejecting all of the arguments the government makes here as unlikely to succeed, a motions panel of this Court (over a brief dissent) denied Appellants' motion. *Suri v. Trump*, 2025 WL 1806692 (4th Cir. July 1, 2025). In addition to concluding that the E.D. Va. has habeas jurisdiction and the INA does not strip subject-matter jurisdiction over Dr. Suri's detention claims, *id.* at *5-9, the panel determined that the government had not demonstrated any irreparable harm, and that both "the equities and the public interest lie firmly in Suri's favor," as "allow[ing] the government to immediately re-detain Suri . . . would further chill speech protected by the First Amendment" and permit the government to obtain an equitable remedy that "should not be given if," as the district court found, "the moving party has not acted equitably." *Id.* at *9.

## SUMMARY OF THE ARGUMENT

**Habeas Jurisdiction**. The government argues the district court erred in not strictly adhering to the default "immediate custodian" and "district of confinement" rules the Supreme Court has explained apply to habeas jurisdiction, but the district

court correctly assumed jurisdiction over Dr. Suri's habeas petition under the unknown-custodian exception. The court found as a matter of fact (and subject to clear error review) that, because of the government's own conduct, Dr. Suri's counsel did not and could not have known his detention location at the time of the habeas filing, and that as a matter of law—based on established Supreme Court and Fourth Circuit precedent, and the habeas statute itself—such circumstances authorized the court to exercise habeas jurisdiction over the ultimate custodian named in the petition. In the alternative, the district court correctly applied the logic of Justice Kennedy's concurrence in *Rumsfeld v. Padilla*, 542 U.S. 426, 451-55 (2004) (Kennedy, J., concurring), permitting habeas jurisdiction where, as the district court found here, the government's purpose in moving a habeas petitioner was to "'make it difficult for Petitioner's counsel to file the petition.'" *Suri*, 2025 WL 1806692, at *6 n.6 (quoting JA228).

**INA**. The government argues that the INA's narrow limitations on judicial review sweep so broadly as to foreclose review of unlawful immigration detention. Not so.

First, 8 U.S.C. § 1252(g) is "narrow[ly]" tethered to limit review of three discrete, discretionary decisions of the Attorney General. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999) ("*AADC*"). Challenges to the government's authority to detain Dr. Suri are not proscribed because they do not

interfere with a decision to commence removal proceedings. Respondents' argument to the contrary represents a "sweeping interpretation" of the provision untethered from the text and case law, *Suri*, 2025 WL 1806692, at *7-8, and would lead to "staggering results," *Öztürk v. Hyde*, 136 F.4th 382, 400 (2d Cir. 2025) (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 293 (2018)), by insulating illegal detention from elementary judicial review. The Court should not "sanction the abrogation of habeas corpus . . . in the manner attempted here." *Suri*, 2025 WL 1806692, at *8 (citation omitted).

Second, 8 U.S.C. § 1252(b)(9) "appl[ies] only to challenges to an 'order of removal.' There is no such order here, so these provisions don't apply." *Id.* at *9; *see Casa De Maryland v. DHS*, 924 F.3d 684, 697 (4th Cir. 2019). Further, even if section (b)(9) did apply to pre-final-order claims, it would not channel Dr. Suri's constitutional challenge to detention because his is a now-or-never claim that cannot receive meaningful review on a petition for review ("PFR"). *See Mahdawi v. Trump*, 136 F.4th 443, 452 (2d Cir. 2025). The chilling of Dr. Suri's speech and that of other noncitizens through his retaliatory detention is happening *now* and cannot be remedied later on a PFR. *See Öztürk*, 136 F.4th at 400-01.

Construing either provision to apply here would raise serious constitutional concerns; if they did apply, the Suspension Clause and First Amendment would independently require review.

**All Writs Act Injunction**. The district court had ample authority under the AWA to temporarily prevent Dr. Suri's removal in order to preserve its jurisdiction as removal would threaten the court's already-vested jurisdiction. The government's invented requirement that there must be a "reasonable connection" between the injunction and a claim's underlying merits fails to apprehend that the purpose of an AWA injunction is to prevent harm to the court, not a party, and that unlike a preliminary injunction, decades of Supreme Court jurisprudence demonstrate its flexible nature authorizing an order independent of a showing of likelihood of success.

## STANDARD OF REVIEW

This Court reviews "the district court's factual findings with respect to jurisdiction for clear error and the legal conclusion that flows therefrom *de novo*." *Velasco v. Gov't of Indon.*, 370 F.3d 392, 398 (4th Cir. 2004). It reviews a district court's denial of a request to transfer to a new venue for abuse of discretion. *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1200 (4th Cir. 1993). And it reviews the district court's entry of an injunction under the AWA for abuse of discretion. *See In re March*, 988 F.2d 498, 500 (4th Cir. 1993).

# ARGUMENT

## I.     The district court has habeas jurisdiction.

Seeking to avoid clear error review of the district court's factual findings, the government takes the extreme legal position that there can be no exceptions whatsoever to the "default rule" for habeas cases "that the proper respondent is the warden of the facility where the prisoner is being held" at the time the petition was filed. Br. 14-15 (citing *Padilla*, 542 U.S. at 435-36). But the government's argument has no basis in the holdings of *Padilla* or other relevant precedent. And the government continues to ignore or dismiss the impermissible consequences of its extreme position, including that the government would be able to unilaterally prevent the proper filing of a timely habeas petition challenging the legality of that detention, and then select for itself whatever jurisdiction it believes would favor its positions—a position irreconcilable with the flexible, equitable principles of habeas.

## A.     The district court properly applied the unknown-custodian exception.

The well-established unknown-custodian exception to the default rules of habeas jurisdiction excuses failure to file a petition in the district of confinement against his immediate custodian in that district. Under the exception, a court has jurisdiction over a habeas petition filed in the last-known district of confinement that fails to name an unknown immediate custodian as respondent for an obvious reason: when the government holds someone "in an undisclosed location by an unknown

custodian, it is *impossible* to apply the" default rules. *Padilla*, 542 U.S. at 450 n.18 (emphasis added); *id.* at 458 (Stevens, J., dissenting) (noting the Court's unanimous agreement on this exception); *Suri*, 2025 WL 1806692, at \*4-6; *United States v. Moussaoui*, 382 F.3d 453, 464-65 (4th Cir. 2004); *Demjanjuk v. Meese*, 784 F.2d 1114, 1116 (D.C. Cir. 1986) (Bork, J., in chambers); *Öztürk*, 136 F.4th at 392-93; *Khalil v. Joyce*, 777 F. Supp. 3d 369, 400-10 (D.N.J. 2025); 28 U.S.C. § 2242 (habeas pleading statute expressly permitting not naming immediate custodian when unknown). When it is impossible to apply the default rules, the unknown-custodian exception to the default rules must apply. *Padilla*, 542 U.S. at 450 n.18 (citing *Demjanjuk*).[5]

The purpose of the unknown-custodian rule is to ensure that habeas review is always available to challenge illegal executive detention notwithstanding the default rules for habeas jurisdiction. As the motions panel explained, "if the government moves a detainee from a district and their attorney cannot discover their location with reasonable inquiry, that attorney must be able to file a habeas petition in the

---

[5] Respondents' characterization of *Padilla* as having "rejected the Second Circuit's . . . relaxed immediate custodian rule," Br. 15, is both misleading and irrelevant. In *Padilla*, the Supreme Court rejected the court of appeals' conclusion that Secretary of Defense, as a "supervisory official," was a proper respondent to a habeas petition challenging military detention, 542 U.S. at 439, in part because the unknown-custodian exception did not apply—because the *Padilla* habeas petitioner's location (in South Carolina) at the time his lawyer filed his petition (in New York) *was known to the petitioner*, *id.* at 449 n.17.

detainee's last-known location against their ultimate custodian." *Suri*, 2025 WL 1806692, at *6. "Otherwise, that detainee would lack the ability to seek habeas relief as long as the government kept their location and custodian a secret," effectively thereby suspending the Great Writ. *Id.* (citing *Boumediene*, 553 U.S. at 765). This cannot be, because the President lacks "the power to switch the Constitution on or off at will." *Boumediene*, 553 U.S. at 765.

And, as the motions panel explained, "[t]his case is a prime example for why the unknown-custodian exception exists." *Suri*, 2025 WL 1806692, at *5. The district court found the following as a matter of fact (subject only to clear error review): In the immediate aftermath of his arrest, Dr. Suri was moved in rapid succession to three different locations in Virginia over eleven hours. JA209-212. He was told he was being taken to Farmville, and was permitted to tell his wife that fact. JA209-211; JA221; JA136. After arriving at Farmville, he was sent to ICE's Richmond field office, and then, several hours later, was brought to an airport and put on a plane to Louisiana. JA211-212. At Farmville and Richmond, the government never informed Dr. Suri of his ultimate destination or permitted him to speak with his family or lawyer. JA221; JA086; JA136-137. Nor did ICE's online detainee tracker provide *any* location for Petitioner until the day after the petition was filed. JA036. At the time the petition was filed, Dr. Suri had arrived at the airport in Louisiana but had not yet been booked into the ASF. JA212.

Thus, as the district court found, "it is not clear how any other diligent attorney could have known that Petitioner was in Louisiana at the time he filed the petition." JA222. And "at the time the petition was filed, Petitioner" not only "was detained in an unknown location by an unknown custodian," JA222, but did not even *have* an immediate custodian that the government has ever been able to identify, *see Suri*, 2025 WL 1806692, at *5. The habeas pleading statute expressly requires that a petitioner's custodian only be named "if known." 28 U.S.C. § 2242. And as Judge Bork explained, the "very limited and special circumstances" of the unknown-custodian exception allow a district court to "treat the Attorney General" or another supervisory official who is *not* the immediate custodian "as the [proper] custodian" for habeas purposes. *Demjanjuk*, 784 F.2d at 1116; *see* Brian R. Means, Federal Habeas Manual § 1:93 (2025) ("[W]here the immediate custodian is unknown, the writ may be served on the prisoner's ultimate custodian.").

This Court has adopted *Demjanjuk*'s specific application of the exception, holding that "[o]rdinarily, a habeas writ must be served on a prisoner's immediate custodian—'the individual with day-to-day control over' the prisoner," but when "the immediate custodian is unknown," "the writ is properly served on the prisoner's ultimate custodian," i.e., a supervisor who has ultimate control over the petitioner. *Moussaoui*, 382 F.3d at 465 (citations omitted). And if a supervisory, ultimate custodian is properly named, then habeas jurisdiction in the district is proper if, as

in those cases, the ultimate custodian "is indisputably within the process power of the district court." *Id.* at 464-65.[6]

Thus, in this case, Dr. Suri properly named an ultimate custodian (DHS Secretary Noem) rather than an unknown and unknowable immediate custodian and filed the petition in his last-known district of confinement, and jurisdiction is proper there because those ultimate custodians are subject to process in the E.D. Va. JA220-221 n.7. As a result, the district court has habeas jurisdiction and the power to issue the writ. *See, e.g.*, *Ex parte Catanzaro*, 138 F.2d 100, 101 (3d Cir. 1943) ("It is a general rule of law that where one has become subject to the jurisdiction of a court, the jurisdiction continues in all proceedings arising out of the litigation such as appeals and writs of error," including habeas.).

Resisting all of this, the government denies the very existence of the unknown-custodian exception and argues that, in any event, it would not apply to Dr. Suri's case. But these arguments rest on both a misguided reading of the law and a view of the facts that is contrary to the clear findings of the district court.

First, the government argues that *Padilla* merely "acknowledged in two footnotes the *possibility* of [the unknown custodian] exception . . . [b]ut that was far

---

[6] While *Demjanjuk* and *Moussaoui* suggest jurisdiction is proper in *any* district in which the district court has personal jurisdiction over an ultimate custodian because subject to process, at the very least jurisdiction is proper in the last-known district of confinement, a limitation that would address any arguable forum-shopping concern.

from an actual holding." Br. 18. It is true that *Padilla* did not apply the unknown-custodian exception, but that is because that was not a case in which the petitioner's immediate custodian was unknown. *See* 542 U.S. at 449 n.17 (petitioner knew and was able to name his custodian in his original petition). But declining to apply the exception because its factual predicate was not established in the particular case before it does not mean that the Court did not endorse its availability in the right case—and the Court's words establish that all nine Justices did. *Id.* at 450 n.18; *id.* at 458 (Stevens, J., dissenting).

Other courts, including this one, have made clear that this is the correct reading of *Padilla*. *See Khalil*, 777 F. Supp. 3d at 401-02 (reviewing case law and explaining that the unknown-custodian exception is "the law of the land" and that "the *Padilla* Court took the exception as a given"); *see also Moussaoui*, 382 F.3d at 464-65 (applying the exception). Though it is true that most judicial invocations of the unknown-custodian exception are relatively recent, "that is because the government has rarely resorted to such tactics in the past." *Suri*, 2025 WL 1806692, at *5. And critically, the government's argument that the immediate custodian must always be named ignores entirely the plain text of the habeas pleading statute. 28 U.S.C. § 2242; *see Khalil*, 777 F. Supp. 3d at 404.

Second, the government manufactures a limitation upon the exception that is nowhere supported by the habeas statute or case law: that only a "protracted"

incommunicado detention could possibly "justify invocation of the unknown custodian exception." Br. 33. But a rule that allowed the government to engage in this kind of secret detention—withholding information about the identity of the custodian or the district of confinement, even for a brief period, during which counsel would either have to guess correctly where to file a petition or forego filing altogether—would defeat the very purpose of the exception, which is to ensure that "a detainee . . . always ha[s] an available forum for a habeas petition." *Suri*, 2025 WL 1806692, at *5; *see Khalil*, 777 F. Supp. 3d at 410 ("Our tradition is that there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it."). Critically in this case, permitting such a gap in habeas might have allowed the government to deport him *outside of the United States altogether* before any district court would have had habeas jurisdiction. *See infra* I.B, III. There is no support whatsoever for that kind of rule. *See Suri*, 2025 WL 1806692, at *6.

## B. Alternatively, the district court properly applied the principles of Justice Kennedy's concurrence in *Padilla*.

In addition to the unknown-custodian exception, both the district court and the motions panel of this Court correctly found, as an "alternative basis," that the reasoning of Justice Kennedy's concurring opinion in *Padilla* justified a finding of habeas jurisdiction in the last-known district of confinement, the E.D. Va. *Suri*, 2025

WL 1806692, at *6 n.6; JA225-234; *see Padilla*, 542 U.S. at 451-55 (Kennedy, J., concurring, joined by Justice O'Connor, together forming part of the five-justice majority). In his concurrence, Justice Kennedy explained that an exception should apply where "the Government's purpose in removing a prisoner [from a district] were to make it difficult for his lawyer to know where the habeas petition should be filed, or where the Government was not forthcoming with respect to the identity of the custodian and the place of detention." *Id.* at 454. "In cases of that sort," Justice Kennedy explained, "habeas jurisdiction would be in the district . . . from which he had been removed." *Id.* And the evidentiary record in this case plainly satisfies that exception, as the government "doesn't contest the district court's finding that it removed Suri from the [district] in part to 'make it difficult for Petitioner's counsel to file the petition.'" *Suri*, 2025 WL 1806692, at *6 n.6 (quoting JA228). Under Justice Kennedy's reasoning, jurisdiction is warranted in the E.D. Va., the district from which the government removed Dr. Suri.

The district court did not arrive at this conclusion lightly—and what the government decries as "punish[ment]" for its evasive conduct, Br. 28, was factfinding.[7] At a hearing, the court "posed several questions to . . . clarify the

---

[7] It is true that the *Padilla* majority criticized the dissent's position that the petitioner could have filed a petition against a supervisory official in an entirely different district than where he was known to be located as potentially and improperly

Government's purpose is transporting Petitioner to Texas." JA227; *see* JA145-199 (transcript). The court found the government's answers "either non-responsive or riddled with inconsistencies" and constituted "post hoc rationalizations," JA227—and they laid bare the very kinds of executive manipulation that Justices Kennedy and O'Connor were concerned about. The district court also found that the government's claims about moving Petitioner due to bedspace concerns only added up to pretext—most notably because the facility where Dr. Suri was held in Virginia was not full, whereas the facilities to which he was transferred in Louisiana and Texas were very significantly overcrowded; and also because its inconsistent timeline regarding the issuance of his Notice to Appear (naming a Texas detention facility as his current residence) contradicted their initial justifications for transfer. JA229-30; *see Suri*, 2025 WL 1806692, at *5 n.5. The court also found that "rapid transfers" of immigration detainees were "atypical" and "exceptional" for immigration detainees in the E.D. Va. JA230-231.[8]

---

"premis[ing jurisdiction] on 'punishing' alleged Government misconduct." 542 U.S. at 448. But those facts are a far cry from those found by the district court here, and the majority's point cannot be taken to mean that government misconduct can never be relevant to considerations of equity and fairness in determining habeas jurisdiction or deciding whether or not to transfer a petition "in the interest of justice" under one of the transfer statutes. *See infra* I.C.

[8] The government's suggestion that it is punitive to force it to litigate in a forum that the traditional venue factors indisputably favor, *see* JA233-234—coupled with its preference to litigate in a venue located far from the parties and all counsel and that

Taking all these facts into account, the district court found that "Respondents' goal in moving Petitioner was to make it difficult for Petitioner's counsel to file the petition and to transfer him to the Government's chosen forum," and that "Respondents' design was to forum shop and spirit Petitioner away from this District before counsel could file a petition." JA228. Moreover, the government also has not "contest[ed] the district court's finding that it apparently intended to deport Suri on March 21," meaning that "Suri may well have been deported without the reasonable notice and opportunity for judicial review that 'all nine Justices agree[]' is due." *Suri*, 2025 WL 1806692, at *5 (quoting *A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025)). These factual findings by the district court are exactly the sort of circumstances foreseen by Justice Kennedy, involving substantial governmental efforts to avoid application of the Great Writ, that would justify an exception to the default habeas rules.

### C. The district court did not abuse its discretion by denying the government's request to transfer the petition.

The government argues that even if the district court does have habeas jurisdiction, it "should have transferred" the case to either Texas or Louisiana. Br. 30. Because the government never sought transfer to Louisiana in the proceedings

---

bears no connection with the case beyond Petitioner's temporary transit—only underscores the district court's conclusions regarding the government's motive for transferring Dr. Suri.

below, it has forfeited that argument. *See* ECF 26 (failing to request transfer to Louisiana); *see also Berg v. Kingdom of the Neth.*, 24 F.4th 987, 998 (4th Cir. 2022) (finding transfer argument forfeited for the same reason). In any event, while the district court had the power to transfer the petition to a new venue in the interests of justice, *see* 28 U.S.C. § 1406(a), it did not abuse its discretion in deciding not to do so here, *see Nichols*, 991 F.2d at 1200.

As the district court explained, the government's proposal leans heavily on dictum in Judge Bork's in-chambers opinion in *Demjanjuk* that a district court that properly has habeas jurisdiction via the unknown-custodian rule would hypothetically be "divested of jurisdiction" once the government comes clean about a detainee's whereabouts. 784 F.2d at 1116. That brief dictum has "no analysis" or explanation at all, and Judge Bork himself did not apply it. JA224 (discussing 784 F.2d at 1115). And *Padilla* does not even remotely suggest that its endorsement of the unknown-custodian exception encompasses the dictum. Even more fundamentally, even assuming Judge Bork's proposal would *ordinarily* apply in the absence of government secrecy or forum shopping, it does not in any way implicate the facts found here.

Creating and applying such a constriction on an equitable exception to the default habeas rules would, as the district court explained, improperly allow the government to use its control over a detainee's location strategically, giving the

government the option to litigate for as long as it wished in the actual district of confinement or the district in which the petition was filed against the ultimate custodian. JA224. (Indeed, nothing in Judge Bork's dictum even suggests that the government would *ever* be compelled to reveal a detainee's location.) Preventing the kind of forum-shopping gamesmanship that the government's position opens up here was the very reason the *Padilla* Court gave for its default rules, 542 U.S. at 447, and those forum-shopping concerns apply equally to the government as to habeas petitioners, *see Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434, 447 (3d Cir. 2021); *Eisel v. Sec'y of the Army*, 477 F.2d 1251, 1257-58 (D.C. Cir. 1973) (warning against "the Kafkaesque specter of supplicants wandering endlessly from one jurisdiction to another in search of a proper forum, only to find that it lies elsewhere" based on the government arguing that "whatever court is hearing the case" is "the wrong jurisdiction"); *see also* JA233; *Vasquez v. Reno*, 233 F.3d 688, 696 (1st Cir. 2000); *Griffin v. Ebbert*, 751 F.3d 288, 290-91 (5th Cir. 2014).[9]

---

[9] Moreover, the government seeks to permit forum-shopping under the unknown-custodian exception in a manner that would be in serious tension with *Ex parte Endo*, 323 U.S. 283 (1944). In *Padilla*, in applying the default rules for habeas jurisdiction, the Supreme Court characterized *Endo* as "stand[ing] for the important but limited proposition that when the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." 542 U.S. at 441. In applying the unknown-custodian exception, a habeas petition would be "properly file[d]" in the

In some recent cases, after *rejecting* application of the unknown-custodian or other exception (and finding that they *lacked* habeas jurisdiction), some district courts have relied on various federal transfer statutes to transfer habeas petitions that were arguably properly filed in last-known jurisdictions to courts where the petition "could have been brought at the time it was filed." 28 U.S.C. § 1631 (applying to "want[s] of jurisdiction"); 28 U.S.C. § 1406(a) (similar as to venue transfers); *see, e.g.*, *Öztürk v. Trump*, 777 F. Supp. 3d 26 (D. Mass. 2025) (transferring petition to Vermont); *Khalil v. Joyce*, 771 F. Supp. 3d 268 (S.D.N.Y. 2025) (transferring petition to New Jersey). But in those cases, the transferor courts sent petitions to neighboring states in the interests of justice where the petitioners had been detained overnight prior to further transfers far away to Louisiana (the government's apparent preferred forum), and the courts found that transfer (rather than dismissal) would not

last-known district of confinement upon naming a detainee's ultimate custodian—and government behavior that had the effect of stripping the original district court of its proper jurisdiction would run headlong into the motivation for *Endo*'s rule. It may be true, Br. 15-16, that the *Padilla* Court rejected a broader reading of *Endo* that would have permitted, as a default rule, *any* "habeas petitioner[] to name as respondent an individual with control over the petitioner," *Padilla*, 542 U.S. at 440-41 (cleaned up), but *Padilla* had no occasion to address a situation where the unknown-custodian exception *did* apply, *id*. at 449 n.17. And there is no reason to doubt that it would have applied the same principle to similar attempts at government gamesmanship when it comes to habeas jurisdiction. *See Endo*, 323 U.S. at 306-07 (the "objective" of habeas relief "may *be in no way impaired* or defeated by the removal of the prisoner . . . from the district since the suit was begun" (emphasis added)).

reward a governmental attempt at forum shopping and thereby frustrate the purpose of the default rules. *See Öztürk*, 777 F. Supp. 3d at 41, 43-44; *Khalil*, 771 F. Supp. 3d at 287 (explaining that transfer from New York to New Jersey was appropriate to avoid forcing the petitioner to "litigat[e] far from his lawyers, from his eight-months-pregnant wife, and from the location where most (if not all) of the events relevant to his petition took place"), 286 n.6. Moreover, after those courts rejected habeas jurisdiction and transferred the petitions to nearby courts, the petitioners *consented* to litigate in those new districts. *See* 28 U.S.C. § 1404(a)-(b) (permitting parties to consent to new venues).

Finally, it bears noting that the government conspicuously fails to commit to *where* transfer should have taken place. Br. 33. Its position on this, as with its position on where Dr. Suri should have filed his petition in the first place, has been both opaque and inconsistent. The government initially suggested Dr. Suri's lawyer should have filed the petition in the Northern District of Texas, JA217; later, it suggested the Western District of Louisiana, *Suri*, 2025 WL 1806692, at *4 n.4. Now, despite the government's insistence that there is only one possible district in which Dr. Suri could have filed originally (the Northern District of Texas), it confusingly suggests that "[u]nder a straightforward application" of *Padilla*'s default rules, the petition could be transferred to either district. Br. 17.

Given the propriety of its own jurisdiction, and the at-best highly questionable bases for jurisdiction elsewhere, the district court did not abuse its discretion in declining to transfer this case once the government revealed Dr. Suri's location. The district court found that traditional venue factors weighed heavily in favor of declining transfer. JA233-234. And the interests of justice did not warrant transfer either. Transfer to Texas would have been impossible under the transfer statutes, because "[t]here is absolutely no reason to think, and the government points to no case indicating, that a habeas petition challenging present confinement could be filed in a district to which a petitioner had not yet been." *Suri*, 2025 WL 1806692, at *4 n.4; *see* 28 U.S.C. § 1406(a) (allowing transfer to a district where the case "could have been brought"); *id.* § 1631 (same). And even though the government never asked for transfer to Louisiana (and has forfeited the argument), transfer there would have condoned Respondents' clear attempts at forum shopping, which the district court found to exist based on the factual record. JA228.

## II.    The INA does not strip the district court of subject-matter jurisdiction to review Dr. Suri's unconstitutional detention claims and order his release.

The government argues that 8 U.S.C. § 1252(a)(5), (b)(9), and (g) stripped the district court of jurisdiction to review Dr. Suri's detention claims and order his release pending habeas review. Br. 34-54. A motions panel of this Court and a sister circuit have already considered this argument and rejected it. *Suri*, 2025 WL

1806692, at *7-9; *see Mahdawi*, 136 F.4th 443; *Öztürk*, 136 F.4th 382. This Court should reaffirm the motions panel's findings and reject the government's arguments.

The Supreme Court has required a "clear statement of congressional intent to repeal habeas jurisdiction" and "clear indication of congressional intent" when a proposed interpretation would "push the outer limits of Congress' power." *DHS v. Thuraissigiam*, 591 U.S. 103, 137 (2020) (cleaned up). Accordingly, this Court must interpret "'statutes [to] allow judicial review . . . absent clear statement.'" *Suri*, 2025 WL 1806692, at *7 (quoting *Kucana v. Holder*, 558 U.S. 233, 237 (2010)). The presumption can "only be overcome by clear and convincing evidence of congressional intent to preclude judicial review." *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020) (cleaned up). Here, there is "no indication at all that Congress intended to strip district courts of jurisdiction over habeas challenges to unconstitutional immigration detention." *Suri*, 2025 WL 1806692, at *7.

In fact, the Supreme Court has consistently affirmed that the jurisdiction-stripping provisions of the INA leave intact district courts' habeas jurisdiction over claims of illegal civil immigration detention. *See, e.g.*, *Jennings v. Rodriguez*, 583 U.S. 281, 292-93 (2018) (plurality opinion); *Johnson v. Guzman Chavez*, 594 U.S. 523, 533 n.4 (2021). This Court and others have reviewed such claims in habeas. *See, e.g.*, *Miranda v. Garland*, 34 F.4th 338, 352-53 (4th Cir. 2022); *Black v. Decker*, 103 F.4th 133, 138-39 (2d Cir. 2024); *Hernandez v. Gonzales*, 424 F.3d 42 (1st Cir.

2005); *German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 210 (3d Cir. 2020); *Nadarajah v. Gonzales*, 443 F.3d 1069, 1079 (9th Cir. 2006). None of the INA provisions that the government cites preclude the district court's review of Dr. Suri's unconstitutional detention claims.[10]

## A.    8 U.S.C. § 1252(g) does not bar review.

The government argues that section 1252(g) "precludes habeas challenges to initial detention *in connection with* the commencement of proceedings . . . particularly where the basis of the alien's habeas challenge mirrors his defense to the charges of removability." Br. 39-40. "This argument stretches § 1252(g) beyond its text in direct contravention of Supreme Court precedent," *Suri*, 2025 WL 1806692, at *7, and legislative history, and is unsupported by the authorities the government cites.

Section 1252(g) is "narrow[ly]" tethered to exercises of discretion by the Attorney General and "applies only to three discrete actions": "to 'commence

---

[10] The government appeals the orders releasing Dr. Suri on bail and preserving jurisdiction under the AWA. Br. 8 (citing JA048), 10 (citing JA280). Neither order challenges his "removal proceedings[, which] . . . are separate." JA269; *see infra* III (discussing why AWA order not barred by the INA). Thus, Dr. Suri focuses his jurisdictional arguments on the detention claims, and "so long as part of his challenge to his detention falls outside of the immigration code's jurisdiction-stripping provisions, his petition survives, as does the district court's authority to order his release." *Suri*, 2025 WL 1806692, at *7 (cleaned up) (citing *Mahdawi*, 136 F.4th at 450 n.3).

proceedings, adjudicate cases, or execute removal orders.'" *AADC*, 525 U.S. at 482 (citing 8 U.S.C. § 1252(g)); *see Casa De Maryland*, 924 F.3d at 696; JA263. While there are other "decisions or actions that may be part of the deportation process," they do not fall within 1252(g)'s limited scope because they do not interfere with the Attorney General's prosecutorial discretion—the "particular evil" that 1252(g) was directed against. *AADC*, 525 U.S. at 482, 485 n.9; *accord Öztürk*, 136 F.4th at 397. Since *AADC*, the Supreme Court has continued to emphasize 1252(g)'s "narrow" ambit. *DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020); *Jennings*, 583 U.S. at 294 (Section 1252(g) "refer[s] to just those three specific actions themselves" (citing *AADC*, 525 U.S. at 482-83)).

The legislative history of section 1252(g), *contra* Br. 34 n.5, further supports Dr. Suri's position. While the REAL ID Act of 2005 added language to 1252(g) that "explicitly applied the statute's jurisdictional limitations to habeas cases," *Kong v. United States*, 62 F.4th 608, 615 (1st Cir. 2023), Congress expressly stated that the Act "would not preclude habeas review over challenges to detention that are independent of challenges to removal orders." H.R. Rep. No. 109-72, at 175 (2005) (Conf. Rep.). In line with this legislative history, "courts routinely exercise jurisdiction" over challenges to the legality of detention, *Suri*, 2025 WL 1806692, at *7, because such claims "may be resolved without affecting pending removal proceedings." *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999); *see Öztürk*, 136

F.4th at 398; *Madu v. U.S. Att'y Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006); *Kellici v. Gonzales*, 472 F.3d 416, 420 (6th Cir. 2006); *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698, 700 n.4 (9th Cir. 2021) (1252(g) did not bar First Amendment detention challenge).

The government contends that section 1252(g) nonetheless applies here because Dr. Suri's "initial detention was an action taken to commence removal proceedings." Br. 39. But this "dramatically overstates the reach of" the statute. *Öztürk*, 136 F.4th at 396. "It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *AADC*, 525 U.S. at 482. The phrase "arising from" in 1252(g) is not "infinitely elastic" and "does not reach claims that are independent of, or wholly collateral to, the removal process." *Öztürk*, 136 F.4th at 397 (cleaned up) (collecting cases). Such an expansive interpretation would contradict the Supreme Court's repeated admonition that "arising from" cannot be interpreted "to sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General" and must instead be read "to refer to just those specific actions themselves." *Jennings*, 583 U.S. at 294 (citing *AADC*, 525 U.S. at 482-83) (construing same phrase in 1252(b)(9)). Where Congress sought to bar claims more broadly, it knew how to do so. *See* 8 U.S.C. § 1252(a)(2)(A)(i) (barring review over issues "arising from *or relating to* the implementation or operation" of an expedited

removal order (emphasis added)); *see Humphries v. Various Fed. USINS Emps.*, 164 F.3d 936, 943 (5th Cir. 1999) ("'arising from' does seem to describe a nexus somewhat more tight than the also frequently used phrase 'related to'"). Legislative history confirms this interpretation, which "weigh[s] even more heavily in the context of § 1252(g)," *Kong*, 62 F.4th at 614-15, because what it "says is much narrower," *AADC*, 525 U.S. at 482.

Dr. Suri's detention claim is "collateral to . . . the removal process," *Öztürk*, 136 F.4th at 397 (cleaned up), because it "did not interfere with the decision to commence removal proceedings against him." *Suri*, 2025 WL 1806692, at *8. Detention was not even a necessary predicate to or consequence of the government's decision to commence removal proceedings against Dr. Suri. *Cf.* Br. 43. Indeed, the government routinely initiates removal proceedings against individuals, based on a prima facie determination that they are removable, without detaining them. *See, e.g.*, Br. for Pet'rs, *United States v. Texas*, 2022 WL 4278395, at *8-9 (Sep. 12, 2022) (noting that "perennial constraints on detention capacity" prevent executive from detaining everyone subject to removal). And it routinely detains people prior to having decided to place them in removal proceedings.[11] Moreover, the decision to

---

[11] *See* Mem. from Asa Hutchinson, Undersecretary, Border & Transp. Sec., to Michael J. Garcia, Assistant Sec'y, U.S. ICE, and Robert Bonner, Comm'r, U.S. CBP (Mar. 30, 2004), https://perma.cc/F3RF-VK6E.

detain pending removal is independent of the decision to initiate removal proceedings because it must be justified on the separate basis that the person poses a flight risk or danger. *See Zadvydas v. Davis*, 533 U.S. 678, 690 (2001); *Miranda*, 34 F.4th at 346-47. Thus, Dr. Suri could have challenged his detention *without* challenging this removal, and vice versa.[12]

The government waves this all away, positing that section 1252(g) applies because adjudication of Dr. Suri's detention claims "may be determinative of [his] removability," Br. 45-46. This is incorrect, and unsupported by the authorities the government cites. *See, e.g.*, *Rauda v. Jennings*, 55 F.4th 773, 776 (9th Cir. 2022) (challenge to execution of removal order, not detention). To start, even if Dr. Suri's challenge to unlawful detention were predicated entirely "on the same basis" as a challenge to removability, Br. 42, section 1252(g) would not bar review of detention because "overlap, even substantial substantive overlap, does not make one claim

---

[12] *Zadvydas v. Davis*, 533 U.S. 678 (2001), *Clark v. Martinez*, 543 U.S. 371 (2005), and *Castaneda v. Perry*, 95 F.4th 750 (4th Cir. 2024) (cited at Br. 40-42) reinforce Dr. Suri's point: no jurisdictional bar precludes habeas review of detention challenges because they are "collateral to the removal process." *Suri*, 2025 WL 1806692, at *7 (cleaned up). The government's attempt to draw an artificial distinction between a challenge to "initial detention," Br. 41, that is unlawful from day one, on one hand, and challenges where detention becomes unlawful after a certain time period, on the other, is unsupported by the analysis of those cases and the text of 1252(g), which "does not speak to detention *at all*." *Öztürk v. Hyde*, 2025 WL 2679904, at *17 (2d Cir. Sept. 19, 2025) (Nathan, J., concurring with five judges in denial of en banc review).

arise out of the other, or necessitate that one claim controls the outcome of the other."
*Öztürk*, 136 F.4th at 400 (addressing same argument as to review under 1252(b)(9)).
Such reading would lead to "staggering results" because, for example, an individual
bringing a First Amendment challenge to their removal would be barred from raising
the same claim as to their conditions of confinement, or prolonged detention "merely
because there is substantive overlap between the claims." *Id*. (citing *Jennings*, 583
U.S. at 293). In any event, the government does not "point[] to a single case holding
that § 1252(g) strips jurisdiction over" a First Amendment retaliation challenge to
unlawful detention. *Suri*, 2025 WL 1806692, at *8. As it acknowledges, the cases
the government relies on (cited at Br. 36-38) involve challenges to the "discretionary
decision to execute a removal order, and to the discretionary decision to institute
removal proceedings." Br. 37, *id*. at n.6.[13]

---

[13] *Trabelsi v. Crawford* involved claims that the "commencement of removal
proceedings is itself a violation of Petitioner's rights," 2024 WL 5497113, at *7
(E.D. Va. Dec. 2, 2024), and *Limpin v. United States* was an unpublished, pro-se,
out-of-circuit case that simply asserted—without analysis—that the "decision to
arrest and detain an alien at the commencement of removal proceedings" is not
reviewable. 828 F. App'x 429, 429 (9th Cir. 2020). And the cases concluding
detention challenges are barred under section 1252(g) involved facts and reasoning
inapplicable here. *See, e.g, Tazu v. Att'y Gen. U.S.*, 975 F.3d 292, 298 (3d Cir. 2020)
(challenge to "door-to-plane detention" required to execute final removal order);
*Sissoko v. Rocha*, 509 F.3d 947, 948-49 (9th Cir. 2007) (petitioner subject to
mandatory detention due to placement in expedited removal proceedings). Finally,
*AADC* "did not sound in unlawful *detention* at all, and it is therefore of no help."
*Suri*, 2025 WL 1806692, at *8 (citing *Öztürk*, 136 F.4th at 398).

Moreover, Dr. Suri raises a due process challenge to his detention that is independent of his First Amendment retaliation claim. JA123-127. Adjudication of that claim would not be determinative of removability because the legal questions and factual findings the Court would make—whether his detention was "nonpunitive in purpose and effect," *Zadvydas*, 533 U.S. at 690, where the government did not establish flight risk or danger—are totally distinct from those implicated by any challenge to his removal.

Under the government's interpretation of section 1252(g), the district court could review Dr. Suri's detention claim as long as he did not also challenge removal predicated on the determination by Secretary Rubio, but because his complaint alleges challenges to both, his detention claim is necessarily barred. But that makes no sense, and the text cannot bear that reading. Accepting Respondents' "sweeping interpretation of § 1252(g)," *Suri*, 2025 WL 1806692, at *8, would allow the government to "accomplish something extraordinarily general: eviscerate habeas corpus for noncitizens whenever the government detains them and also seeks to remove them." *Öztürk*, 2025 WL 2679904, at *17 (Nathan, J., concurring in denial of en banc); *see Kong*, 62 F. 4th at 616. This is not the result Congress intended, and the Supreme Court has already rejected this position as "implausible." *Regents*, 591 U.S. at 19 (quoting *AADC*, 525 U.S. at 482); *accord Suri*, 2025 WL 1806692, at *7.

Moreover, section 1252(g) does not reach challenges (like this one) to the "very authority" of the executive's actions. *Garcia v. Att'y Gen. of U.S.*, 553 F.3d 724, 729 (3d Cir. 2009); *see Arce v. United States*, 899 F.3d 796, 800 (9th Cir. 2018) (1252(g) inapplicable where DHS "lacked the authority to execute [] removal order" due to prior stay of removal). Here, Dr. Suri alleges that the government detained him to retaliate against and punish him for his speech and his familial associations, JA121-124, and the district court found based on "uncontroverted evidence" that he has established a "high probability of prevailing on [these] substantial constitutional claims." JA272. Far from challenging a discretionary decision to detain him pending removal, he "challenges his *detention* on the grounds that it violates his rights under the Constitution." *Mahdawi*, 136 F.4th at 450; *cf. Camarena v. Dir., ICE*, 988 F.3d 1268, 1270 (11th Cir. 2021) (collateral challenge to "valid removal orders" alleging right to adjudication of waivers before removal is executed); *Tazu*, 975 F.3d at 295-98 (similar, where petitioner did not "point[] to any flaw in the Attorney General's statutory authority to remove him").

The text further supports this reading. The first part of section 1252(g) ("notwithstanding any other provision of law (statutory or nonstatutory)") refers to jurisdictional bases or causes of action, consistent with the examples provided, which include habeas (28 U.S.C. § 2241), the AWA (28 U.S.C. § 1651), and mandamus (28 U.S.C. § 1361). "Nonstatutory" in this context refers to, for example,

the Suspension Clause. And 1252(g)'s operative language going to the merits of claims being reviewed ("any cause or claim . . . arising from the decision or action") must be read, consistent with *AADC*, to refer to claims challenging exercises of prosecutorial discretion. Nothing suggests that this language was intended to strip judicial review over constitutional claims. *See Webster v. Doe*, 486 U.S. 592, 603 (1988) (congressional intent "to preclude judicial review of constitutional claims . . . must be clear").

Finally, the government argues that, because the district court's bail order was in part predicated on the government's failure to produce any evidence justifying Dr. Suri's detention, it is further proof that detention is "inextricably intertwined" with removability. Br. 44-45. Not only is this incorrect, but it is a remarkable assertion that seeks to relieve the government of any responsibility to justify executive detention. The Court should not "sanction the abrogation of habeas corpus . . . in the manner attempted here." *Suri*, 2025 WL 1806692, at *8 (citing *Abrego Garcia v. Noem*, 2025 WL 1135112, at *2 (4th Cir. Apr. 17, 2025)).

As the district court concluded, beyond "handwaving at deference and discretion," JA270, the government "declined to dispute the merits of Petitioner's claims that he is being retaliated against for his speech or his association," JA269, and "declined" "multiple opportunities to submit any type of filing to controvert [Petitioner's] claims." JA266; *see Suri*, 2025 WL 1806692, at *8. "[P]ermitting the

government to unconstitutionally detain noncitizens on trumped-up charges with little or no evidence and leaving them to await the outcome of removal proceedings," *id.*, would upend the very purpose of the Great Writ, *Thuraissigiam*, 591 U.S. at 140. The Court should not countenance such an outcome here.

## B. 8 U.S.C. § 1252(b)(9) does not bar review.

The government additionally contends that 8 U.S.C. § 1252(a)(5) and (b)(9) bar review of Dr. Suri's unlawful detention claim even though he has not been issued a final order of removal, and because this claim must be channeled through the petition-for-review process. Br. 47-55. That is wrong.

Sections 1252(a)(5) and (b)(9) "apply only to challenges to an 'order of removal.' There is no such order here, so these provisions don't apply." *Suri*, 2025 WL 1806692, at *9; *see Casa De Maryland*, 924 F.3d at 697; *I.N.S. v. St. Cyr*, 533 U.S. 289, 311, 313 (2001). Section 1252(b)(9) requires that claims "arising from any action taken or proceeding brought to remove an alien . . ." be raised "only in judicial review of a final order," 8 U.S.C. § 1252(b)(9), but the Court "cannot analyze (b)(9) without reference to the limiting language in (b)." *Suri*, 2025 WL 1806692, at *8 n.7. Section 1252(b) "applies *only* with respect to review of an *order of removal* under 8 U.S.C. § 1252(a)(1)," which in turn governs only "final order[s] of removal." *Casa De Maryland*, 924 F.3d at 696-97 (cleaned up). The government's interpretation completely ignores the very first words of section 1252(b). It also

ignores other subsections of 1252(b) that reinforce its application only to final orders of removal. *See, e.g.* 8 U.S.C. §§ 1252(b)(1) (deadline for filing PFR "after" entry of "final order of removal"); (b)(2) (PFR filed in judicial circuit where immigration judge "completed the proceedings"); *see generally Khalil v. Joyce*, 780 F. Supp. 3d 476, 500-01 (D.N.J. 2025). Consistent with the plain text, this and other circuits have limited (b)(9) to final orders. *See, e.g., Casa De Maryland*, 924 F.3d at 697; *Öztürk*, 136 F.4th at 399; *Chehazeh v. Att'y Gen. of U.S.*, 666 F.3d 118, 131–33 (3d Cir. 2012); *Singh v. Gonzales*, 499 F.3d 969, 978 (9th Cir. 2007); *Madu*, 470 F.3d at 1367; *Meza v. Renaud*, 9 F.4th 930, 933 (D.C. Cir. 2021).

The government overreads *AADC*, *St. Cyr* and *Jennings* as supporting its position—which, in any event, is foreclosed by this Court's decision in *Casa de Maryland*. 924 F.3d at 697.

Citing *St. Cyr*, the government suggests that the prefatory language in (b) "was not to impose a temporal limitation on the effect of subsection (b)(9), but to clarify that the requirements in § 1252(b) do not apply to removal orders not covered in § 1252(a)(1)." Br. 53. Surely section 1252(b) does that, too, but the purpose for the provision need not be exclusive, and *St. Cyr* makes clear that the habeas review being preserved was review "over *removal orders*" that fell outside of section 1252(a)(1). 533 U.S. at 313 (emphasis added).

Citing *AADC*, the government hesitantly offers up the argument that the Court there "suggest[ed] that § 1252(b)(9) applies pre-order-of-removal." Br. 52. In *AADC*, the Court's only reason for addressing section 1252(b)(9) at all was to juxtapose it with section 1252(g) to underscore that (g) is a narrower provision that applies to then-pending cases whereas (b)(9) does not. 525 U.S. at 483. And while it is true that the *AADC* Court remarked that "even after all the transitional cases have passed through the system, § 1252(g) . . . serves the continuing function of making it clear that [(g)'s] specified decisions and actions . . . are covered by the 'zipper' clause of § 1252(b)(9)," all that language means is that those kinds of challenges must be brought in a PFR, *not* (as the government argues) that section 1252(b)(9) unavoidably applies pre-final-order. *Id.* (emphasis omitted).

Next, the government tries to count to five Justices in *Jennings* to cobble together a rule that (b)(9) applies before a final order of removal, but the plurality opinion for three Justices said nothing on that point, and simply held that section 1252(b)(9) did not channel unlawful detention claims because they did not "arise from" removal proceedings. *Jennings*, 583 U.S. at 292-95. Two concurring Justices adopted the government's view, *see id.* at 314 (Thomas, J., concurring), while three Justices squarely agreed with Dr. Suri's position, *see id.* at 355 (Breyer, J., dissenting). But the plurality did not choose sides—because it did not need to, given its resolution on other statutory text in section 1252(b)(9), *id.* at 292-95 (plurality

op.) (interpreting "arising from"), and because "it [wa]s not necessary . . . to attempt to provide a comprehensive interpretation" of section 1252(b)(9) since the parties had not briefed the "scope" of the provision. *See id.* at 294.

Moreover, limiting section 1252(b)(9) to review of final orders of removal does not read the phrase "or such questions of law and fact" out of the statute. Br. 54. At minimum, it could refer to ancillary litigation that arises after a final order has been issued, such as motions to reopen or humanitarian claims under withholding of removal or the Convention Against Torture. *See e.g.*, *Monsalvo Velasquez v. Bondi*, 145 S. Ct. 1232, 1241 (2024) (appellate court had jurisdiction to review in PFR question arising from litigation ancillary to final removal order).

Even if section 1252(b)(9) applied to pre-final-order claims, habeas review of Petitioner's retaliatory detention and removal claims is required to provide "meaningful" relief. *Jennings*, 583 U.S. at 293. The phrase "arise from" must be construed narrowly to avoid "extreme" results that would render claims of "excessive detention" "effectively unreviewable." *Id.*; *see Guzman Chavez*, 594 U.S. at 533 n.4 (six current Justices finding jurisdiction under 1252(b)(9) to review detention challenge); *Nielsen v. Preap*, 586 U.S. 392, 402 (2019) (finding 1252(b)(9) did not preclude review of detention challenge); *Regents*, 591 U.S. at 19. Indeed, in enacting the REAL ID Act of 2005, Congress "stated unequivocally" that 1252(b)(9) "should not be read to preclude" "challenges to detention," because detention claims

are "independent of challenges to removal orders." *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (citing H.R. Rep. No. 109-72, at 175). Against this backdrop, courts have consistently read section 1252(b)(9) narrowly to permit consideration of unlawful detention claims. *See, e.g.*, *Miranda*, 34 F.4th at 353 n.6 (1252(b)(9) does not bar review of challenge to detention under Fourth and Fifth Amendments); *Gonzalez v. ICE*, 975 F.3d 788, 810 (9th Cir. 2020) (1252(b)(9) does not bar "claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process"); *Kellici*, 472 F.3d at 420 (same where "habeas petitions challenged only the constitutionality of the arrest and detention"); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) (similar). Here, Dr. Suri "seeks release from detention," so this claim does not "arise from" removal proceedings. *Öztürk*, 136 F.4th at 399-400.

Consistent with *Jennings*' instruction that section 1252(b)(9) must allow for meaningful review, the Third Circuit derived a simple "now-or-never" principle: "When a detained alien seeks relief that a court of appeals cannot meaningfully provide on [PFR] of a final order of removal, § 1252(b)(9) does not bar consideration by a district court." *E.O.H.C. v. Sec'y U.S. Dep't of Homeland Sec.*, 950 F.3d 177, 180 (3d Cir. 2020); *see Aguilar*, 510 F.3d at 11 (explaining that reading section 1252(b)(9) to cover claims that "cannot be raised efficaciously" on a petition for review would effectively bar "any meaningful judicial review"); *Delgado*, 643 F.3d

at 55 ("whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking").

Here, Dr. Suri's "core argument is that his free speech and due process rights are being violated, *now*." *Mahdawi*, 136 F.4th at 452. By subjecting him to retaliatory detention, the government seeks to censor and deter his and others' constitutionally protected speech in support of Palestinian rights when it could still influence public debate. JA266-271; *see Elrod v. Burns*, 427 U.S. 347, 374 n.29 (1976). It "cannot be" that Dr. Suri must wait until a final order before seeking review of his claims. *E.O.H.C.*, 950 F.3d at 186. "For one, the final order of removal may never come." *Id*. Even if it does, "relief [would] come too late to redress" his detention, *id*., and First Amendment injuries, rendering his constitutional claims "effectively unreviewable" and accomplishing the unlawful object of his detention, *Jennings*, 583 U.S. at 293. The censorship of speech that would have influenced public debate at a particular point in time can never be remedied—a quintessential "now or never" claim.

Moreover, even if constitutional challenges to detention could be heard on a PFR of a removal order—and it is unclear whether they could, *see Öztürk*, 136 F.4th at 400-01—there are serious questions about whether that process would be an adequate substitute for habeas, given the immigration judge's lack of authority to

develop an adequate factual record, consider constitutional claims, and lack of expertise. *See Khalil*, 780 F. Supp. 3d at 516-32. That is not meaningful review.[14]

This Court's decision in *Miranda* supports review of Dr. Suri's unlawful detention claim, and the government's cases, Br. 48-50, do not require a contrary result. The petitioners in *Miranda* challenged the legality of their detention pursuant to constitutionally deficient bond procedures, and this Court noted that section (b)(9) does not bar such a challenge. 34 F.4th at 347, 353 n.6 (citing *Jennings*, 583 U.S. 281 at 294–95, 355). The government cannot explain why that same conclusion does not hold here. Moreover, the *Jennings* plurality rejected as "absurd" the government's argument that detention is part of the removal process for the purposes of section 1252(b)(9). *Jennings*, 583 U.S. at 293; *cf. id.* at 318 (arguing that "detention *is* an 'action taken . . . to remove' an alien) (Thomas, J., concurring).[15]

---

[14] Respondents incorrectly claim that Dr. Suri would have the opportunity to seek release on bond. Br. 5-6. Individuals charged under section 1227(a)(4)(C) are not eligible for bond and may only seek a determination of whether they are properly subject to that removal provision. *See* 8 C.F.R. § 1003.19(h)(2)(i)(C), (h)(2)(ii). That is the position Respondents have taken in other litigation involving the same charge. *See* Resp't's Opp. to Pet'r's Mot. for Release at 16 n.5, *Khalil v. Joyce*, No. 25-cv-1963 (D.N.J. Mar. 23, 2025), Dkt. No. 99.

[15] Since *Jennings*, the Supreme Court has continued to review challenges to detention, notably rejecting the views of the Justices who would have held detention claims jurisdictionally barred by 1252(b)(9). *See Nielsen*, 586 U.S. at 401-02; *id.* at 421-22 (Thomas, J., concurring in part); *Guzman Chavez*, 594 U.S. at 533 n.4; *id.* at 547-48 (Thomas, J., concurring in part); *Johnson v. Arteaga-Martinez*, 596 U.S. 573

The plurality did not suggest that (b)(9) bars challenges to initial detention, but merely emphasized that the opinion's discussion was limited to the prolonged detention claims before the Court, not purporting to opine on other types of claims. *Jennings*, 583 U.S. at 294-95 (plurality opinion); *Öztürk*, 136 F.4th at 399 (rejecting the same argument). And in any case, the reasoning of the plurality opinion would apply equally to detentions that were unlawful from day one.[16]

### C. Reading section 1252 to bar review would raise serious concerns under the Suspension Clause and First Amendment.

If sections 1252(b)(9) or (g) were construed to bar Dr. Suri's challenge to detention, the statutes would raise serious questions under the Suspension Clause, U.S. Const. art. I, § 9, cl. 2, and First Amendment. In order to avoid these fraught constitutional questions, this Court should hold that those provisions do not bar Dr. Suri's claim. *See Martinez*, 543 U.S. at 381 (applying canon of constitutional avoidance to permit judicial review of detention under the INA). Alternatively, were

---

(2022) (deciding merits of detention challenge without even reiterating that 1252(b)(9) does not apply); *see id.* at 585 (Thomas, J., concurring).

[16] The other cases the government cites are inapplicable, because they did not involve unlawful detention claims. Br. 48-49 (citing *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1029 (9th Cir. 2016) (right to counsel claims); *Johnson v. Whitehead*, 647 F.3d 120, 124 (4th Cir. 2011) (claim that petitioner is a U.S. citizen)). And *Trabelsi* misinterpreted *Tazu* and *Jennings* to conclude that section (b)(9) bars challenges to initial detention. 2024 WL 5497113, at *6. *Tazu* challenged "brief re-detention [that] *was* part of" the execution of a removal order, 975 F.3d at 299, and *Jennings* reached no such conclusion, *see supra*.

the Court to read section 1252 to apply, the Suspension Clause and First Amendment would independently require review.

Habeas is at "its core a remedy for unlawful executive detention." *Thuraissigiam*, 591 U.S. at 119. As such, an adequate alternative to habeas must—at the absolute minimum—provide the petitioner with "a meaningful opportunity to demonstrate that he is being held" unlawfully. *Boumediene*, 553 U.S. at 779. "And the habeas court must have the power to order the conditional release of an individual unlawfully detained." *Id*. A PFR that requires Dr. Suri to challenge his illegal detention after its retaliatory purpose (chilling of speech) has been effectuated, without an opportunity to remedy the illegal detention, is not an adequate alternative to habeas. *Cf. id.* at 792.

Reading section 1252 to bar review would also raise serious First Amendment concerns. As Justice Ginsburg's *AADC* concurrence explained, cases addressing federal injunctions that stop state or administrative proceedings provide a "helpful framework" for when "the Constitution requires immediate judicial intervention" to address chilling of speech. 525 U.S. at 492-93 (Ginsburg, J., concurring) (discussing, *inter alia*, *Dombrowski v. Pfister*, 380 U.S. 479 (1965)). Applied here, those cases "suggest[] that interlocutory intervention in [immigration] proceedings would be in order, notwithstanding a statutory bar, if the [agency] acts in bad faith, lawlessly, or in patent violation of constitutional rights." *Id.* at 494. Dr. Suri has readily made that

showing here, as the factual record is replete with unrebutted evidence that he was targeted for his speech and to silence public debate expressing similar viewpoints. JA266-271.

## III. The district court did not abuse its discretion by staying Dr. Suri's removal under the All Writs Act pending adjudication of his petition.

On March 20, 2025, two days after Dr. Suri filed his habeas petition, the district court entered an order staying his removal pending adjudication of his petition or until further order of the court. ECF 7. The order was issued pursuant to the court's "authority to preserve its jurisdiction under the All Writs Act." *Id*. (citing 28 U.S.C. § 1651(a) and *F.T.C. v. Dean Foods Co.*, 384 U.S. 597, 603 (1966)). The Act encompasses a federal court's power to "maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels," *Dean Foods Co.*, 384 U.S. at 604, and courts have found that the Act should be broadly construed to "achieve all rational ends of law," *California v. M&P Invs.*, 46 F. App'x 876, 878 (9th Cir. 2002) (quoting *Adams v. United States*, 317 U.S. 269, 273 (1942)).

Such orders are routinely issued in similar cases. District courts within and outside this circuit routinely grant stays of removal *pendente lite* to habeas petitioners and other litigants when the government's efforts to deport them threaten to undermine the court's ability to hear and decide the case and effectuate the relief

sought. *See, e.g., Ghamelian v. Baker*, 2025 WL 2074155, at *1 (D. Md. July 23, 2025); *Arostegui-Maldonado v. Baltazar*, 2025 WL 2280357, at *16 (D. Colo. Aug. 8, 2025); *Ragbir v. United States*, 2018 WL 1446407 (D.N.J. Mar. 23, 2018); *see also Öztürk*, 136 F.4th at 394-95 (upholding district court's jurisdiction under AWA and the "equitable and flexible nature of habeas relief" to order petitioner's transfer (quoting *Öztürk v. Trump*, 779 F. Supp. 3d 462, 487 (D. Vt. 2025))). Indeed, the District of Maryland has upheld two standing orders accomplishing the same kind of relief *by default*, in every newly filed immigration habeas case, that the district court's AWA order accomplished here, calling the entry of such orders a "quintessential judicial act[]." *United States v. Russell*, WL 2448955, at *2 (D. Md. Aug. 26, 2025) (dismissing executive's challenge to district-wide standing order granting temporary stays of removal in connection with newly filed immigration habeas cases).

The government's argument would destabilize this routine and salutary judicial practice to preserve habeas jurisdiction. It contends that the district court lacked jurisdiction to issue the March 20 order because: (1) the order was "overbroad" in that it was not necessary to preserve the court's jurisdiction; (2) the relief it granted lacked a "reasonable connection" to the claims in Dr. Suri's petition; and (3) the INA strips the court of jurisdiction to enter the order. Br. 56-60. All three arguments fail.

First, the district court did not abuse its discretion in finding that an AWA order temporarily halting Dr. Suri's removal was appropriate. The government argues that this order was not "*necessary* to preserve the district court's jurisdiction," Br. 56 (emphasis added), but it omits the full statutory text—"*or appropriate*," 28 U.S.C. § 1651(a) (emphasis added). Regardless, although not even hindsight can soundly tell us what would have happened to Dr. Suri, and to the court's ability to hear and decide his petition, in the ensuing hours, days, and weeks absent the order, it would not have been an abuse of discretion to find the order was necessary, too. Regardless of the fact that Dr. Suri had been issued an NTA, Br. 56-57, but for the March 20 order, Dr. Suri "may well have been deported without the reasonable notice and opportunity for judicial review that 'all nine Justices agree[]' is due." 2025 WL 1806692, at *5 (quoting *A.A.R.P.*, 605 U.S. at 95); *see also id*. (noting that the government "doesn't contest the district court's finding that it apparently intended to deport Suri on March 21"). This is especially so in light of Dr. Suri's (eventually credited) allegations that ICE had kept him, his family, and counsel in the dark for days about the destination and purpose of his multiple transfers, JA221, and the district court's subsequent findings regarding the government's shadowy, potentially bad-faith operations and misrepresentations. *See* JA227; JA229-230; JA232. Moreover, the order only applies for as long as Dr. Suri's habeas petition remains pending, or until the court issues a contrary order—whichever comes

sooner. JA048. The government is also free to request that the district court lift or modify its order—*e.g.*, in the event that Dr. Suri becomes subject to a legally final order of removal at the conclusion of his immigration proceedings. Issuing an AWA order under those circumstances is not an abuse of discretion.

Second, the government's argument that the March 20 order is "overbroad" because it lacks a "nexus" or "reasonable connection," Br. 57-58, to the merits of the claims in Dr. Suri's petition is unsupported and untenable. The only authorities the government cites for this proposition are an out-of-circuit district court case and a Fourth Circuit antitrust case that had nothing to do with the AWA, habeas corpus, or a stay of removal. *See id.* (citing *Omega World Travel, Inc. v. Trans World Airlines*, 111 F.3d 14, 16 (4th Cir. 1997) and *Las Ams. Immigrant Advoc. Ctr. v. Trump*, 451 F. Supp. 3d 1191, 1193 (D. Or. 2020)). And the government's rule would have far-reaching consequences for the judicial branch's capacity, in our system of separation of powers, to preserve the court's jurisdiction and ensure executive compliance with law. *See United States v. N.Y. Tel. Co.*, 434 U.S. 159, 173 (1977) (holding that AWA allows a federal court to "avail itself of all auxiliary writs as aids in the performance of its duties, when the use of such historic aids is calculated in its sound judgment to achieve the ends of justice entrusted to it" (quoting *Adams*, 317 U.S. at 273)).

The government fails to account for the basic purpose of the AWA and how AWA orders, by statutory design, can differ from traditional injunctive relief. Dr. Suri does not dispute that the March 20 order is effectively an injunction—a court order requiring a party to engage or refrain from engaging in a particular action. But unlike a preliminary or permanent injunction premised on a litigant's likely or proven success on the merits of her underlying claims, the primary function of an order issued pursuant to the AWA is to protect *the court* and *its own* ability to exercise its jurisdiction; preventing harm to a party is, at most, a secondary consideration and a showing a connection to the merits of the underlying claim is not a part of the jurisdiction-preserving calculus. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004); *see Gilchrist v. Gen. Elec. Cap. Corp.*, 262 F.3d 295, 302 (4th Cir. 2001).

Third, the government attempts to rehash its arguments about the court's jurisdiction over the claims in Dr. Suri's petition to argue that the INA also stripped the court of jurisdiction to temporarily stay his removal. *See* Br. 58-60 (claiming that the district court "arrogated to itself the very authority that Congress has denied it to review final orders of removal" by issuing the March 20 order (citing, *inter alia*, 8 U.S.C. § 1252(a)(5) & (b)(9))). This conflates authority to review a claim that in theory could be barred by the INA, with the separate authority to preserve the integrity of the Court's jurisdiction Congress affirmatively conferred under the

51

habeas statute. Unsurprisingly, the government cites to no court that has held that the INA strips the independent and statutorily authorized authority to preserve the Court's jurisdiction to permit adjudication of a habeas petition.

Further, these arguments run aground on the same terrain mapped out above. There is no final order of removal at issue here, so section 1252(a)(5) and (b)(9)'s jurisdiction-channeling provisions are not implicated. And there is no valid, final order to "execute" under section 1252(g), *see, e.g., Madu*, 470 F.3d at 1368 (1252(g) did not bar review where there was no "removal order at all"); nor does the March 20 order intrude upon the government's exercise of lawful discretion, *see Abrego Garcia*, 2025 WL 1021113, at \*2-3 (Thacker, J., concurring).

## CONCLUSION

Respectfully, the Court should affirm the district court's orders.


Dated: September 26, 2025

Respectfully submitted,

/s/ *Eden Heilman*

| | |
|---|---|
| Hassan Ahmad (VSB #83428) | Eden Heilman (VSB #93554) |
| THE HMA LAW FIRM, PLLC | Sophia Leticia Gregg (VSB #91582) |
| 6 Pidgeon Hill Dr, Suite 330 | Geri Greenspan (VSB #76786) |
| Sterling, VA 20165 | Vishal Agraharkar (VSB #93265) |
| (703) 964-0245 | AMERICAN CIVIL LIBERTIES UNION |
| | FOUNDATION OF VIRGINIA |
| Astha Sharma Pokharel | 701 E. Franklin St. |
| Baher Azmy | Suite 1412 |
| CENTER FOR CONSTITUTIONAL RIGHTS | Richmond, VA 23219 |
| 666 Broadway, 7th floor | (804) 644-8022 |

New York, NY 10012
(212) 614-6464

Jessica Myers Vosburgh
CENTER FOR CONSTITUTIONAL RIGHTS
P.O. Box 486
Birmingham, AL 35201
(212) 614-6492

Nermeen Saba Arastu
IMMIGRANT & NON-CITIZEN RIGHTS
CLINIC
MAIN STREET LEGAL SERVICES, INC.
CUNY SCHOOL OF LAW
2 Court Square, 5th Floor
Long Island City, NY 11101
(202) 246-0124

Brett Max Kaufman
Scarlet Kim
Brian Hauss
Esha Bhandari
Noor Zafar
Sidra Mahfooz
Michael K.T. Tan
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

*Counsel for Petitioner–Appellee*

## REQUEST FOR ORAL ARGUMENT

In their appeal, Respondents seek to overturn district court orders releasing Petitioner from custody on the basis of extraordinary circumstances pending the litigation of his habeas claims and temporarily preventing Respondents from removing Petitioner pending the litigation of his habeas petition. Oral argument is appropriate because the appeal raises numerous significant issues of federal court habeas and subject-matter jurisdiction that will be of influential or precedential value and are of significant public interest.

Date: September 26, 2025

Respectfully submitted,

/s/ *Eden Heilman*
Eden Heilman
*Counsel for Petitioner–Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on September 26, 2025, I electronically filed the foregoing through the CM/ECF system and it was thereby electronically served via ECF on all counsel of record in this matter. No party is unrepresented in that system.

Date: September 26, 2025

Respectfully submitted,

/s/ *Eden Heilman*
Eden Heilman
*Counsel for Petitioner–Appellee*

<u>**CERTIFICATE OF COMPLIANCE**</u>

This document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 12,969 words. The document also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in size-14 Times New Roman font.

Date: September 26, 2025                    Respectfully submitted,

<u>/s/ *Eden Heilman*   </u>
Eden Heilman
*Counsel for Petitioner–Appellee*