No. 25-1560

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FOURTH CIRCUIT

BADAR KHAN SURI,
*Petitioner-Appellee*
v.
DONALD J. TRUMP, *et al.*,
*Respondents-Appellants*

On Appeal from the U.S. District Court for the Eastern District of Virginia,
District Court Case No. 1:25-cv-00480

## BRIEF OF IMMIGRATION LAWYERS, LAW PROFESSORS, AND SCHOLARS AS *AMICI CURIAE* IN SUPPORT OF PETITIONER-APPELLEE

Amber Qureshi
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com

Elora Mukherjee
Jerome L. Greene Clinical Professor
of Law, Columbia Law School
Morningside Heights Legal Services
435 W. 116th Street, Room 831New
York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Ahilan Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu
(in his individual capacity)

*Counsel for Amici Curiae*

# TABLE OF CONTENTS

INTRODUCTION AND STATEMENT OF AMICI ................................................1

ARGUMENT ........................................................................................2

I.    8 U.S.C. § 1252(g) DOES NOT BAR JUDICIAL REVIEW .......................3

II.   8 U.S.C. § 1252(b)(9) DOES NOT BAR JUDICIAL REVIEW ..................6

   A.  The Plain Language of 1252(b) is Limited to Claims Arising from Review of Removal Orders. ....................................................7

   B.  Detention Does Not "Arise From" An Action or Proceeding to Remove a Noncitizen from the United States..........................................16

   C.  The Government's Interpretation Requiring Dr. Khan Suri to Bring His Claims in a Petition for Review Would Render Them Effectively Unreviewable, Raising Serious Constitutional Problems. .......................18

III.  THE GOVERNMENT'S RELIANCE ON 8 U.S.C. § 1227(A)(4)(C) TO DETAIN AND DEPORT A NONCITIZEN SOLELY FOR POLITICAL SPEECH IS EXCEPTIONAL...................................................................21

   A.  Section 1227(a)(4)(C) Is Unique Among Deportability Grounds Because It Purportedly Authorizes Deportation Based on the Unfettered Discretion of a Single Political Official.................................................22

   B.  Section 1227(a)(4)(C) Has Almost Never Been Invoked by DHS. ..24

CONCLUSION .....................................................................................27

ADDENDUM - LIST OF AMICI CURIAE .......................................................29

CERTIFICATE OF COMPLIANCE .................................................................36

CERTIFICATE OF SERVICE .......................................................................37

# TABLE OF AUTHORITIES

**Federal Cases**

*Aguilar v. ICE*, 510 F.3d 1 (1st Cir. 2007)...................................................18, 19, 20

*Ali v. Mukasey*, 524 F.3d 145 (2d Cir. 2008) ...........................................................6

*Arce v. United States*, 899 F.3d 796 (9th Cir. 2018) .................................................5

*Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) ........................................................4

*Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684 (4th Cir. 2019)..8

*Chehazeh v. Att'y Gen. of United States,* 666 F.3d 118 (3d Cir. 2012) ..................20

*Crowell v. Benson*, 285 U.S. 22 (1932)..................................................................20

*DHS v. Regents of the Univ. of California*, 591 U.S. 1 (2020) ...........................6, 16

*E.O.H.C. v. Secretary of DHS*, 950 F.3d 177 (3d Cir. 2020) ............................11, 18

*Garcia v. Att'y Gen.*, 553 F.3d 724 (3d Cir. 2009) ...................................................5

*Gonzalez v. ICE*, 975 F.3d 788 (9th Cir. 2020)......................................................17

*Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615 (6th Cir. 2010) .......................18

*Hernández v. Gonzales*, 424 F.3d 42 (1st Cir. 2005) ..............................................17

*I.N.S. v. St. Cyr*, 533 U.S. 289 (2001) ............................................................*passim*

*Jennings v. Rodriguez*, 583 U.S. 281 (2018) ...................................................*passim*

*Khalil v. Trump*, No. 25-cv-1963 (MEF) (D.N.J.) ..................................................24

*Kong v. United States*, 62 F.4th 608 (1st Cir. 2023) ...........................................5, 19

*Madu v. Att'y Gen.*, 470 F.3d 1362 (11th Cir. 2006) ................................................5

*Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001)..................................................27

*Massieu v. Reno*, 915 F. Supp. 681 (D.N.J.), *rev'd on other grounds*,

    91 F.3d 416 (3d Cir. 1996)..........................................................22, 23

*Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996).........................................22, 24

*McNary v. Haitian Refugee Ctr, Inc.*, 498 U.S. 479 (1991)............................12

*Meza v. Renaud*, 9 F.4th 930 (D.C. Cir. 2021)..............................................12

*Michalski v. Decker*, 279 F. Supp. 3d 487 (S.D.N.Y. 2018)..........................17

*Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022) ......................................10

*Monsalvo Velasquez v. Bondi*, 145 S. Ct. 1232 (2024).................................13

*Nadarajah v. Gonzales*, 443 F.3d 1068 (9th Cir. 2006)..................................9

*Nielsen v. Preap*, 586 U.S. 392 (2019)..........................................................15

*Parra v. Perryman*, 172 F.3d 954 (7th Cir. 1999) .........................................6

*Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) ..............................................6

*Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471 (1999)............*passim*

*Reyna v. Hott*, No. 17-01192, 2018 WL 3551558 (E.D. Va. May 20, 2018)...........8

*Singh v. Gonzalez*, 499 F.3d 969 (9th Cir. 2007) ...........................................9

*Trump v. J.G.G.*, 145 S. Ct. 1003 (2025) ......................................................5

*Wanrong Lin v. Nielsen*, 377 F.Supp.3d 556 (D. Md. 2019) ..........................8

*You v. Nielsen*, 321 F. Supp. 3d 451 (S.D.N.Y. 2018) ...................................9

*Zadvydas v. Davis*, 533 U.S. 678 (2001).................................................3, 4, 20

**Administrative Decisions**

*Matter of Khalifah*, 21 I&N Dec. 107 (BIA 1995)..................................................27

*Matter of Ruiz-Massieu*, 22 I&N Dec. 833 (BIA 1999)..........................................27

**Title 8 of the U.S. Code**

8 U.S.C. § 1227(a)(2) ...............................................................................22

8 U.S.C. § 1227(a)(3) ...............................................................................22

8 U.S.C. § 1227(a)(4) ...............................................................................22

8 U.S.C. § 1227(a)(4)(A)...........................................................................22

8 U.S.C. § 1227(a)(4)((B) ..........................................................................22

8 U.S.C. § 1227(a)(4)(C), INA § 237(a)(4)(C) ...................................*passim*

8 U.S.C. § 1227(a)(4)(C)(i), INA § 237(a)(4)(C)(i)........................................*passim*

8 U.S.C. § 1227(a)(4)(D)...........................................................................22

8 U.S.C. § 1227(a)(4)(E) ...........................................................................22

8 U.S.C. § 1227(a)(4)(F) ...........................................................................22

8 U.S.C. § 1227(a)(6) ...............................................................................22

8 U.S.C. § 1252(a)(1) ............................................................................. 7-8

8 U.S.C. § 1252(a)(5) ....................................................................*passim*

8 U.S.C. § 1252(b)........................................................................*passim*

8 U.S.C. § 1252(b)(9)....................................................................*passim*

8 U.S.C. § 1252(g)...............................................................................*passim*

**Other Statutes**

REAL ID Act of 2005, Pub. L. No. 109–13, 119 Stat. 302 ........................... 4-5, 19

Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104–208 .............................................................................................................24

**Federal Regulations**

8 C.F.R. § 1003.19(d)..............................................................................................13

8 C.F.R. § 1239.1 .....................................................................................................4

**Federal Rules**

 Fed. R. App. P. 29(a)(4)(E) ....................................................................................1

**Legislative History**

H.R. Rep. 109-72 (2005) (Conf. Rep) ...............................................................5, 20

**Miscellaneous**

Black's Law Dictionary (7th ed. 1999) .................................................................12

Jonah E. Bromwich and Hamed Aleaziz, *Columbia Student Hunted by ICE Sues to Prevent Deportation*, N.Y. Times, Mar. 4, 2025. ......................................25

Charlie Savage, *Congress Wrote a Deportation Law to be Used 'Sparingly.' Trump Has Other Ideas*, N.Y. Times, Apr. 1, 2025.............................................25

Juliet Stumpf, *The Crimmigration Crisis: Immigrants, Crime, and Sovereign Power*, 56 Am. U. L. Rev. 367, 379–86 (2006).......................................................25

Henry Weinstein, *Final Two L.A. 8 Defendants Cleared*, LA Times (Nov. 1, 2007). ............................................................................................................21

# INTRODUCTION AND STATEMENT OF AMICI[1]

*Amici curiae* are more than one hundred leading lawyers, law professors, and scholars who practice, write about, research, and teach immigration law.[2] *Amici* collectively have many centuries of experience representing individuals at all stages of their immigration proceedings and in federal court. Regardless of their differing views on recent campus protests and the war in the Middle East, *amici* are united in finding that the government's detention of Badar Khan Suri is unlawful, and that the federal courts have power to order his release from unlawful imprisonment. *Amici* have a strong interest in the outcome of this case. It is crucial that federal courts retain their longstanding authority to prevent unlawful imprisonment by Executive Branch officials. That is particularly so in this case, as allowing the federal government to jail immigrants based on peaceful political speech will have devastating effects on immigrants, upend the practice of immigration law, and chill protected First Amendment speech not just on campuses but in communities nationwide.

---

[1] Petitioner consented to the filing of this brief. Counsel for Respondents stated that the government does not oppose the motion for leave to file the brief. No party or its counsel had any role in authoring this brief. No person or entity—other than *amici* and their counsel—contributed money that was intended to fund preparing or submitting this brief. Fed. R. App. P. 29(a)(4)(E).

[2] A list of *amici* is set forth in the Addendum. The positions taken in this brief are those of *amici* alone and should not be attributed to any institution with which *amici* are or have been affiliated.

**ARGUMENT**

Respondents take the remarkable view that the federal courts have no power to determine whether the government has illegally imprisoned Dr. Khan Suri, a J-1 visa holder, asserting that Congress foreclosed challenges to detention incident to removal proceedings in 8 U.S.C. § 1252(g), even though the Supreme Court and other circuit courts have repeatedly considered such challenges on their merits in the years since Section 1252(g)'s passage.

Alternatively, Respondents take the even stranger position that if the federal courts have power to resolve Dr. Khan Suri's claims, they must wait until his entire removal proceedings are over—a process that could take years—before he can challenge the legality of his detention *during* those same proceedings, under 8 U.S.C. §§ 1252(a)(5) and (b)(9).

The government's positions are meritless. Dr. Khan Suri's habeas petition challenges his detention as imposed punitively and in retaliation for his constitutionally protected speech. His claims are not barred by 1252(g) because they do not challenge the decision to "commence proceedings, adjudicate cases, or execute removal orders." 8 U.S.C. § 1252(g). And he is not required to languish in detention for years before raising a challenge to his detention under 1252(a)(5) and (b)(9) because his claims are conceptually distinct from his challenge to his

removal. Moreover, the use of 8 U.S.C. § 1227(a)(4)(C) to deport a noncitizen solely on the basis of lawful political speech may well be unprecedented in the history of this provision.

## I.   8 U.S.C. § 1252(g) DOES NOT BAR JUDICIAL REVIEW.

The government's contention that 1252(g) bars all review of Dr. Khan Suri's challenges to his detention is plainly foreclosed by binding precedent construing that provision narrowly. Moreover, construing the "arising from" language of 1252(g) to bar all detention-related claims would raise serious constitutional concerns under the Suspension Clause.

As the Supreme Court held in *Reno v. American-Arab Anti-Discrimination Committee (AADC)*, 1252(g) bars review only over claims challenging the three discrete exercises of "prosecutorial discretion" covered by 1252(g)—"the decision or action . . . to *commence* proceedings, *adjudicate* cases, or *execute* removal orders."  525 U.S. 471, 482 (1999) (emphasis in original). There are "many other decisions or actions that may be part of the deportation process," but challenges to them are not barred. *Id*.; *see also Zadvydas v. Davis*, 533 U.S. 678, 688 (2001) (holding 1252(g) did not bar detention claim challenging "the extent of the Attorney General's authority" rather than the "exercise of discretion").

Here, Dr. Khan Suri's habeas petition challenges his detention and the policy that produced those actions. It does not challenge the decision to *commence*

removal proceedings against him, let alone the decision to *adjudicate* his case, or *execute* any removal order.

Dr. Khan Suri's detention claims are not barred by 1252(g) because the decision to detain is legally separate from the decision to remove. Removal proceedings are commenced by the filing of a Notice to Appear with the immigration court. 8 C.F.R. § 1239.1. A decision to detain may occur before or after that filing. Removal cases are regularly adjudicated without the non-citizen being detained, and the government does not contend it is legally required to detain Dr. Khan Suri to adjudicate his case.

Respondents nonetheless contend his detention claim falls within 1252(g), arguing, "Suri is . . . challenging the Attorney General's decision to commence removal proceedings against him—which falls squarely within §1252(g)." Resp. Br. at 38. But his removal proceedings are just one of many but-for causes of his detention, and if that were sufficient then 1252(g) would bar all detention claims. *But see, e.g.*, *Zadvydas,* 533 U.S. at 688; *Black v. Decker*, 103 F.4th 133 (2d Cir. 2024) (addressing detention claims on the merits).

Respondents also argue the reference to habeas claims in 1252(g) shows it is meant to cover detention claims, Resp. Br. at 14-16, but they acknowledge that reference was added in the REAL ID Act of 2005, where Congress responded to *INS v. St. Cyr*, 533 U.S. 289 (2001). *St. Cyr* concerned the longstanding use of

4

habeas to challenge *removal* orders, not detention claims. *Id.* at 299; *see also*

*Trump v. J.G.G*, 145 S. Ct. 1003 (2025) (habeas petition challenging removal).

Nothing in the REAL ID Act remotely suggests Congress intended to bar detention

claims, particularly given the obvious Suspension Clause problems such a scheme

would raise. Indeed, the REAL ID Act's legislative history shows the opposite, as

the Conference Report stated the statute preserved "habeas review over challenges

to detention that are independent of challenges to removal orders." H.R. Rep. No.

109-72, at 175 (2005) (Conf. Rep.).[3]

Other circuits have recognized that 1252(g) does not bar jurisdiction over

habeas challenges to detention. *See Kong v. United States*, 62 F.4th 608, 617 (1st

Cir. 2023) (holding petitioner's illegal arrest and detention claims based on lack of

warrant and regulatory violations were "plainly collateral to ICE's prosecutorial

decision to execute Kong's removal"); *Arce v. United States*, 899 F.3d 796, 799–

800 (9th Cir. 2018) (FTCA claim for false arrest and imprisonment based on

government's violation of stay of removal not barred by 1252(g)); *Madu v. Att'y*

*Gen.*, 470 F.3d 1362, 1368 (11th Cir. 2006) (challenge to legality of detention not

---

[3] Even as to removal proceedings, courts have consistently exercised judicial review over challenges to the government's *authority* to commence proceedings, distinguishing this from the discretionary *decision* to commence proceedings. *Garcia v. Att'y Gen.,* 553 F.3d 724, 729 (3d Cir. 2009) (finding jurisdiction because ("Garcia is not challenging the discretionary *decision* to commence proceedings, but is challenging the government's very *authority* to commence those proceedings after the limitation period has expired") (emphases in original).

barred by 1252(g) because distinct from decision to execute removal order); *Parra v. Perryman*, 172 F.3d 954, 957 (7th Cir. 1999) (1252(g) did not bar claims "concern[ing] detention," which "may be resolved without affecting pending [removal] proceedings"). The government ignores all this adverse authority.

Finally, Dr. Khan Suri's challenge to the government's policy of targeting noncitizens for their protected speech is not barred by 1252(g). A challenge to the lawfulness or constitutionality of a policy does not *arise from* a decision to commence removal proceedings, adjudicate cases, or execute a removal order. *See, e.g., DHS v. Regents of the Univ. of Cal.*, 591 U.S. 1, 19 (2020) (stressing that 1252(g) is "narrow" and finding that it did not bar challenge to rescission of DACA policy); *cf. Ali v. Mukasey,* 524 F.3d 145, 150 (2d Cir. 2008) (suggesting claim would not be barred if petitioner alleged being placed in removal proceedings "unlawfully or for reasons that would offend the Constitution"). In this respect, this case also differs from *Ragbir v. Homan*, 923 F.3d 53 (2d Cir. 2019) and *AADC* itself, where petitioners sought to enjoin the execution of otherwise valid final removal orders on First Amendment grounds.

## II. 8 U.S.C. § 1252(b)(9) DOES NOT BAR JUDICIAL REVIEW.

Respondents' argument that, under 1252(a)(5) and (b)(9), Dr. Khan Suri's challenges cannot be heard unless and until he is ordered removed and he seeks judicial review of that removal order, is equally meritless, for two reasons. First,

consistent with its plain text and Justice Breyer's opinion in *Jennings v. Rodriguez*, 1252(b) only concerns claims arising in the context of the review of removal orders. 583 U.S. 281, 355 (2018) (Breyer, J., dissenting on other grounds). Second, even if 1252(b)(9) is not so limited, it does not bar review of claims challenging unlawful detention, which do not "arise from" removal proceedings, and foreclosing such claims would render detention "effectively unreviewable," presenting serious constitutional problems. *See id*. at 293 (Alito, J.) (plurality).

### A. The Plain Language of 1252(b) is Limited to Claims Arising from Review of Removal Orders.

The opening text of 8 U.S.C. § 1252(b) limits application of all its provisions to claims arising from review of removal orders under 1252(a)(1). It states:

> (b) *Requirements for review of orders of removal*
>
> *With respect to review of an order of removal* under subsection (a)(1), the following requirements apply
> . . .

8 U.S.C. § 1252(b) (emphasis added). Section 1252(b)(9), like the other provisions of subsection 1252(b), follows this language. Therefore, its requirements apply only "with respect to review of" removal orders. Because Dr. Khan Suri is not seeking review of a removal order—he has not been ordered removed and may well never be—the provisions of 1252(b) simply do not apply to him.

7

Amici's plain-language interpretation of 1252(b)(9) was embraced by Justice Breyer in *Rodriguez*, who relied on the language emphasized above to conclude the Court had jurisdiction over the detention claims at issue there. *Rodriguez*, 583 U.S. at 355 (Breyer, J., dissenting on other grounds) ("Jurisdiction [] is unaffected by 8 U.S.C. § 1252(b)(9), which by its terms applies only '[w]ith respect to review of an order of removal under [§ 1252(a)(1)].' . . . The respondents challenge their detention without bail, not an order of removal.").

This Court has also adopted that interpretation, explaining that 1252(b)(9) "applies *only* with respect to review of an *order of removal*." *Casa De Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 697 (4th Cir. 2019) (citing *INS v. St. Cyr*, 533 U.S. 289, 313 (2001)). Courts in this circuit have concluded that 1252(b)(9) does not foreclose federal court jurisdiction to review claims challenging the constitutionality of immigration detention. *See, e.g.*, *Reyna v. Hott*, No. 17-01192, 2018 WL 3551558, at *3 (E.D. Va. May 20, 2018) (holding "1252(b)(9) cannot be construed to foreclose an Article III court from reviewing the constitutionality of executive actions against persons held in ICE custody"); *Wanrong Lin v. Nielsen*, 377 F.Supp.3d 556, 562 (D. Md. 2019) (explaining "the 'arising under' language of 1252(b)(9) should not be read to 'preclude habeas review over challenges to detention that are independent of challenges to removal

orders'") (citing *You v. Nielsen*, 321 F. Supp. 3d 451, 458-59 (S.D.N.Y. 2018) and

H.R. Conf. Rep. 109-72,175 (2005)).

Similarly, the Ninth Circuit has held that a claim challenging the detention

of a non-citizen whose removal case remained pending was not subject to

1252(b)(9), which, "[b]y its terms, does not apply to federal habeas corpus

petitions that do not involve final orders of removal." *Nadarajah v. Gonzales*, 443

F.3d 1069, 1075–76 (9th Cir. 2006) (emphasis added). The court reaffirmed that

conclusion in *Singh v. Gonzalez,* which explained that "[b]y virtue of their explicit

language, both §§ 1252(a)(5) and 1252(b)(9) *apply only to those claims seeking*

*judicial review of orders of removal*." 499 F.3d 969, 978 (9th Cir. 2007) (emphasis

added). While *Singh* acknowledged that § 1252(b)(9) covers "any action taken or

proceeding brought to remove an alien," the court interpreted that phrase "simply

[to] mean[ ] that if the alien fails to consolidate his claims as required under §

1252(b)(9), he may not later bring a separate habeas claim to raise 'questions of

law or fact' that should have been brought as part of a challenge to his final order

of removal." *Id*. at n.11. Here, as in *Nadarajah*, "there is no final removal order,"

443 F.3d at 1076, so 1252(b)(9) does not apply.

Justice Alito's lead plurality opinion in *Rodriguez* also strongly supports

Petitioner's position here. Alito's opinion held there *was jurisdiction* to review the

detention claims in *Rodriguez*, albeit without either endorsing or rejecting Justice

Breyer's approach. The plurality did not "attempt to provide a comprehensive interpretation" of the scope of § 1252(b)(9), 585 U.S. at 294, but still rejected a broad reading of "arising from" that "would [ ] make claims of prolonged detention effectively unreviewable." *Id*. at 293 (plurality opinion). It also noted that a literal interpretation of "arising from" could encompass virtually any removal-related action, because if action to remove a noncitizen "had never been taken, the [noncitizen] would not be in custody at all." *Id.* Rejecting that interpretation, the plurality observed that "cramming judicial review" of questions such as detention-related injuries and conditions claims "into the review of final removal orders would be absurd." *Id.* It further cautioned against "uncritical literalism" when interpreting "capacious phrases like 'arising from'" that would "lead[] to results that no sensible person could have intended." *Id.* at 293–94 (internal quotation marks omitted). Ultimately, the plurality concluded that it had jurisdiction to address at least those claims that did not seek review of an order of removal (Justice Breyer's position) or challenge any part of the process by which removability would be determined—including detention claims like those at issue in *Rodriguez* itself. *Id.* at 294; *see also Miranda v. Garland*, 34 F.4th 338, 353 n.6 (4th Cir. 2022) (finding that 1252(b)(9) does not preclude jurisdiction to a challenge to the legality of detention and bond procedures). Thus, Dr. Khan Suri's claim is plainly cognizable under the *Rodriguez* plurality's logic. Forcing him to

10

wait until his removal proceedings have concluded before he can challenge the

legality of his detention renders his challenge "effectively unreviewable."[4]

This approach has also been endorsed by the Third Circuit, which relied on

the opinions in *Rodriguez* in finding that 1252(b)(9) does not apply if it would

prevent any meaningful review. The Third Circuit instructed lower courts to ask,

"If not now, when?" in addressing whether judicial review is barred under

1252(b)(9). *E.O.H.C. v. Secretary of DHS,* 950 F.3d 177, 186 (3d Cir. 2020). "If

the answer would [ ] be never, then § 1252(b)(9) poses no jurisdictional bar. " *Id.*

(holding that judicial review of an interim return to Mexico, rather than permanent

removal to Guatemala, was not barred by 1252(b)(9)).

The Third Circuit also considered some instructive hypotheticals:

> Consider a detained alien who needs halal or kosher food, or a
> diabetic who alleges that the Government is depriving him of insulin.
> Or take [Rodriguez]'s example of a challenge to prolonged
> detention. . . . Under the Government's reading, these aliens could get
> no judicial review until the Board enters their final orders of removal.
> That cannot be so. For one, the final order of removal may never
> come. Even if it does, review and relief may come too late to redress
> these conditions of confinement.

---

[4] Only Justice Thomas, joined by Justice Gorsuch, interpreted 1252(b)(9) so broadly that it would confine "challenge[s] to the *fact* of [a noncitizen's] detention" to the petition-for-review process. *Id.* at 319 (Thomas, J., dissenting) (emphasis in original). As Justice Thomas's dissent acknowledges, the plurality "dismisse[d] this 'expansive interpretation' because it would lead to 'staggering results.'" *Id.* at 319 (quoting plurality opinion).

*Id.* at 186 (citing *Rodriguez*, 583 U.S. at 293, and *McNary v. Haitian Refugee Ctr, Inc.*, 498 U.S. 479, 484 (1991) (construing jurisdiction-stripping provisions to preserve review where "meaningful judicial review . . . would [otherwise] be foreclosed")). Similarly, here, Dr. Khan Suri could not receive any meaningful review of his claim challenging his detention pending removal proceedings after those proceedings are already over.

Likewise, the D.C. Circuit has held that "1252(b)(9) prevents [a noncitizen] from *relitigating, outside the context of a petition for review, a question decided against him in the removal proceeding*. In ordinary usage, an issue decided in a proceeding arises from the proceeding." *Meza v. Renaud*, 9 F.4th 930, 933 (D.C. Cir. 2021) (emphasis added) (court could not review Meza's claim that he was an arriving alien, which he could have made in a petition for review) (citing *Arise*, *Black's Law Dictionary* (7th ed. 1999)). Dr. Khan Suri is not trying to relitigate any issue decided against him in his removal proceeding.

Nonetheless, Respondents now ask this Court to adopt the view of only two Justices in *Rodriguez*. This Court should decline that invitation. In rejecting Justice Breyer's interpretation, Justice Thomas's opinion made four main arguments, none of which is persuasive. First, he contends that limiting 1252(b)(9) to review of final orders of removal would read the phrase "or such questions of law or fact" out of the statute. *Rodriguez,* 583 U.S. at 320 (Thomas, J., dissenting). But his approach

reads the prefatory clause out of the statute, as it renders that clause entirely meaningless—a point he essentially acknowledges in arguing that it does not change the scope of the provision in any way. *Id.* at 320–21. In any event, Justice Breyer's interpretation does not render the phrase "or such questions of law or fact" in 1252(b)(9) meaningless. At a minimum, it could refer to questions arising in ancillary litigation that ensues after a removal order is entered, including in motions to reopen, challenges related to the country designated for deportation, humanitarian claims under withholding of removal or the Convention Against Torture. *See, e.g.*, *Monsalvo Velasquez v. Bondi*, 145 S. Ct. 1232, 1241 (2024) (finding jurisdiction in petition for review to address question arising from litigation ancillary to final removal order). In contrast, because issues involving detention are not addressed in removal proceedings or by orders of removal, they are outside the purview of 1252(b)(9). This also makes sense of the regulatory structure, as immigration courts have separate custody redetermination proceedings (bond hearings), with a separate record of proceedings, to address detention. 8 C.F.R. § 1003.19(d) (respondent's request "regarding custody or bond under this section *shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding*.") (emphasis added).

Second, Justice Thomas contends that Justice Breyer's interpretation renders superfluous 1252(a)(5), which specifies that a petition for review is the sole means

13

of judicial review of an order of removal. *Rodriguez*, 583 U.S. at 305. This is simply incorrect. 1252(a)(5) specifies that the proper forum for challenging a final order of removal is the federal courts of appeal, while the "zipper clause" in 1252(b)(9) clarifies that all challenges related to that final order of removal must be brought together in a consolidated manner, rather than piecemeal. As the Supreme Court recognized in *AADC*, even minor differences between bars on judicial review can justify their existence. 525 U.S. 471, 483 (1999) (rejecting the argument "that § 1252(g) is redundant if it channels judicial review of only *some* decisions and actions, since § 1252(b)(9) channels judicial review of *all* of them anyway. . . . since only § 1252(g), and *not* § 1252(b)(9) . . . applies to . . . cases pending on the effective date of IIRIRA," which "alone justifies its existence") (emphasis in original).

Third, Justice Thomas argues that *AADC* and *St. Cyr* did not limit 1252(b)(9) to review of final orders of removal. However, neither of those cases addressed the scope of 1252(b)(9). *AADC* held that 1252(g) barred jurisdiction over selective prosecution claims where the noncitizens had final orders of removal and challenged the decision to execute those orders. Indeed, the plurality in *Rodriguez* cited *AADC* as *supporting* its narrow interpretation of "arising from" in 1252(b)(9). *Rodriguez*, 583 U.S. at 294.

*St. Cyr* also does not support Justice Thomas's unjustifiably broad interpretation of 1252(b)(9). Not only did the Supreme Court reject the government's arguments that 1252(b)(9) barred judicial review in *St. Cyr*, but the Court stressed that the absence of "another judicial forum" where a question of law could be answered, "coupled with the lack of a clear, unambiguous, and express statement of congressional intent to preclude judicial consideration on habeas of such an important question of law, strongly counsels against adopting a construction that would raise serious constitutional questions." *I.N.S. v. St. Cyr*, 533 U.S. 289, 314 (2001). Justice Thomas offers no persuasive justification for an approach that would preclude meaningful review over an important class of detention claims. *Rodriguez,* 583 U.S. at 321 (Thomas, J., dissenting). The plurality was rightly concerned that Justice Thomas's "extreme" interpretation would make claims of prolonged detention effectively unreviewable. 583 U.S. at 293.

The Supreme Court's post-*Rodriguez* cases offer further support for exercising jurisdiction in Dr. Khan Suri's case. In *Nielsen v. Preap*, 586 U.S. 392 (2019), the Justices took the same positions as in *Rodriguez*, with a three-Justice plurality echoing the view that 1252(b)(9) does not bar challenges to detention, while Thomas and Gorsuch restated their position from *Rodriguez.* A year later, the Supreme Court once again confirmed that 1252(b)(9) "'does not present a

jurisdictional bar' where those bringing suit 'are not asking for review of an order of removal,' 'the decision . . . to seek removal,' or 'the process by which . . . removability will be determined.'" *Regents of the Univ. of California*, 591 U.S. at 19 (quoting the plurality opinion in *Rodriguez* while also citing Justice Breyer's dissent).

### B. Detention Does Not "Arise From" An Action or Proceeding to Remove a Noncitizen from the United States.

Even if this Court does not limit 1252(b)(9) to review of final orders of removal, the language still is not broad enough to include challenges to detention. The First and Ninth Circuits have repeatedly held that 1252(b)(9) does not foreclose challenges to detention, and the Third and Sixth Circuits have exercised jurisdiction over challenges related to removal proceedings. The question here is whether Dr. Khan Suri's detention "*aris[es] from* any action taken or proceeding brought to remove a [noncitizen]," and the simple answer is no. 8 U.S.C. § 1252(b)(9) (emphasis added).

This Court briefly applied the "arising from" language in 1252(b)(9) in *Johnson v. Whitehead*, 647 F.3d 120 (4th Cir. 2011), holding that 1252(b)(9) barred the petitioner's habeas petition. *Johnson* is distinguishable from the instant case on multiple grounds. First, in *Johnson*, the petitioner "conceded that his petition for review, not his habeas corpus petition, was the proper avenue of appeal." *Id.* at 124. Dr. Khan Suri makes no such concession. Second, the

16

petitioner in *Johnson* was not detained and never challenged his detention, unlike Dr. Khan Suri. Third, the petitioner in *Johnson* sought to litigate the same claims in his removal proceedings and his habeas petition, unlike Dr. Khan Suri.

Here, Dr. Khan Suri challenges the constitutionality of his retaliatory detention, which cannot be addressed in his removal proceedings. *See Michalski v. Decker*, 279 F. Supp. 3d 487, 494 (S.D.N.Y. 2018) (applying the "substance of the relief" test and holding the petitioner's "challenge to the constitutionality of his arrest and detention is not barred by § 1252(b)(9)"). Judicial review of Dr. Khan Suri's detention-related claim clearly is *not* barred, since being released from custody would not negate any order of removal that may ultimately be issued against him. Both detained and non-detained individuals may be removed from the United States, and, here, no order of removal even exists to negate.

The Ninth and First Circuits have already recognized that challenges to detention do not "arise from" removal-related actions or proceedings. *See Gonzalez v. ICE*, 975 F.3d 788, 810–11 (9th Cir. 2020) (holding that section 1252(b)(9) did not bar jurisdiction "because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process"); *Hernández v. Gonzales*, 424 F.3d 42, 42–43 (1st Cir. 2005) (holding that detention claims are independent of removal proceedings and therefore not barred by section

1252(b)(9)); *Aguilar v. ICE*, 510 F.3d 1, 11 (1st Cir. 2007) (identifying "challenges to the legality of detention" as squarely outside 1252(b)(9)'s scope).

Additionally, the Third and Sixth Circuits have exercised jurisdiction over challenges related to removal proceedings but not involving final orders of removal. *See E.O.H.C.*, 950 F.3d at 194 (holding that an interim removal to Mexico and a constitutional right-to-counsel claim did not arise from removal proceedings and could not await later review); *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 626 (6th Cir. 2010) ("We, like the First Circuit in *Aguilar,* cannot endorse an interpretation of the 'arising from' language in § 1252(b)(9) that 'swallow[s] all claims that might somehow touch upon, or be traced to, the government's efforts to remove an alien.'") (quoting *Aguilar*, 510 F.3d at 10).

> **C.     The Government's Interpretation Requiring Dr. Khan Suri to Bring His Claims in a Petition for Review Would Render Them Effectively Unreviewable, Raising Serious Constitutional Problems**

Under Respondents' interpretation, Dr. Khan Suri could potentially go for months before receiving judicial review of the lawfulness of his detention. First, he would need to wait for months in detention while the Immigration Judge adjudicates his case. If he wins and a removal order is never issued, his detention claim would have proven entirely unreviewable—he would have been subjected to pointless unlawful imprisonment, but no court would ever have had the power to address it. If he loses, he would need to wait months more for the Board of

Immigration Appeals (BIA) to decide his appeal. If his appeal is granted, he would win his removal case, again without ever having had the opportunity to obtain judicial review of his detention claim. If his BIA appeal is denied, he would need to file a petition for review with the circuit court, and only then could get judicial review of his detention claim. Respondents' reading of 1252(b)(9) would permit ICE to arrest and detain Dr. Khan Suri, and potentially many thousands more visa holders, lawful permanent residents, and others, without any statutory or constitutional constraints.

As courts have recognized, the phrase "arising from" is not "infinitely elastic" and does not reach "claims that are independent of, or wholly collateral to, the removal process," or that bear "only a remote or attenuated connection to the removal of an alien." *Aguilar*, 510 F.3d at 10–11. Claims seeking review of the legality of a petitioner's detention fall outside the reach of the "arising from" language. *Id.*; *see also Kong*, 62 F.4th at 614.

As described above, the legislative history confirms that Congress intended to preserve habeas review of detention when it amended the INA to include the current language of 1252(b)(9) as part of the REAL ID Act of 2005, Pub. L. No. 109–13, § 106, 119 Stat. 302, 310-11. The Conference Report accompanying the passage of those amendments specifies that 1252(b)(9) would "*not preclude habeas review over challenges to detention* that are independent of challenges to

removal orders, the bill would eliminate habeas review *only over challenges to removal orders.*" H.R. Rep. 109-72, at 175 (2005) (Conf. Rep) (emphasis added). This statement appears after an extensive examination of Supreme Court and circuit court precedents describing the kinds of jurisdiction-stripping provisions that would not violate the right to habeas corpus, indicating that Congress was attentive to the constitutional concerns with limiting habeas relief. *Id.* at 174–75; *see also Aguilar*, 510 F.3d at 11 (relying on the Conference Report in finding judicial review preserved over challenges to detention and noting the need for "clear and convincing evidence of legislative intent before restricting access to judicial review entirely.").[5]

The canon of constitutional avoidance likewise requires interpreting statutes to preserve habeas review of detention claims. *See Crowell v. Benson*, 285 U.S. 22, 62 (1932) (describing constitutional avoidance as a "cardinal principle" of statutory interpretation"); *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (same)    ). The Court has "read significant limitations into . . . immigration statutes in order to avoid their constitutional invalidation." *Id*. Any interpretation of 1252(b)(9) that

---

[5] Insofar as *Aguilar* found that the reach of 1252(b)(9) is not limited to challenges to singular orders of removal, this interpretation was criticized by the Third Circuit in *Chehazeh v. Att'y Gen. of United States,* where the court stated that the reasoning of *Aguilar* "appears to conflict with the Supreme Court's explicit instruction in *St. Cyr* . . . and with the language of § 1252(b)." 666 F.3d 118, 133 (3d Cir. 2012).

bars judicial review of habeas petitions challenging detention would raise serious constitutional concerns under the Suspension Clause and should be avoided. Given that there is an alternative reading—one that simply applies the plain text—this Court should adopt it.

**III.  THE GOVERNMENT'S RELIANCE ON 8 U.S.C. § 1227(A)(4)(C) TO DETAIN AND DEPORT A NONCITIZEN SOLELY FOR POLITICAL SPEECH IS EXCEPTIONAL.**

It is not unusual for visa holders to be placed in removal proceedings. Nor is it unprecedented for the government to single out Palestinians or those who express pro-Palestinian views where they have allegedly violated some other provision of the immigration laws.[6] However, the use of the foreign policy ground is extraordinarily rare, and we are unaware of it ever having been used as the sole charge in a case where the underlying conduct was itself political speech, prior to March 2025.

The implications of the foreign policy ground are by no means limited to noncitizens who engage in pro-Palestinian speech. The presence of Ukrainians who are critical of Russia, supporters of more security cooperation with Europe, and economists skeptical of tariffs on Mexico, Canada, and China, could all suddenly be considered adverse to U.S. foreign policy interests and subject to deportation

---

[6] Henry Weinstein, *Final Two L.A. 8 Defendants Cleared*, LA Times (Nov. 1, 2007).

based on the unilateral determination of the Secretary of State. This list has no end, and no meaningful limiting principles. In *Massieu v. Reno*, the government's reliance on the foreign policy deportability ground was based on "nothing more than the obstinacy of a foreign sovereign that is high on the list of nations that the United States must not offend or disappoint." 915 F. Supp. 681, 700 n.18 (D.N.J.), *rev'd on other grounds*, 91 F.3d 416 (3d Cir. 1996).

### A. Section 1227(a)(4)(C) Is Unique Among Deportability Grounds Because It Purportedly Authorizes Deportation Based on the Unfettered Discretion of a Single Political Official.

The deportability grounds in the Immigration and Nationality Act (INA) generally require a lawfully present noncitizen to engage in some *conduct* to be deported, such as committing a crime (1227(a)(2)), engaging in fraud (1227(a)(3)), or unlawfully voting (1227(a)(6)). Among the "[s]ecurity and related grounds" in 1227(a)(4), the foreign policy ground is the only one that can be invoked based solely on the subjective beliefs of an executive official, rather than any action by the noncitizen. Indeed, the other subsections of 1227(a)(4) require significant legal breaches, such as engaging in terrorism, seeking to overthrow the U.S. government through unlawful means, and participating in torture. *See* 8 U.S.C. §§ 1227(a)(4)(A), (B), (D), (E), (F).

By contrast, the foreign policy ground merely requires the presence of a noncitizen and the decision of the Secretary of State; it does not target any conduct whatsoever, let alone some specified kind of conduct. 8 U.S.C. § 1227(a)(4)(C)(i) (referring to "presence *or* activities") (emphasis added). Nor does the foreign policy ground require a showing of any *actual* adverse foreign policy consequences; it simply requires the Secretary to have "reasonable ground to believe"—a determination the immigration judge purportedly cannot question— that the noncitizen's presence or activities "*would have potentially* serious" adverse foreign policy consequences. *Id.* (emphasis added). By purportedly giving unfettered discretion to an executive official to decide that someone lawfully present in the United States is deportable, 1227(a)(4)(C) is a stark outlier among all the deportability grounds.

During the 35 years that the foreign policy deportability ground has been in existence until March 2025, only one federal district court had an opportunity to address it, and that court determined it was unconstitutional in 1996. *Massieu*, 915 F. Supp. at 686. The district court in *Massieu* described this ground as a "breathtaking departure" from "deportation based on adjudications of defined impermissible conduct." *Id.* The Third Circuit reversed the decision based on its finding that the plaintiff had not exhausted administrative remedies but never

reached the constitutional questions. *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996).

More recently, in May 2025, another district court concluded that the foreign

policy deportability ground is likely unconstitutionally vague as applied. *Khalil v.

Trump*, 784 F. Supp. 3d 705, 767 (D.N.J. 2025).

### B. Section 1227(a)(4)(C) Has Almost Never Been Invoked by DHS.

The foreign policy deportability ground was introduced in 1990 and

originally codified at 8 U.S.C. § 1251(a)(4)(C) (INA § 241(a)(4)(C)).[7] The use of

this provision to seek an individual's deportation is almost unprecedented in this

ground's 35-year history. In *Khalil v. Trump,* the government was ordered to

provide a list of all instances in which the government has invoked Section

1227(a)(4)(C)(i) (INA § 237(a)(4)(C)(i)) or any predecessor statutes to seek the

removal of individuals from the United States. No. 25-cv-1963 (MEF) (D.N.J.),

Order, Dkt. No. 231. In response to the district court's order, the government

identified a total of five cases originating before March 2025. *Id.*; Govt's Resp.,

Dkt. No. 241; Govt's Second Resp., Dkt. No. 246. The government's justifications

for invoking these charges in the past were materially different from the situation

---

[7] In 1996, with the passage of the Illegal Immigration Reform and Immigrant Responsibility Act, Pub. L. No. 104–208, the provision was transferred to INA § 237(a)(4)(C).

here. For instance, the government claimed to have sought removal under Section 1251(a)(4)(C) of leaders of foreign terrorist or paramilitary organizations, or individuals charged or convicted of crimes. Dkt. No. 241.[8] The one individual whom the government sought to remove under Section 1227(a)(4)(C) before March 2025 had "participated in and/or contributed to violent political activity in Somalia." *Id*.

The government stated that these may not be the only instances of the statute's invocation. However, the government's own data and published immigration decisions reveal strikingly few cases. Based on publicly available data from the Executive Office of Immigration Review (EOIR) and published BIA decisions, out of 11.7 million cases, DHS has invoked Section 1251(a)(4)(C)(i) or Section 1227(a)(4)(C)(i) as a removal charge in *only fifteen cases* before March 2025, when ICE arrested and charged Mahmoud Khalil under this ground,[9] and attempted to arrest Yunseo Chung for the same reason.[10] Only five of those cases

---

[8] It is plausible that the use of the foreign policy ground for seeking deportation based on criminal activities and leadership in terrorist organizations has decreased because since the 1990s, the INA has expanded crime- and terrorism-related deportation grounds. *See* Juliet Stumpf, *The Crimmigration Crisis: Immigrants, Crime, and Sovereign Power*, 56 AM. U. L. REV. 367, 379–86 (2006).

[9] Charlie Savage, *Congress Wrote a Deportation Law to be Used 'Sparingly.' Trump Has Other Ideas*, N.Y. Times, Apr. 1, 2025.

[10] Jonah E. Bromwich and Hamed Aleaziz, *Columbia Student Hunted by ICE Sues to Prevent Deportation*, N.Y. Times, Mar. 4, 2025.

involved detention throughout the proceeding.[11] Decl. of Graeme Blair, Ph.D., and David Hausman, J.D., Ph.D. ("Blair and Hausman Decl."), Appendix, Exh. A ¶¶ 7, 14. In just seven of these fifteen cases, the foreign policy deportability ground was the sole charge alleged throughout the proceeding. *Id*. ¶ 14. Out of those seven cases, just *one* individual was detained throughout the proceeding. *Id*. Only four individuals ever were ultimately ordered removed or deported after being charged with removability under this ground. *Id*. That amounts to one person being ordered removed *per decade* under this provision.

What's more, nearly all of these cases arose in the distant past, shortly after the provision was enacted. Focusing on the 25 years before March 2025, the EOIR data reflect that Section 1227(a)(4)(C)(i) has been invoked only *four times*, and *only twice* has it been the sole charge alleged throughout the proceeding. *Id*. ¶ 13. We have not been able to determine whether either of the two charged individuals over the past 25 years were charged for only their speech. But neither of those two individuals was detained throughout their immigration proceedings. *Id*. ¶ 14. These numbers may even be a significant overcount due to the possibility of errors in the

---

[11] In the EOIR data, cases may not necessarily mean different individuals. Appendix (*Blair and Hausman Decl.*), Exh. A ¶7. Therefore, it is possible that this charge has been invoked against even fewer than fifteen individuals.

data and the extreme rarity in which these charges have been invoked. *Id.* ¶ 8-9.

Regardless, invoking the statute based solely on political speech by a noncitizen

(and detaining him), makes the government's assertion of authority here

extraordinary—indeed, vanishingly rare.

The BIA decision in Massieu's case confirms that the foreign policy

deportability ground "has been used very rarely." *Matter of Ruiz-Massieu*, 22 I&N

Dec. 833, 838 (BIA 1999) (citing *Matter of Khalifah*, 21 I&N Dec. 107 (BIA

1995), as "the only published Board case").[12] The government's decision to invoke

this singular charge against Dr. Khan Suri, who engaged in constitutionally

protected speech, and to detain him, is alarming given this history. The data

discussed above support the argument that this case presents "extraordinary

circumstances" that justify Dr. Khan Suri's release on bail under *Mapp v. Reno*,

241 F.3d 221, 230 (2d Cir. 2001) and *United States v. Eliely*, 276 F. App'x 270,

270 (4th Cir. 2008).

**CONCLUSION**

For the foregoing reasons, this Court should deny the government's appeal

and affirm the district court's order.

---

[12] *Amici* have exhaustively searched unpublished BIA cases involving Section
1251(a)(4)(C) or Section 1227(a)(4)(C) and have found none.

DATED: October 3, 2025

Respectfully submitted,

*/s/ Amber Qureshi*
Amber Qureshi
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com

Fatma Marouf
Professor of Law
Texas A&M School of Law
1515 Commerce St.
Fort Worth, TX 76102
Tel: (817) 212-4123
fatma.marouf@law.tamu.edu
(in her individual capacity)

Elora Mukherjee
Jerome L. Greene Clinical Professor of Law
Columbia Law School
Morningside Heights Legal Services, Inc.
435 W. 116th Street, Room 831
New York, NY 10027
Tel: (212) 854-4291
emukherjee@law.columbia.edu
(in her individual capacity)

Ahilan Arulanantham
Professor from Practice
UCLA School of Law
385 Charles E. Young Dr. East
Los Angeles, CA 90095
Tel: (310) 825-1029
arulanantham@law.ucla.edu
(in his individual capacity)

*Counsel for Amici Curiae*

28

# ADDENDUM
# LIST OF AMICI*

*All amici have signed on in an individual capacity, with institutional affiliation for identification purposes only.*

David Abraham
Professor (Emeritus)
University of Miami School of Law

Evangeline Abriel
Clinical Professor of Law
Santa Clara Univ. School of Law

Susan Akram
Clinical Professor of Law
Director, International Human Rights
  Clinic
Boston University School of Law

Raquel Aldana
Professor of Law
U.C. Davis School of Law

Nadia Anguiano
Associate Clinical Professor of Law
University of Minnesota Law School

Sabrineh Ardalan
Clinical Professor of Law
Harvard Law School

Paulina Arnold
Assistant Professor
University of Michigan Law School

Lauren Aronson
Clinical Professor
Director, Immigration Law Clinic
University of Illinois College of Law

Ahilan Arulanantham
Professor from Practice
Co-Director, Center for Immigration
  Law and Policy
UCLA School of Law

Sameer Ashar
Clinical Professor of Law
U.C. Irvine School of Law

Sabrina Balgamwalla
Assistant Professor of Law
Wayne State Law School

Jon Bauer
Clinical Professor of Law
Richard D. Tulisano '69 Scholar
  In Human Rights
University of Connecticut
School of Law

Jacqueline Bhabha
Professor of the Practice of Health
and Human Rights
Harvard University

Kaci Bishop
Clinical Professor of Law
University of North Carolina
School of Law

Diana Blank
William R. Davis Clinical Teaching
  Fellow
University of Connecticut
School of Law

Matthew Boaz
Assistant Professor of Law
Univ. of Kentucky
J. David Rosenberg College of Law

Richard A. Boswell
Professor of Law
U.C. Law, San Francisco

Emily Brown
Assistant Clinical Professor of Law
The Ohio State University
Moritz College of Law

J. Anna Cabot
Assistant Dean of Clinical Programs
University of Houston Law Center

Kristina M. Campbell
Professor of Law
Rita G. & Norman L. Roberts Faculty
  Scholar
Director, Beatriz and Ed Schweitzer
  Border Justice Initiative
Gonzaga University School of Law

Stacy Caplow
Professor of Law
Brooklyn Law School

Jocelyn Cazares Willingham
Assistant Professor of Law
University of the District of Columbia
David A. Clarke School of Law

Jennifer Chacón
Bruce Tyson Mitchell Professor
  of Law
Stanford Law School

Gabriel Chin
Edward L. Barrett Jr. Chair
Martin Luther King Jr. Professor
  of Law
U.C. Davis School of Law

Marissa Cianciarulo
Dean and Professor of Law
Western State College of Law

Dree Collopy
Adjunct Professor
American University
Washington College of Law

Rose Cuison-Villazor
Professor of Law
Chancellor's Social Justice Scholar
Rutgers Law School

Lauren DesRosiers
Visiting Assistant Professor
Director, Immigration Law Clinic
Albany Law School

Richard Frankel
Professor of Law
Drexel University
Thomas R. Kline School of Law

Niels Frenzen
Sidney M. and Audrey M. Irmas
  Endowed
  Clinical Professor of Law
USC Gould School of Law

Maryellen Fullerton
Suzanne J. and Norman Miles
Professor of Law
Brooklyn Law School

Denise Gilman
Co-Director, Immigration Clinic
University of Texas School of Law

Valeria Gomez
Assistant Professor of Law
University of Baltimore
School of Law

Jennifer Gordon
Professor of Law
Fordham University School of Law

Lucas Guttentag
Professor of the Practice of Law
Stanford Law School
Martin R. Flug Lecturer in Law and
Senior Research Scholar in Law
Yale Law School

Lindsay M. Harris
Professor of Law
University of San Francisco
School of Law

Dina Francesca Haynes
Executive Director, Schell Center for
International Human Rights
Research Scholar in Law
Yale Law School

Emily Heger
Clinical Associate Professor
Director, Immigrant Rights Clinic
Texas A&M School of Law

Mackenzie Heinrichs
Associate Professor of Law
University of Utah
S.J. Quinney College of Law

Laura A. Hernández
Professor of Law
Baylor Law School

Laila Hlass
Associate Professor of Law
Tulane Law School

Mary Holper
Clinical Professor of Law
Boston College Law School

Lauren Hughes
Assistant Clinical Professor of Law
Director, Immigrant Rights Clinic
Washington & Lee University
School of Law

Alan Hyde
Distinguished Professor Emeritus
Rutgers Law School

Kevin Johnson
Mabie/Apallas Professor of Public
Interest Law and Chicanx Studies
University of California, Davis

Elizabeth Jordan
Visiting Assistant Professor
Director, Immigration Law and Policy
  Clinic
University of Denver Sturm
College of Law

Michael Kagan
Joyce Mack Professor of Law
University of Nevada, Las Vegas
William S. Boyd School of Law

Daniel Kanstroom
Professor of Law
Boston College Law School

Elizabeth Keyes
Professor of Law
University of Baltimore
School of Law

Daniel M. Kowalski
Editor-in-Chief
Bender's Immigration Bulletin
  (LexisNexis)

Hiroko Kusuda
Clinical Professor
Loyola University New Orleans
College of Law

Jennifer Lee
Associate Professor of Law
Temple University
Beasley School of Law

Beth Lyon
Clinical Professor of Law
Cornell Law School

Alysia Maldan
Adjunct Professor of Law
New England Law | Boston
Northeastern Univ. School of Law

Lynn Marcus
Clinical Law Professor
University of Arizona
James E. Rogers College of Law

Peter Margulies
Professor of Law
Roger Williams University
School of Law

Fatma Marouf
Professor of Law
Texas A&M School of Law

Estelle McKee
Clinical Professor
Cornell Law School

Michelle McKinley
Bernard B. Kliks Professor of Law
University of Oregon School of Law

Jennifer Moore
Professor of Law
University of New Mexico
School of Law

Daniel Morales
Dwight Olds Chair in Law
University of Houston

Angela Morrison
Professor of Law
Texas A&M School of Law

Hiroshi Motomura
Susan Westerberg Prager
  Distinguished Professor of Law
UCLA School of Law

Elora Mukherjee
Jerome L. Greene Clinical Professor
  of Law
Columbia Law School

Karen Musalo
Professor of Law
UC Law San Francisco

Mauricio Noroña
Assistant Clinical Professor of Law
Touro University
Jacob D. Fuchsberg Law Center

John Palmer
Associate Professor
Dept. of Political and Social Sciences
Universitat Pompeu Fabra

Sarah Paoletti
Practice Professor of Law
University of Pennsylvania
Carey Law School

Helen Parsonage
Attorney at Law
North Carolina

Talia Peleg
Associate Professor of Law
Boston College Law School

Huyen Pham
University Distinguished Professor
Texas A&M School of Law

Nina Rabin
Clinical Professor of Law
UCLA School of Law

Jaya Ramji-Nogales
Professor of Law
Temple University
Beasley School of Law

Sarah Rogerson
Professor of Law
Albany Law School

Carrie Rosenbaum
Senior Fellow
Santa Clara University School of Law

Rachel Rosenbloom
Professor of Law
Northeastern University
School of Law

Faiza Sayed
Associate Professor of Law
Director, Safe Harbor Clinic
Brooklyn Law School

Erica Schommer
Clinical Professor of Law
St. Mary's University School of Law

Philip Schrag
Delaney Family Professor of
Public Interest Law
Georgetown University

Ragini Shah
Clinical Professor of Law
Suffolk University Law School

Rebecca Sharpless
Professor of Law
University of Miami School of Law

Sarah Sherman-Stokes
Clinical Associate Professor of Law
Boston University School of Law

Doug Smith
Lecturer
Brandeis University

Jayashri Srikantiah
Professor of Law
Director, Immigrants' Rights Clinic
Stanford Law School

Elissa Steglich
Clinical Professor of Law
University of Texas School of Law

Brett Stokes
Director, Center for Justice
 Reform Clinic
Vermont Law and Graduate School

Maureen Sweeney
Law School Professor
University of Maryland Carey
School of Law

David B. Thronson
Professor of Law
Michigan State University
College of Law

Veronica Thronson
Clinical Professor of Law
Michigan State University
College of Law

Enid Trucios-Haynes
Professor of Law
Brandeis School of Law
University of Louisville

Tania N. Valdez
Associate Professor of Law
George Washington University
Law School

Sheila Velez Martinez
Jack and Lovell Olender Professor
 of Asylum Refugee and
 Immigration Law
Univ. of Pittsburgh School of Law

Paulina Vera
Director, Immigration Clinic
George Washington Law School

Leti Volpp
Robert D. and Leslie Kay Raven
Professor of Law
U.C. Berkeley

Jonathan Weinberg
Distinguished Professor of Law
Wayne State University

Deborah M. Weissman
Reef C. Ivey II Distinguished
Professor of Law
University of North Carolina
School of Law

Anna Welch
Professor of Law
University of Maine School of Law

John Wilshire
Senior Clinical Instructor
Assistant Director
Harvard Immigration & Clinic
Harvard Law School

Amelia Wilson
Assistant Clinical Professor
Director, Immigration Justice Clinic
Elisabeth Haub School of Law
Pace University

Michael Wishnie
William O. Douglas Clinical
Professor of Law
Yale Law School

Stephen Yale-Loehr
Retired Professor of Immigration Law
 Practice
Cornell Law School

Elliott Young
Professor of History
Lewis & Clark College

Sara Zampierin
Clinical Associate Professor of Law
Director, Civil Rights Clinic
Texas A&M School of Law

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rules of Appellate Procedure 29 and 32, undersigned counsel certifies the following:

1.  The foregoing brief complies with the type-volume limitation of Federal Rules of Appellate Procedure 29(a)(5) and 32(a)(7)(B) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6363 words.

2.  The foregoing brief complies with the typeface requirements of Federal Rules Appellate Procedure 32(a)(5) and the type-style requirements of Federal Rules Appellate Procedure 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

Dated: October 3, 2025      By:   */s/ Amber Qureshi*
Amber Qureshi
Law Office of Amber Qureshi, LLC
6925 Oakland Mills Rd., PMB #207
Columbia, MD 21045
Tel: (443) 583-4353
amber@qureshilegal.com

*Counsel of Record for Amici Curiae*

# CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2025, an electronic copy of the brief of amici curiae Immigration Lawyers, Law Professors, and Scholars was filed with the Clerk of the United States Court of Appeals for the Fourth Circuit via the CM/ECF system, which will send a notice of this filing to all parties.


Dated: October 3, 2025        By:    */s/ Amber Qureshi*
                                Amber Qureshi
                                Law Office of Amber Qureshi, LLC
                                6925 Oakland Mills Rd., PMB #207
                                Columbia, MD 21045
                                Tel: (443) 583-4353
                                amber@qureshilegal.com

                                *Counsel of Record for Amici Curiae*