No. 25-1560

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

BADAR KHAN SURI,

Petitioner-Appellee,

v.

DONALD J. TRUMP, *et al.*,

Respondents-Appellants.

---

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
District Court Case No. 1:25-cv-00480

---

RESPONDENTS-APPELLANTS' REPLY BRIEF

---

BRETT SHUMATE
Assistant Attorney General
Civil Division

DREW C. ENSIGN
Deputy Assistant Attorney
General

LINDSEY HALLIGAN
United States Attorney
Eastern District of Virginia

DAVID J. BYERLEY
Trial Attorney
Office of Immigration Litigation
U.S. Dept. of Justice, Civil Div.
P.O. Box 878
Ben Franklin Station
Washington, DC 20044

*Attorneys for Respondents-Appellants*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................ 1

ARGUMENT ............................................................ 3

    I.    The District Court Exceeded its Habeas Authority ........... 3

    A.    The District Court Lacked Habeas Jurisdiction ............... 3

    II.    The INA Divested the District Court of Jurisdiction ......... 9

    A.    Section 1252(g) Forecloses Petitioner's Challenge .......... 9

    B.    Petitioner's Claims are also Barred by 8 U.S.C. 1252(a)(5) and (b)(9) ..................................................... 20

    III.    The All Writs Act Does Not Empower the District Court to Disregard Congressional Limits on its Jurisdiction .......... 32

CONCLUSION ........................................................ 34

# TABLE OF AUTHORITIES

## Cases

*Aguilar v. ICE,*
    510 F.3d 1 (1st Cir. 2007) ............................................................... 31, 32, 36

*Alvarez v. ICE,*
    818 F.3d 1194 (11th Cir. 2016) .................................................... 20

*Bello-Reyes v. Gaynor,*
    985 F.3d 696 (9th Cir. 2021) ........................................................ 24

*Camarena v. Director, ICE,*
    988 F.3d 1268 (11th Cir. 2021) .......................................... 25, 26

*Cardoso v. Reno,*
    216 F.3d 512 (5th Cir. 2000) ................................................. 26-27

*Casa De Maryland v. DHS,*
    924 F.3d 684 (4th Cir. 2019) ...................................................... 30

*Delgado v. Quarantillo,*
    643 F.3d 52 (2d Cir. 2011) ........................................................... 24

*Demjanjuk v. Meese,*
    784 F.2d 1114 (D.C. Cir. 1986) .......................................... 14, 15

*Demore v. Kim,*
    538 U.S. 510 (2003) ......................................................................... 22

*DHS v. Thuraissigiam,*
    591 U.S. 103 (2020) ......................................................................... 37

*E.F.L. v. Prim,*
    986 F.3d 959 (7th Cir. 2021) ...................................................... 26

*E.O.H.C. v Sec. DHS,*
    950 F.3d 177 (3d Cir. 2020) .................................................. 31, 33

*Ex parte Endo,*
    323 U.S. 283 (1944) .................................................... 15, 39, 40

*Figuereo-Sanchez v. Att'y Gen.*,
   382 Fed. App'x 211 (3d Cir. 2010) ............................................................ 34

*Gilchrist v. General Electric Capital Corp.*,
   262 F.3d 295 (4th Cir. 2001) ..................................................................... 40

*Gonzalez-Alarcon v. Macias*,
   884 F.3d 1266 (10th Cir. 2018) .................................................................. 37

*Humphries v. Various Fed. INS Emps.*,
   164 F.3d 936 (5th Cir. 1999) ..................................................................... 20

*Hurtado v. Barr*,
   817 Fed. App'x 310 (9th Cir. 2020) ........................................................... 34

*Iasu v. Smith*,
   511 F.3d 881 (9th Cir. 2007) ..................................................................... 37

*Ibarra-Perez v. United States*,
   154 F.4th 989 (9th Cir. 2025) (Nelson, J., dissenting) ............................. 20

*INS v. Chadha*,
   462 U.S. 919 (1983) ................................................................................... 34

*INS v. St. Cyr*,
   533 U.S. 289 (2001) ................................................................................... 29

*J.E.F.M. v. Lynch*,
   837 F.3d 1026 (9th Cir. 2016) ............................................................. 27, 31

*Jennings v. Rodriguez*,
   583 U.S. 281 (2018) ............................................... 9, 28, 29, 33, 38

*Johnson v. Whitehead*,
   647 F.3d 120 (4th Cir. 2011) ..................................................................... 30

*Johnson v. Whitehead*,
   No. 08-1872, 2009 U.S. Dist. LEXIS 145965 (D. Md. May 14, 2009) ....... 31

*Klay v. United Healthgroup, Inc.*,
   376 F.3d 1092 (11th Cir. 2004) .................................................................. 40

*Kong v. United States*,
   62 F.4th 608 (1st Cir. 2023) ...................................................................... 22

*Lukaj v. Att'y Gen.*,
    763 Fed. App'x 826 (11th Cir. 2019) .......................................................... 34

*Massieu v. Reno*,
    91 F.3d 416 (3d Cir. 1996) ................................................................... 34, 35

*Miranda v. Garland*,
    34 F.4th 338 (4th Cir. 2022) ............................................................... 18, 37

*Mohamed v. Gonzales*,
    477 F.3d 522 (8th Cir. 2007) .................................................................. 37

*Monk v. Sec'y of Navy*,
    793 F.2d 364 (D.C. Cir. 1986) ................................................................. 15

*Ozturk v. Hyde*,
    155 F.4th 187 (2d Cir. 2025) ..................................................................... 9

*Pa. Bureau of Corr. v. United States Marshals Serv.*,
    474 U.S. 34 (1985) ................................................................................ 41

*Ragbir v. Homan*,
    923 F.3d 53 (2d Cir. 2019) ................................................................. 25, 26

*Reno v. Am.-Arab Anti-Discrimination Comm.*,
    525 U.S. 471 (1999) ............................................................................ 24, 38

*Ruiz v. Mukasey*,
    552 F.3d 269 (2d Cir. 2009) .................................................................... 38

*Ruiz-Martinez v. Mukasey*,
    516 F.3d 102 (2d Cir. 2008) .................................................................... 37

*Rumsfeld v. Padilla*,
    542 U.S. 434 (2004) ............................................................. 10, 11, 12, 14

*Suri v. Trump*,
    2025 WL 1806692 (4th Cir. July 1, 2025) ............................. 13, 18, 24, 32

*Tazu v. Att'y Gen.*,
    975 F.3d 292 (3d Cir. 2020) ................................................. 21, 23, 25, 26, 36

*Toure v. Att'y Gen.*,
    443 F.3d 310 (3d Cir. 2006) .................................................................... 36

*Zadvydas v. Davis,*
   533 U.S. 678 (2001) ........................................................ 18

**Statutes**

8 U.S.C. § 1182 .............................................................. 25

8 U.S.C. § 1226 ........................................................ 18, 19

8 U.S.C. § 1227 ........................................................ 17, 25

8 U.S.C. § 1229a .......................................................... 35

8 U.S.C. § 1251 ............................................................ 34

8 U.S.C. § 1252 .. 8, 9, 16, 18, 19, 20, 21, 23, 24-26, 27, 28, 30, 31, 33-35, 36-38

**Other**

8 C.F.R. §§ 1003.19, 1240.1(b), 1240.10(a)(4), 1240.11(c)(3)(ii) ..................... 35

# INTRODUCTION

The district court flouted multiple jurisdictional bars to entertain Petitioner Badar Khan Suri's claims challenging the commencement of removal proceedings and ordering his release. And it compounded those errors by stretching the "unknown custodian" exception beyond its limits to grant relief to a detainee who is not detained in the district now and was not at the time the habeas petition was filed.

The district court's distortions of habeas principles improperly thwarted the Executive's determination that Petitioner's presence in this country is detrimental to the United States' foreign policy interests and that he should thus be removed. Tellingly, Petitioner does not deny his family ties with at least one Hamas official—a person he euphemistically calls a "foreign government official the U.S. government dislikes." Appellee's Response Brief ("RB") 1.

To make matters worse, the district court transgressed numerous statutory limits on its jurisdiction in the Immigration and Nationality Act ("INA"). Petitioner says 8 U.S.C. §1252(b)(9) and (g) do not apply because he is challenging the Secretary's foreign-policy determination and his detention, not his removal. But the former are inextricably

intertwined with the latter. *See Ozturk v. Hyde*, 155 F.4th 187, 189-94 (2d Cir. 2025) (Menashi, J., joined by Park, J., concurring in the denial of rehearing *en banc*). Indeed, Petitioner's habeas petition and brief confirm that he is targeting his removal proceedings, not just his detention. Petitioner also objects that §1252(b)(9) does not apply at all until a final order of removal has been entered. But five Justices in *Jennings v. Rodriguez*, 583 U.S. 281 (2018), recognized that §1252(b)(9) applies pre-final order of removal.

Finally, the district court erred in exercising putative authority under the All Writs Act to enjoin Petitioner's removal. Petitioner concedes that the order was not "necessary" to secure the court's jurisdiction and does not even attempt to explain how an injunction on Petitioner's removal is reasonably related to an underlying claim of *detention*—which only underscores that Petitioner's challenge is to *removal* and thus barred by multiple provisions of the INA.

# ARGUMENT

## I.  The District Court Exceeded its Habeas Authority

The district court exceeded its habeas authority twice over—it awarded relief without acquiring jurisdiction over the petition, and the relief it entered far exceeded the bounds of habeas.

### A. The District Court Lacked Habeas Jurisdiction

Habeas jurisdiction lies in the district in which the challenged detention is taking place and where the warden of that facility is located. Appellants' Opening Brief ("OB") 13-14 (citing *Rumsfeld v. Padilla*, 542 U.S. 434, 435 (2004)).  Under that rule, the district court lacked habeas jurisdiction because his petition was not filed in his district of confinement and did not name the immediate custodian.

### 1. The District Court Erred In Holding That the Unknown-Custodian Exception Applied

Petitioner does not dispute either that (1) he was not confined in the Eastern District of Virginia when the habeas petition was filed, or (2) his petition did not name his immediate custodian.  Instead, he invoked the so-called "unknown custodian" exception to evade bedrock requirements of habeas jurisdiction.  RB.13-19. In doing so, he contorts that exception beyond recognition.

3

The exception applies only when "a prisoner is being held in an undisclosed location by an unknown custodian," such that it is "impossible to apply" the normal habeas requirements. *Padilla*, 542 U.S. at 450 n.18. That was not remotely true here. Petitioner *does not dispute* that (1) the Government served Petitioner with a Notice to Appear ("NTA") on March 17, 2025 at or about 10:00pm (JA.84, 88, 202), which identified the name and location of his ultimate place of detention in Texas, *see* OB.4-6; JA.88; and (2) Petitioner's counsel had access to the NTA *before* filing the habeas petition in the Eastern District, *see* OB.7-8; *see also* JA.53, 88. The ultimate place of confinement and custodian *were thus known*—even if Petitioner's exact, real-time location en route to that place of confinement was not—so the *unknown* custodian exception does not apply. And because Petitioner's counsel learned of Petitioner's ultimate place of confinement *before* filing the habeas petition, it does not matter that the ICE detainee locator was not up-to-the-minute. RB.15. None of the cases on which Petitioner relies, including *Ozturk* and *Khalil*, found habeas jurisdiction in these circumstances. The decision below is not just wrong; it is an outlier.

4

### 2. The District Court Improperly Sought to Punish the Government

The district court also erred in finding habeas jurisdiction in the Eastern District as a way of punishing the Government for alleged forum shopping. OB.28-30. Petitioner defends the lower court's actions *solely* on the basis of Justice Kennedy's concurring opinion in *Padilla*. RB.19-22. Of course, that concurring opinion (joined only by Justice O'Connor) is not the opinion of the Supreme Court. In any event, Justice Kennedy's desired "exception" for circumstances where "the Government was not forthcoming with respect to the identity of the custodian and the place of detention," 542 U.S. at 454 (Kennedy, J., concurring), does not apply here where the Government told Petitioner his ultimate place of confinement and custodian through the NTA, *which was available to Petitioner's counsel.* OB.7-8.

Petitioner says this was justified because the Government's explanations for transferring Petitioner contained "inconsistencies" and "post hoc rationalizations." RB.21. Not so. The lower court deemed the NTA to be a "post hoc rationalization" based on supposed inconsistent testimony that (1) "the NTA was issued after the detention facility was

decided" and (2) "the custody determination to detain Petitioner in Texas was made before the NTA was issued." JA.229-30. The two are not inconsistent; they merely say the same thing in a different way. The court also purported to identify a second inconsistency from two completely consistent statements: that the Virginia facilities were at or reaching capacity, and that Petitioner was assigned to a Texas facility to prevent overcrowding in Virginia. JA.228. Both can be (and were) simultaneously true.[1] And while the court thought that "rapid transfers" unusual, they are in fact routine. OB.28-29.

Relying on the stay panel's opinion, Petitioner insists that the district court was justified because the Government "apparently intended to deport Suri on March 21." RB.22 (quoting *Suri v. Trump*, 2025 WL 1806692, at *5 (4th Cir. July 1, 2025)). That is wholly unsupported. Neither the petition or Petitoner's wife's declaration support such a

---

[1] The Governmental declarant testified neither facility in Virginia had unreserved beds available at Petitioner's Suri's classification level, which the district court somehow construed to be a "conce[ssion]" that those facilities had "some bedspace." *Compare* JA.202 *with* JA.227-28. The district court also took the Governmental declarant's testimony that "Prairieland Detention Facility had bed space available" as a "conce[ssion]" that Prairieland Detention Facility "did not have bedspace." *Compare* JA.202 *with* JA.228.

claim. *See* JA.10-25, 43-47. Petitioner's unfounded and speculative *fears* of such imminent removal is not evidence. *See* JA.41. Moreover, the stay panel's assertion that the Government did not "contest" this claim is remarkable, given that the claim was made in an *ex parte* application that Government had no opportunity to contest. JA-vii.

Ultimately, none of the cases on which Petitioner relies, including *Ozturk* and *Khalil*, support expanding habeas jurisdiction as a means of punishing the Government. And for good reason: the *Padilla* majority rejected the argument that alleged secrecy by the Government justifies jettisoning limits on habeas jurisdiction. OB.30 (citing *Padilla*, 542 U.S. at 448, 449 n.17. Petitioner has no meaningful response. RB.20-21 n.7.

### 3. Even if the district court acquired jurisdiction, it should have transferred the case.

Assuming the lower court acquired habeas jurisdiction under the "unknown custodian" exception, it erred in not transferring the petition once it became clear that Petitioner's place of confinement was not in the Eastern District of Virginia (and was not at the time the habeas petition was filed). OB.30-34 (citing *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986)).

Petitioner says *Demjanjuk*'s requirement of transfer should not be taken seriously because Judge Bork "did not apply it" there. RB.23. That is a strange argument for Petitioner to make, given his heavy reliance on the "unknown custodian" exception that *Padilla* certainly did not apply in that case. RB.17-18. Regardless, Judge Bork dismissed the petition in Demjanjuk "[b]ecause it [wa]s absolutely clear from the application that the applicant is not entitled to an award of the writ and … transfer would serve no purpose." 784 F.2d at 1115. And he later reiterated his position. *Monk v. Sec'y of Navy*, 793 F.2d 364, 369 (D.C. Cir. 1986).

This principle does not conflict with *Ex parte Endo*, 323 U.S. 283 (1944). RB.24 n.9. That decision held that a district court does not lose habeas jurisdiction that is properly acquired when the detainee is moved from the district. 323 U.S. at 441. The rule of *Endo* does not apply where it becomes apparent that the district of filing *is not* the proper district. Even if it did, that would not matter here, where Petitioner's counsel *knew* that Petitioner was not detained in the Eastern District *before* filing the habeas petition.

Nor do Petitioner's concerns with forum-shopping justify the district court's decision to keep the case despite knowing that it was *not*

the district of confinement at the time the habeas petition was filed. *See* JA.226-34. To start, Petitioner's assertion (RB.22-25) that the Government engaged in forum-shopping is belied by clear documentary evidence: the decision to transfer Petitioner to Texas was made during his initial intake processing and was based solely on operational considerations (principally lack of long-term detention capacity in the Virginia area). JA.201-03. In reality, it is the district court's decision that opens the floodgates for forum shopping by authorizing counsel to file in a court-of-choice even though aware that the client is en route to another district for detention.

## II.    The INA Divested the District Court of Jurisdiction

Habeas jurisdiction aside, several provisions of the INA divested the district court of jurisdiction to adjudicate Petitioner's claims. OB.34-55. Petitioner's contrary arguments lack merit.

### A. Section 1252(g) Forecloses Petitioner's Challenge

The INA, through 8 U.S.C. §1252(g), explicitly precludes district courts from "hear[ing] any cause or claim" by an alien "arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders" against the alien. The

Executive's decision to detain Petitioner is inextricably intertwined with its decision to commence removal proceedings. Petitioner's challenge is thus barred by §1252(g). OB.34-47.

### 1. The Decision to Detain is Inextricably Intertwined with the Decision to Commence Removal Proceedings

Petitioner tries to avoid the clear import of §1252(g) by attempting to bifurcate the Attorney General's decision to commence removal proceedings and the decision to detain. RB.31-35. That distinction is illusory.

First, the decision to detain and commence removal are one and the same. OB.43. The Attorney General's decision to commence removal proceedings against Petitioner is based on the Secretary of State's determination under 8 U.S.C. § 1227(a)(4)(C)(i) that his presence or activities in the United States compromises a compelling U.S. foreign policy interest, and the Executive must decide *at that time* whether or not to detain him pending the resulting removal proceedings, 8 U.S.C. §1227(a)(4). Removal and detention are inextricably linked. OB.38-47. When an alien challenges his detention on the ground that he should not be removed in the first place, it is in substance a challenge to his removal

10

because it "aris[es] from the decision … to commence [removal] proceedings." 8 U.S.C. §1252(g); *see Suri*, 2025 WL 1806692, at *11 (Wilkinson, J., dissenting) ("[W]hen the government detains an alien … the detention arises from the commencement of proceedings").

Petitioner says that removal and detention are not intertwined because detention "must be justified on the separate basis that the person poses a flight risk or danger," such that he "could have challenged his detention without challenging this removal[.]" RB.32-33. Not true. To be sure, the statute under which Petitioner is detained—8 U.S.C. §1226(a)—authorizes the Government to release detained aliens on bond or conditional parole, but it does not require a determination of "flight risk" or "danger" *before* detention may occur. The cases Petitioner cites do not say otherwise. The first—*Zadvydas v. Davis*, 533 U.S. 678 (2001)—concerned post-final-order detention and the risk of indefinite detention while removal is not possible. *Id.* at 690. Here, Petitioner is not arguing that the duration of his detention violated due process. RB.33-35. He instead contends that *even one minute* of pre-final-order detention of his person was categorically unconstitutional. The second— *Miranda v. Garland*, 34 F.4th 338 (4th Cir. 2022)—is completely

11

inapposite.  It held that district courts could not "[r]equir[e] the government to justify a decision the statute gave it discretion to make" on a class-wide basis without restraining the operation of §1226(a) in violation of §1252(f)(1).  *Id.* at 356.[2]

Second, Petitioner asserts that his detention claim is collateral to the removal process, because it can be resolved without impacting those proceedings.  RB.33-34.  Not true.  The habeas petition makes clear that Petitioner is not challenging some discrete aspect of his detention; he is challenging the fact that he is detained on a ground for which he asserts he cannot properly be removed to begin with.  JA.25 (Prayer for Relief: "Vacate and set aside Respondents' unlawful Policy of targeting noncitizens for removal based on First Amendment and/or their family relationships [to Hamas]"; and "Vacate and set aside the Rubio Determination [of Suri's removability]").  His brief, too, characterizes his challenge as being against removal.  RB.41 ("[H]abeas review of Petitioner's retaliatory detention and removal claims is required to

---

[2] The habeas petition does not claim that the Government was required to prove flight risk and public danger before exercising discretion to detain.  His challenge is to any detention under based on the charge of removability.  JA.25.

12

provide 'meaningful' relief."). And critically, Petitioner's challenges in the district court would eliminate his removal proceedings—full stop—which means this suit falls within the heartland of §1252(g). *See Alvarez v. ICE*, 818 F.3d 1194, 1203 (11th Cir. 2016) ("[§1252(g)] bars us from questioning ICE's discretionary decisions to commence removal" and reviewing "ICE's decision to take him into custody and to detain him during removal proceedings."); *Humphries v. Various Fed. INS Emps.*, 164 F.3d 936, 945 (5th Cir. 1999) (similar).

Section 1252(g) means what it says: "'[A]ny cause or claim,' legal or otherwise, challenging the execution of removal orders is barred. At the very least, the statute must mean something. And under [Petitioner's interpretation], it means nothing." *Ibarra-Perez v. United States*, 154 F.4th 989, 1006 (9th Cir. 2025) (Nelson, J., dissenting).[3]

---

[3] Petitioner inconsistently characterizes his claims to bob-and-weave through §1252(a)(5)/(b)(9) and (g). As it relates to §1252(g), he claims his detention claim only seeks review of the alleged lack of a pre-arrest "justif[ication] on the separate basis that the person poses a flight risk or danger" (RB.33), while with respect to §1252(a)(5) and (b)(9), he drops the pretense that the challenge to detention is somehow distinct from the decision to institute proceedings against him. RB.41.

Third, reading §1252(g) to prohibit challenges to the commencement of removal proceedings, but not the accompanying decision to detain, would render meaningless §1252(g)'s explicit language precluding review under "*any … habeas corpus provision.*" 8 U.S.C. §1252(g) (emphasis added). By adding the habeas-stripping provisions to multiple provisions within §1252, Congress clearly recognized that detention at times would be a sufficient predicate for aliens to raise certain challenges, but the mere fact of being detained would not escape the jurisdictional bars. *See Tazu v. Att'y Gen.*, 975 F.3d 292, 298-99 (3d Cir. 2020) (§1252(g) bars detention claim when executing a final order of removal). Petitioner tries to limit *Tazu* to a challenge to "door-to-plane" detention. RB.34 n.13. That misreads *Tazu*. The key takeaway from *Tazu* is that where detention and removal are inextricably linked, the district court cannot bifurcate them to evade the INA's jurisdictional bars.

Trying to avoid the clear implication of §1252(g)'s explicit exclusion of habeas challenges, Petitioner cites the Conference Report that accompanied the REAL ID Act for its statement that the law "would not preclude habeas review over challenges to detention that are

14

independent of challenges to removal orders. RB.30 (quoting H.R. Rep. 109-72, at 175 (2005)). To start, snippets of legislative history cannot overcome clear statutory text. *Azar v. Allina Health Servs.*, 587 U.S. 566, 581 (2019). In any event, Petitioner's argument rests on the false premise that his initial detention is "independent of challenges to removal order." H.R. Rep. 109-72, at 175. As already explained, the decision whether to detain is wrapped up with the initial decision to commence removal proceedings; the two go together, because "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003)

Petitioner's reliance on *Kong v. United States*, 62 F.4th 608 (1st Cir. 2023), is also misplaced. *See* RB.30, 32, 35. In that case, a Cambodian national with a final order of removal brought a Federal Tort Claims Act claim after he was "arrested without notice while on his way to work" and detained for more than fifty days. *Id*. at 610, 618. The First Circuit explained that Kong's claims did "not arise from the discretionary decision to execute removal but instead [arose] from the government's alleged violations of law in arresting Kong without a relevant warrant." *Id*. at 618. Based on that framing, the First Circuit held that §1252(g)

15

did not apply to Kong's *tort* claims for damages. *Id*. at 617-18. At the same time, however, the Court acknowledged that §1252(g)'s bar *does extend* to the decision to detain an alien pending execution of a removal order, despite a petitioner framing detention as being completely independent of removal. *Id*. at 618; *see e.g.*, *Tazu*, 975 F.3d at 297-99. In any event, Petitioner is not bringing a collateral FTCA claim for damages resulting from detention; rather, he is bringing a direct and frontal challenge to the detention itself.

Applying §1252(g) to his claims would not bar those in removal proceedings from "raising … conditions of confinement, or prolonged detention" claims. RB.34. First, unlike prolonged detention or conditions of confinement claims, his challenges to the removability charge are reviewable through the petition-for-review process. Second, no matter how Petitioner pled his claims, they are, at bottom, challenges to his removability charge and attendant detention. JA.21-22. Under these circumstances, §1252(g) applies because his claims "arise from" his removal proceedings. Anything less would vitiate the very purpose of §1252(g); it would allow every alien to attack the merits of his removal, through a habeas suit nominally challenging his detention; and in turn,

16

the government would be subject to the sort of burdensome, parallel litigation the INA endeavored to stop. *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). Instead, what matters is the "substance" of the challenge. *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011). And where, as here, a challenge to detention is in substance a "collateral attack" on the decision to commence removal proceedings, it is barred by §1252(g). *Suri*, 2025 WL 1806692, at *11 (Wilkinson, J., dissenting).[4]

## 2. Section 1252(g) Cannot Be Avoided By Artful Pleading

Switching gears, Petitioner tries to escape the reach of §1252(g) by framing his challenge as being against "the very authority" of Executive action. RB.36-37. That distinction has no basis in the statute's text: it prohibits "*any* cause or claim … arising from the decision or action by the Attorney General to commence proceedings…." 8 U.S.C. §1252(g) (emphasis added). A claim that the Executive lacked authority to commence removal proceedings plainly "aris[es] from" the "action" of the

---

[4] *Bello-Reyes v. Gaynor*, 985 F.3d 696, 698 (9th Cir. 2021) is distinguishable. There, the petitioner was challenging the government's decision to revoke bond, which is unrelated to the initial decision to initiate removal and detain.

Executive to "commence [those] removal proceedings." *Id.*; *see Camarena v. Director, ICE*, 988 F.3d 1268, 1272 (11th Cir. 2021) ("The bottom line is that §1252(g) strips us of jurisdiction to hear the claims brought by Camarena and Barrios, and that statute does not offer any discretion-versus-authority distinction of the sort they claim."); *Tazu*, 975 F.3d at 297-98 (applying §1252(g) where the petitioner styled "his constitutional and statutory objections as challenging not the Executive's *discretion*, but *its authority* to execute his removal order") (emphasis in original)).

In any event, Congress expressly delegated authority to the Executive to decide whether an alien's presence or activities would compromise a compelling foreign policy interest such that the alien should be removed. 8 U.S.C. § 1227(a)(4)(C)(i); *see also id.* § 1182(a)(3)(C)(iii) (similar inadmissibility ground). Petitioner challenges a statute that gives the Executive ample discretion to make a removability finding based on foreign policy considerations. Therefore, the Executive acted on its congressionally allocated authority to charge Petitioner as removable, and he cannot now circumvent judicial review by arguing that the Executive exceeded its legal authority in doing so. *See Ragbir v. Homan*, 923 F.3d 53, 64 (2d Cir. 2019), *cert. granted,*

18

*judgment vacated*, 141 S.Ct. 227 (2020).  Finding otherwise would only allow Petitioner to "bypass §1252(g) through mere styling of [his] claims." *Ragbir*, 923 F.3d at 64; *see, e.g., Tazu*, 975 F.3d at 297-98 (discussing *Garcia v. Att'y Gen.* and holding that §1252(g) barred review when the petitioner did not challenge the statutory authority to partake in one of the three covered actions); *Camarena*, 988 F.3d at 1273-74. Regardless of how Petitioner presents his claims, his habeas petition is an attack on the decision to commence removal proceedings against him which runs afoul of §1252(g).

Ultimately, §1252(g)'s prohibition applies regardless of whether an alien "restyle[s]" his challenge as being directed "to the Executive's general lack of authority to violate due process, equal protection, the Administrative Procedure Act, or some other federal law."  *Tazu*, 975 F.3d at 298.  "To remove that decision from the scope of section 1252(g) because it was allegedly made based on unlawful considerations would allow plaintiffs to bypass §1252(g) through mere styling of their claims." *See Ragbir*, 923 F.3d at 64; *see also E.F.L. v. Prim*, 986 F.3d 959, 965-65 (7th Cir. 2021) (reading §1252(g) as divesting courts over challenges to "executive branch decisions or actions"); *Cardoso v. Reno*, 216 F.3d 512,

516 (5th Cir. 2000) (recognizing that aliens may not "make an end-run around the terms of [§1252(g)] by simply characterizing their complaint").

### B. Petitioner's Claims are also Barred by 8 U.S.C. 1252(a)(5) and (b)(9)

The INA—8 U.S.C. §1252(a)(5) and (b)(9)—channels "all questions of law and fact … arising from any action taken or proceeding brought to remove an alien" through a petition for review filed with the appropriate court of appeals. 8 U.S.C. §1252(b)(9). "Taken together, §1252(a)(5) and §1252(b)(9) mean that any issue—whether legal or factual—arising from any removal-related activity can be reviewed *only* through the [petition for review] process." *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis in original); *see* OB.47-55.

### 1. Section 1252(a)(5) and (b)(9) Apply Before a Final Order of Removal.

Petitioner first argues §1252(a)(5) and (b)(9) are inapplicable because they only come into play when there is a final order of removal. RB.38-41. That is not the law. Section 1252(b)(9) channels "[j]udicial review of all questions of law and fact" through the petition for review

process and prohibits judicial review of "such questions of law or fact" in any other forum, including habeas proceedings. 8 U.S.C. §1252(b)(9).

A majority of the Justices in *Jennings* recognized that §1252(b)(9)'s channeling comes into play *before* a final order is issued and unequivocally bars review of the decision to detain an alien in the first place. OB.54. Justice Alito, joined by Chief Justice Roberts and Justice Kennedy, concluded that §1252(b)(9) did not apply to aliens challenging their prolonged detention because they were "not challenging the decision to detain them in the first place" or "challenging any part of the process by which their removability will be determined"—steps that precede a final order. 583 U.S. at 294-95 (plurality opinion). Meanwhile, Justice Thomas and Justice Gorsuch determined that §1252(b)(9) should apply to challenges against prolonged pre-final order detention. *Id*. at 314-23 (Thomas, J., concurring). Five Justices thus understood that §1252(b)(9) is operational during removal proceedings—not just at the end—and covers the first decision resulting in an alien's detention.

Petitioner says the *Jennings* plurality "did not choose sides" on when §1252(b)(9) applies, RB.40, but if the plurality thought that §1252(b)(9) were as limited as Petitioner claims, then it would have had

21

no need to assess whether "unlawful detention claims … 'arise from' removal proceedings," RB.40; it would have simply reasoned that §1252(b)(9) does not apply until a final order of removal issued—which *the dissent* proposed.  *See* 583 U.S. at 355 (Breyer, J., dissenting).

The five-Justice consensus in *Jennings* is consistent with *INS v. St. Cyr*, 533 U.S. 289 (2001).  Petitioner acknowledges that *St. Cyr* did not read the prefatory language in §1252(b) "to impose a temporal limitation on the effect of subsection (b)(9)," but to "clarify that the requirements of §1252(b) do not apply to removal orders not covered in §1252(a)(1)." RB.39.  He insists the language can also serve other "purpose[s]," but he never says what.  RB.39.  And he fails to square this cramped reading of §1252(b)(9) with that provision's reference to "review [of] an order [or removal] *or [] questions of law or fact*."  OB.54.  Petitioner says this language could "refer to ancillary litigation that arises after a final order has been issued," RB.41, but the quoted language appears in the provision's limitation on habeas review and "motions to reopen or humanitarian claims under withholding of removal or [CAT]" do not sound in habeas.

22

Petitioner insists that this Court's decision in *Casa De Maryland v. DHS*, 924 F.3d 684 (4th Cir. 2019), holds that §1252(b)(9) applies only after a final order of removal. RB.39. It does not. *Casa* addressed constitutional and APA challenges to the Executive's decision to rescind the Deferred Action for Childhood Arrivals program. 924 F.3d at 692-95. This Court held that §1252(b)(9) did not bar those claims because they were not being asserted in the context of removal proceedings. *See id.* at 697 ("Congress enacted §1252(b)(9) for the important purpose of consolidating all claims that *may be brought in removal proceedings* into one final petition for review of a final order in the court of appeals." (emphasis in original) (quoting *Calcano-Martinez v. INS*, 232 F.3d 328, 340 (2d Cir. 2000)). The Court did not decide—and had no need to decide—when §1252(b)(9) applies in the context of ongoing removal proceedings.

By contrast, *Johnson v. Whitehead*, 647 F.3d 120 (4th Cir. 2011), affirmed the district court's dismissal of a habeas petition under §1252(a)(5) and (b)(9), where the Petitioner sought to challenge his removal proceedings on the grounds of citizenship in a habeas proceeding. 647 F.3d at 124-25. There was no final order of removal

23

pending at the time of the lower court's dismissal of the habeas petition, predicated at least in part on §1252(a)(5), (b)(9). Yet *Johnson* concluded that "[p]etitions for review are the appropriate vehicle for judicial review of legal and factual questions arising in removal proceedings" and explained, "Congress has specifically prohibited the use of habeas corpus petitions as a way of obtaining review of questions arising in removal proceedings." *Id.*[5] Other courts of appeals agree. *See E.O.H.C. v Sec. DHS*, 950 F.3d 177, 183, 187-88 (3d Cir. 2020) (applying provision to aliens who had their proceedings reopened and argued that their statutory right-to-counsel was being infringed upon); *J.E.F.M*, 837 F.3d at 1033 (requiring children to raise right-to-counsel claim through the PFR process after obtaining a final order of removal); *Aguilar v. ICE*, 510 F.3d 1, 9 (1st Cir. 2007).

Ultimately, Petitioner's rule would subvert §1252(b)(9)'s channeling function in favor of fragmented proceedings: a district court

---

[5] Contrary to Petitioner's and the motions' panel's claims, the *Johnson* petitioner was, in fact, challenging his detention—namely, that ICE's detainer could not stand (and thus, could not keep him from the halfway house at the conclusion of his penal sentence) because he claimed he was a citizen. *Johnson v. Whitehead*, No. 08-1872, 2009 U.S. Dist. LEXIS 145965, at *2 (D. Md. May 14, 2009).

could lose jurisdiction midway through a case once the parallel immigration proceedings produced a final order. That is "a prescription for 'the deconstruction, fragmentation, and hence prolongation of removal proceedings' at odds with the express wishes of Congress." *Suri*, 2025 WL 1806692, at *10-11 (Wilkinson, J., dissenting); *see also Aguilar*, 510 F.3d at 13-14.

### 2. Petitioner's Now-or-Never Theory Fails

Separately, Petitioner argues that his challenges to his detention are not barred by §1252(b)(9) because they would otherwise be unreviewable. *See* RB.41-44. His arguments are meritless.

Relying on *Jennings*, Petitioner first argues that applying §1252(a)(5) and (b)(9) to removal charges disguised as challenges to detention is an "extreme result[] that would render claims of 'excessive detention' 'effectively unreviewable.'" RB.41 (citing *Jennings*, 583 U.S. at 293). The *Jennings* plurality, however, was addressing "prolonged" detention. Petitioner, by contrast, is not challenging the *duration* of detention, but the fact that he is detained at all. And the *Jennings* plurality did not "reject[] as 'absurd'" the argument the Executive's decision to detain is covered by §1252(b)(9). RB.44. It applied that label

25

to an expansive reading of §1252(b)(9) that would sweep up literally any claim—such as a *Bivens* claim—for which the commencement of removal proceedings is the but for cause. *Jennings*, 583 U.S. at 293. By contrast, the initial decision to detain is part-and-parcel of the decision to commence proceedings and seek removal—as it is here—the legal issues arising from those decisions are subject to §1252(b)(9) and must be channeled through a petition for review.

Petitioner's challenge does not present the "now-or-never" concerns that would allow immediate judicial review outside the petition-for-review process. RB.43-45. To be sure, §1252(b)(9) does not strip district courts of jurisdiction if an alien cannot obtain meaningful review alongside a final order of removal, because such "now-or-never" claims do not "arise from detention or removal proceedings." *E.O.H.C.*, 950 F.3d at 185, 186. But only a small subset of claims fit into that category—those "claims that are independent of, or wholly collateral to, the removal process," like "claims that cannot effectively be handled through the available administrative process." *Id.* at 186 (quotation marks omitted).

Petitioner's claims do not fit that bill. Section 1252(b)(9) explicitly channels "constitutional" claims through the petition for review process,

*see* 8 U.S.C. §1252(b)(9), and courts of appeals have adjudicated such claims under that framework. For example, in *Massieu v. Reno*, 91 F.3d 416 (3d Cir. 1996) (Alito, J.), the Third Circuit held that aliens like Suri can obtain judicial review by way of a petition for review. In that case, an alien argued that the predecessor to the current foreign-policy ground (8 U.S.C. §1251(a)(4)(C)(i)) was unconstitutionally vague. *Id*. at 417. The court there reversed the lower court's injunction of the removal proceedings, holding that "an alien attempting to prevent an exclusion or deportation proceeding from taking place in the first instance" must seek review through the petition for review process, and the court of appeals can review the final removal order and "'all matters on which the validity of the final order is contingent.'" *Id*. at 421, 422 (quoting *INS. v. Chadha*, 462 U.S. 919, 937-39 (1983)); *see also id*. at 423 (review is not meaningfully precluded when "the challenge by the aliens is neither procedural nor collateral to the merits").[6]

---

[6] *See also Chadha*, 462 U.S. at 927; *Figuereo-Sanchez v. Att'y Gen.*, 382 Fed. App'x 211, 213 (3d Cir. 2010); *Lukaj v. Att'y Gen.*, 763 Fed. App'x 826, 829-30 (11th Cir. 2019); *Hurtado v. Barr*, 817 Fed. App'x 310, 312-13 (9th Cir. 2020).

Nonetheless, Petitioner argues that waiting "until a final order before seeking review of his claims," would afford relief "'too late to redress his detention … and First Amendment injuries, rendering his constitutional claims "effectively unreviewable" and accomplishing the unlawful object of his detention[.]" RB.43. By arguing that relief would come "too late," Petitioner concedes that some review would in fact be available—that it may come later than desired does not make it a "now-or-never claim." And *Massieu* confirms that this is exactly what Congress intended by streamlining and channeling challenges through a petition for review. *Massieu*, 91 F.3d at 417. If Petitioner receives an adverse decision at the end of those removal proceedings, he can appeal that adverse decision to the Board of Immigration Appeals and then to the appropriate court of appeals. That is the path for his constitutional challenges set out by §1252(a)(5) and (b)(9)—not a collateral attack on his detention in district court.

Importantly, and contrary to Petitioner's claim, the immigration judge is empowered to build a record while presiding over Petitioner's immigration proceedings. *See* 8 U.S.C. §1229a(b)(1); *see also* 8 C.F.R. §§1003.19(b), 1240.1(b), 1240.10(a)(4), 1240.11(c)(3)(ii). Indeed, it has a

duty to do so. *See Toure v. Att'y Gen.*, 443 F.3d 310, 325 (3d Cir. 2006); *Aguilar*, 510 F.3d at 15 ("[I]mmigration judges possess ample evidence-gathering faculties, including the authority to administer oaths, receive evidence, issue subpoenas, call witnesses, and entertain cross-examination.").

Accepting Suri's readings of §1252(b)(9) would only invite chaos and fragmentation of removal proceedings—exactly what Congress sought to avoid by adopting §1252(a)(5) and (b)(9). *See Tazu*, 975 F.3d at 296. If district courts can interrupt immigration proceedings upon their commencement, then there would be no reason why they could not continue interrupting proceedings each time a petitioner presents an artful claim that challenges anything and everything related to removal proceedings. That is the opposite of the streamlining of removal proceedings that Congress means to achieve by adopting §1252(b)(9).

Finally, petitioner cites *Miranda* for the proposition that §1252(b)(9) allows him to challenge the basis for his removal proceedings and resulting detention because he dresses the challenge up in constitutional garb. RB.43. Like *Jennings*, *Miranda* involved a challenge to *prolonged* detention and, in any event, was clear that

29

§1252(b)(9) *would* apply in situations—such as this one—where the petitioner is "challenging the decision to detain them in the first place or to seek removal." *Miranda*, 34 F.4th at 353 n.6 (quoting *Jennings*, 583 U.S. at 294).

### 3. Petitioner's Suspension Clause Argument is Meritless

Petitioner finally suggests that accepting the Government's proposed reading of §1252(b)(9) would raise serious Suspension Clause and First Amendment questions. RB.45-47. Not so. To the extent Petitioner is using this habeas action to challenge his detention *only* and not seeking relief other than simple release from custody, courts around the country have already confirmed that the REAL ID Amendments to the INA satisfy Suspension Clause concerns. *E.g.*, *Gonzalez-Alarcon v. Macias*, 884 F.3d 1266, 1277 (10th Cir. 2018); *Ruiz-Martinez v. Mukasey*, 516 F.3d 102, 105 (2d Cir. 2008); *Mohamed v. Gonzales*, 477 F.3d 522, 526 (8th Cir. 2007); *Iasu v. Smith*, 511 F.3d 881, 888 (9th Cir. 2007). To the extent that Petitioner is trying to invoke Suspension Clause concerns for relief other than release from custody, the Supreme Court has foreclosed such claims. *DHS v. Thuraissigiam*, 591 U.S. 103, 119 (2020).

Petitioner's "First Amendment" challenge to the validity of §1252(a)(5), (b)(9)—not contained in his habeas petition—fares no better. He cites no authority holding that channeling such claims through the petition-for-review process would be unconstitutional.   RB.46-47. Instead, he cites Justice Ginsburg's concurrence in *AADC*, which the majority rejected.  525 U.S. at 488 n.10.  Besides, the petition-for-review process is fully capable of providing a forum for adjudicating Petitioner's First Amendment claim, as noted above.

At bottom, Petitioner is not challenging actions that are "unrelated to any removal action or proceedings," *Ruiz v. Mukasey*, 552 F.3d 269, 274 n.3 (2d Cir. 2009), but instead seeks a workaround to challenge his removal and the process by which his removability is being determined, *Jennings*, 583 U.S. at 294.  He is not only seeking release from custody but also seeking to enjoin the removability charge.  JA.25.  Given the relief that he seeks, his claims run into §1252(b)(9).

## III.    The All Writs Act Does Not Empower the District Court to Disregard Congressional Limits on its Jurisdiction

Putting jurisdiction aside, the district court lacked authority to issue its March 20, 2025, order prohibiting Petitioner from being removed from the United States.  OB.55-60.

Petitioner concedes that the district court did not explain why its order was "necessary" to preserve its jurisdiction.  RB.49; *cf*. OB.56. Instead, Petitioner argues that the order may have been "appropriate" (though not "necessary"), but he fails to explain how, given the NTA that Petitioner had a hearing date scheduled *for May 6*.  RB.49.  Petitioner's accusations of "shadowy" operations and his family's lack of knowledge of his whereabouts does not justify the order, either.  None of that bears on the preservation of the court's jurisdiction.  After all, if the district court *had* acquired habeas jurisdiction, Petitioner's transfer to another district would not divest jurisdiction.  *See Ex parte Endo*, 323 U.S. 283 (1941).  And the fact that the district court's order is not perpetual has no relevance to whether the court had the power to enter the order in the first place.  *Cf*. RB.49-50.

The lower court's order was also invalid because it lacked a reasonable connection to Petitioner's claims—at least as the district court understood them. OB.57-58. Petitioner does not dispute "that the March 20 order is effectively an injunction," RB.51, but says that "showing a connection to the merits of the underlying claim is not part of the jurisdiction-preserving calculus." RB.51. That makes no sense. The whole point of preserving a court's jurisdiction is to allow it to adjudicate "the merits of the underlying claim." RB.51. That may not require the petitioner to show likelihood of success on that claim, *cf. id.*, but there still must be some connection between the use of the writ and the claim it is being used to preserve jurisdiction to adjudicate. OB.57. *Gilchrist v. General Electric Capital Corp.*, 262 F.3d 295, 302 (4th Cir. 2001), does not say otherwise. And *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1102 (11th Cir. 2004), says only that "[t]he requirements for a traditional injunction do not apply to injunctions under the All Writs Act," *id.* at 1102; not that an injunction can issued that lacks any nexus to the underlying claims.

Ultimately, the All Writs Act is not a grant of jurisdiction on its own and does not authorize district courts to ignore restrictions on their

jurisdiction. OB.58-59. Rather, "[w]here a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling." *Pa. Bureau of Corr. v. United States Marshals Serv.*, 474 U.S. 34, 43 (1985). Here, the district court lacked jurisdiction to adjudicate Petitioner's claims, so there was no jurisdiction to preserve. OB.58-60.

## CONCLUSION

The Court should reverse the orders of the district court.

DATE: December 5, 2025                    Respectfully Submitted,

BRETT SHUMATE                             LINDSEY HALLIGAN
Assistant Attorney General                United States Attorney
Civil Division                            Eastern District of Virginia

DREW C. ENSIGN                            */s/ David J. Byerley*
Deputy Assistant Attorney                 DAVID J. BYERLEY
General                                   Trial Attorney (DC #1618599)
                                          Office of Immigration Litigation
                                          U.S. Dept. of Justice, Civil Div.
                                          P.O. Box 868
                                          Ben Franklin Station
                                          Washington, DC 20044
                                          T:202-532-4523
                                          david.byerley@usdoj.gov

                                          *Counsel for Respondents-Appellants*

34

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) and with Local Rule 32(b) because it contains 6,449 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f).


*/s/ David J. Byerley*
DAVID J. BYERLEY

*Counsel for Respondents-Appellants*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 5, 2025, the foregoing brief was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all counsel of record.

/s/ David J. Byerley
DAVID J. BYERLEY

*Counsel for Respondents-Appellants*